In re:

ISLAND ONE, INC., a Florida
corporation, *et al.*

Debtors.

_____/

CASE NO. 6:10-bk-16177-KSJ

CHAPTER 11

Jointly Administered with Case Nos.
6:10-bk-16179-KSJ, 6:10-bk-16180-KSJ,
6:10-bk-16182-KSJ, 6:10-bk-16183-KSJ,
6:10-bk-16189-KSJ

EMERGENCY RELIEF REQUESTED
BY 3:00 P.M. ON TUESDAY,
SEPTEMBER 14, 2010

## EMERGENCY MOTION OF THE DEBTOR-IN-POSSESSION
## FOR AUTHORITY TO USE CASH COLLATERAL AND
## REQUEST FOR EMERGENCY PRELIMINARY HEARING

### AND

### CERTIFICATE OF NECESSITY OF
### REQUEST FOR EMERGENCY PRELIMINARY HEARING

**ISLAND ONE, INC.** ("IOI" or the "Debtor"), as the debtor and debtor-in-possession, along with certain affiliates who are also debtors and debtors-in-possession (collectively, the "Debtors") pursuant to 11 U.S.C. §§363(c)(2) and Federal Rule of Bankruptcy Procedure 4001(b)(1), moves for authority to use cash collateral and provide adequate protection to Textron Financial Corporation ("TFC"), Liberty Bank ("Liberty"), and BB & T Acquired Asset Group ("BB&T) and requests an emergency preliminary hearing and in support thereof states:

### Background

1.     On September 10, 2010  (the "Petition Date"), the Debtors filed voluntary petitions for relief under Chapter 11 of Title 11 of the United States Code ("Bankruptcy Code").  No trustee

has been appointed. The Debtors continue to operate their time share business and manage their time share properties as debtors-in-possession pursuant to §§ 1107 and 1108 of the Bankruptcy Code. The Debtors have sought joint administration of their respective Chapter 11 cases and permission to use a consolidated case caption.

2.      As of the date hereof, no creditors' committee has been appointed in this case. In addition, no trustee or examiner has been appointed.

3.      This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157(b) and1334. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409. This matter is a core proceeding pursuant to 28 U.S.C. §157(b).

4.      The statutory predicates for the relief requested herein are §§ 361 and 363 of the Bankruptcy Code and Rules 2002 and 4001 of the Federal Rules of Bankruptcy Procedure.

### The Debtors and its Affiliated/Related Entities

5.      The Debtors have been in the time share industry in Central Florida for over twenty five years. In 1981, the Debtors began development of their first timeshare resort, and initiated their first sales of time shares in 1983. Since 1981, the Debtors have engaged in the development and/or management of time share resorts in Florida and the U.S. Virgin Islands. In addition, through Navigo Vacation Club, Inc., the Debtors have developed a timeshare network that extends throughout the United States, Latin America, the Caribbean and Europe.

6.      Through its management arm, Island One Resorts Management Corporation, a Florida corporation ( "IORMC"), the Debtors manage nine (9) resorts owned or developed by the Debtors (the "Resorts").

7. IORMC has the exclusive right to manage the Resorts by virtue of contracts between IORMC and the resort associations. In connection with its management duties, IORMC provides on-site employees to manage the Resorts' day to day operations and provides employees to operate the Resorts' reservation system.

8. In addition to owning unsold inventory at a number of resorts, IOI also provides all sales and marketing functions for the Resorts and provides developer accounting operations for the resort system.

9. Each of the Resorts consists of varying numbers of one or two bedroom furnished units and various pool features, playgrounds, activity decks, restaurants and other recreational amenities. Examples of the amenities include a water park, water slides, hot tubs, a 1,500 gallon salt water aquarium, volley ball courts, tennis courts, and club houses.

### Reasons for Filing Chapter 11

10. The fall of the real estate markets in Florida and throughout the United States and the general downturn in the economy have significantly impacted the resort development and hospitality industries.

11. As the Debtors experienced higher default rates from its members, the Debtors' lenders increased restrictions on future advances secured by the Debtors' consumer paper. These restrictions dramatically decreased the Debtors' pool of potential purchasers, which in turn decreased the Debtors' sales. The Debtors' unit sales and resort revenues were further reduced as consumers generally took steps to limit spending on vacations and other discretionary items.

12.     The reduction of the Debtors' sales caused a significant drop in the Debtors' cash availability under loans with TFC and Liberty, and ultimately led to a default under the Debtors' loans with TFC, Liberty, and BB&T.

13.     Notwithstanding the Debtors' defaults, the Debtors, TFC, Liberty, and BB&T entered into multiple forbearance agreements between May 2010 through September 10, 2010 which provided for continued advances to the Debtors under that certain Receivables Loan Agreement dated October 30, 2009 executed by IOI in favor of Liberty and TFC ("Liberty Loan") and for a forbearance period against collection against the Debtors ("Forbearance Period").

14.     During the Forbearance Period, TFC, Liberty, BB&T, and the Debtors have had ongoing discussions with Bay Harbour Management ("Bay Harbour") in connection with the acquisition of the equity interests of the Debtors by Bay Harbour.

15.     As the negotiations between TFC, Liberty, BB&T and Bay Harbour progressed, the Debtors ongoing cash needs increased above the Debtors' availability under the Liberty Loan. Without immediate access to additional cash the Debtors feared that they may have to reduce or even cease certain operations, which would have a detrimental affect on the value of the Debtors assets and continued interest from Bay Harbour or other potential purchasers.

16.     Consequently, in order to preserve the going concern value of the Debtors' business for all stakeholders, the Debtors determined that they had no choice, but to seek relief under Chapter 11 of the Bankruptcy Code in order to finalize a sale of the company. Bay Harbour has informed the Debtors that it is willing to continue negotiations post-petition.

## Cash Collateral and the Relief Sought by the Debtor

17.     In order to continue operations and allow for a successful sale of the Debtors' assets on a going concern basis, the Debtors will require the use of funds on hand and funds to be received. Those funds may be subject to a lien in favor of TFC, Liberty, and BB&T.

18.     The cash collateral, which the Debtors seek to use, is comprised, in whole or in part, of funds held in a lockbox controlled by TFC and Liberty, which constitute proceeds of financed timeshare purchases and the underlying customer obligation that have been pledged to TFC and Liberty or BB&T ("Cash Collateral").

19.     In connection with that certain Loan and Security Agreement dated December 14, 2001 executed by IOI in favor of TFC (the "TFC IOI Receivables Loan"), IOI currently owes TFC approximately $70,379,384.49.

20.     The TFC IOI Receivables Loan provides for a lien on: (i) certain receivables arising from the sale of timeshare interests at all of IOI resorts other than Chenay Bay (St. Croix) and Crescent Resort on South Beach, (ii) certain timeshare interests at the Parkway, Bryan's and ORBIT resorts, and (iii) IOI's stock in IORMC and IOI's membership interest in IOI Funding I, LLC. Consequently, TFC asserts that it holds a lien on Cash Collateral.

21.     In connection with that certain Loan and Security Agreement dated July 12, 2004 executed by IOI in favor of TFC ("TFC Cove Inventory Loan"), IOI currently owes TFC approximately $3, 840,074.04.

22.     The TFC Cove Inventory Loan provides for a lien on: certain timeshare interests at the Debtors' Cove I and Cove II Resorts. Consequently, TFC asserts that it holds a lien on Cash Collateral.

23. In connection with that certain Loan and Security Agreement dated December 20, 2007 and amended on October 30, 2009 executed by Island One Resorts Management Corporation ("IORMC") in favor of TFC (TFC IORMC Loan") currently owes TFC $9,050,032.98.

24. The TFC IORMC Loan provides for a lien on : management agreements, club dues and other assets of IORMC. Consequently, TFC asserts that it holds a lien on cash collateral.

25. In connection with that certain Loan and Security Agreement dated September 27, 2002 , executed by IOI Funding I, LLC ("IOI Funding") in favor of TFC (the "TFC IOI Funding Receivables Loan"), IOI currently owes TFC approximately $70,379,384.49.

26. The TFC IOI Funding Loan provides for a lien on all of the receivables of IOI Funding Consequently, TFC asserts that it holds a lien on Cash Collateral.

27. In connection with that certain Loan and Security Agreement dated December 28, 2004 and amended on October 30, 2009 September 27, 2002 , executed by Crescent One, LLC ("Crescent") favor of TFC (the "TFC Crescent Receivables Loan"), IOI currently owes TFC approximately $6,768,049.75.

28. The TFC Crescent Loan provides for a lien on all of the receivables of Crescent Consequently, TFC asserts that it holds a lien on Cash Collateral.

29. In connection with the Liberty Loan, IOI owes Liberty and TFC approximately $6,920,376.24.

30. The Liberty Loan is secured by a lien on: certain receivables arising from the sale of timeshare interests at the following IOI Resorts: Cove I, Cove II, LTV I, LTV II, Barefoot'n, Bryan's ORBIT and Charter Club. Consequently, Liberty and TFC assert that they hold a lien on Cash Collateral.

31.     The lenders' consent is subject to the court's entry of an order in the form agreed upon (to be annexed to the motion).

32.     In connection with various inventory and mortgage loans with BB&T (as successor to Colonial Bank) (the "BB&T Loans"), IOI owes BB&T approximately $39,992,309.20 .

33.     To secure the obligations of the BB&T Loans, IOI executed various mortgages and security agreements in favor of BB&T, which provide for liens on: (i) real estate, including timeshare interests in certain cases, at Barefoot'n, Chenay Bay (St. Croix), LTV I, LTV II, LTV 1400, Charter Club, the LTV Sales Center, certain other parcels related to potential LTV III, and a Welcome Center for LTV, and (ii) certain equipment and vehicles of IOI. Consequently, BB&T may asserts that it holds a lien on Cash Collateral.

34.     According to appraisals conducted by BB & T in May of 2009 the value of its collateral is $46,800.00 and thus, the value of its collateral exceeds the amount of its debt.

35.     The Debtors have approximately $20,000 funds on hand, and will require the use of approximately $2,814,216.00 of Cash Collateral to continue and maintain operations for the next four weeks, and, depending on the month, a greater or lesser amount will be required each comparable period thereafter.

36.     A budget showing estimated income and expenses for the Debtors for the next four weeks (the "Budget") is attached hereto as **Exhibit "A"** and is incorporated herein by reference.

37.     As adequate protection for the use of Cash Collateral, the Debtors propose to grant TFC, Liberty, and BB&T, replacement liens to the same validity, extent, and priority as their respective prepetition liens.

38.     As additional adequate protection for the use of Cash Collateral, the Debtors have agreed to continued employment of Bob Krawczyk of Mackinac Partners as Chief Sale Officer of the Debtors ("CSO"). As CSO of the Debtors, Mr. Krawczyk will have the following responsibilities:

A.      Direct the sale process of all or substantially all of the assets of the Debtors in a manner designed to maximize value for stakeholders, subject to bankruptcy court oversight and approval.

B.      Interface with the investment bankers and prospective bidders, as well as the Debtors' senior employees to the extent necessary to obtain information relevant to the sale process. Each of the Debtors' officers and directors shall have an affirmative obligation to fully cooperate with the CSO and to afford the CSO access to all information concerning the Debtors deemed by the CSO to be necessary or appropriate to the discharge of his/her role.

C.      The CSO shall be responsible for making decisions on behalf of the Debtors regarding the retention of investment bankers, brokers, sales consultants, etc., and on what terms.

D.      Negotiate with competing bidders regarding the terms of their offers, (including, for these purposes, the evaluation, value, treatment, assumption and/or rejection of executory contracts and unexpired leases in context of sale efforts).

E.      Receive legal advice from Debtors' counsel and make decisions in the best interests of the Debtors' estates and their creditors relating to the sale process, including bidding procedures (such as break-up fees, expense reimbursement and bidding increments), what constitutes a qualified bid, the conduct of the auction, and the manner to assess the highest and best bid. The CSO shall be authorized and directed to consult with the lenders and their agents at all stages of the sale process; provided, however, the CSO shall not be authorized to disclose anything that would be

subject to any applicable privilege. Moreover, the CSO shall not be authorized to consult with counsel for the lenders without Debtors' counsel being present.

       F.     Exercise exclusive corporate authority of the Debtors to make decisions on the Debtors' behalf for those matters listed herein.

       G.     Ensure that the data room has complete and current information, and that eligible parties have prompt access to the data subject to standard confidentiality agreements.

       H.     Make applications through Debtors' counsel, declarations and/or provide testimony to the bankruptcy court regarding the sale process and requested approvals.

       I.     Report regularly to the bankruptcy court (through Debtors' counsel), Debtors' counsel, the Debtors' management team , and parties in interest on the status of the sale efforts.

       J.     Such other administrative functions as may be necessary and appropriate to effectuate the sale process in a manner designed to realize upon the highest value for the Debtors' assets.

       39.     As additional adequate protection, the Debtors shall immediately and actively pursue the sale of its equity interests to Bay Harbour or such other potential purchaser that makes the highest and best offer for the equity interests in the Debtors.

       40.     As additional adequate protection, the Debtors shall provide regular financial reports including: (i) any reports required under the respective loan documents with TFC, Liberty, and BB&T; (ii) a summary report of actual cash flows compared to the Budget with explanations of material variances to be provided on the Friday following the end of each week; (iii) a summary report of actual financial results compared to the Budget with explanations of material variances to be provided within fifteen (15) days following the close of each month.

41.     If the Debtor is not permitted to use Cash Collateral, it may be forced to halt operations, which will result in loss of the going-concern value of the business, a reduction in the value of the estate's assets and create an adverse effect on creditors.

42.     A copy of the proposed order authorizing use of Cash Collateral on an interim basis is attached hereto as **Exhibit "B."**

### CERTIFICATE OF NECESSITY OF
### REQUEST FOR EMERGENCY PRELIMINARY HEARING

43.     Operation of the Debtors' business requires the incurring of expenses on a daily basis.

44.     The Debtors will be without funds to operate and meet expenses if an emergency preliminary hearing is not granted.

45.     Customers, employees, and vendors have been at risk since the Petition Date and will continue to be at risk until a determination by this Court of the right to use Cash Collateral.

46.     The Debtors estimate that approximately 15 minutes will be necessary for a hearing on this Motion and that a similar amount of time may be required for a final hearing.

47.     A copy of this Motion was served on TFC, Liberty, and BB&T, all other secured creditors, and on the twenty largest unsecured creditors. Notice of a hearing on this matter will be provided to the same entities.

48.     The Debtors and counsel are prepared to appear on two hours' notice at a hearing to demonstrate that the request for an emergency hearing is not the result of the Debtors' or counsel's procrastination or lack of attention.

**WHEREFORE,** the Debtors respectfully request this Court enter an order granting the request for an emergency hearing, the request to use Cash Collateral, and for such other and further relief as is just and proper.

**DATED** this 12th day of September 2010.

/s/ Elizabeth A. Green
Elizabeth A. Green
Florida Bar No, 0600547
Jimmy D. Parrish
Florida Bar No. 526401
**BAKER & HOSTETLER LLP**
SunTrust Center, Suite 2300
Post Office Box 112
Orlando, Florida 32802-0112
Telephone: 407-649-4000
Facsimile: 407-841-0168
Attorneys for the Debtors

In re:

ISLAND ONE, INC., a Florida
corporation, *et al.*

Debtors.

_____/

CASE NO. 6:10-bk-16177-KSJ

CHAPTER 11

Jointly Administered with Case Nos.
6:10-bk-16179-KSJ, 6:10-bk-16180-KSJ,
6:10-bk-16182-KSJ, 6:10-bk-16183-KSJ,
6:10-bk-16189-KSJ

EMERGENCY RELIEF REQUESTED
BY 3:00 P.M. ON TUESDAY,
SEPTEMBER 14, 2010

## Certificate of Service

    I HEREBY CERTIFY that on September 12, 2010, a true copy of **DEBTOR-IN-POSSESSION'S EMERGENCY MOTION FOR AUTHORITY TO USE CASH COLLATERAL AND REQUEST FOR EMERGENCY PRELIMINARY HEARING**, together with all exhibits, has been furnished either electronically or by facsimile and by U.S. First Class, postage prepaid mail to: Island One, Inc., et al., 8680 Commodity Circle, Orlando, FL 32819 (Debtor); Frank Terzo, Esq., GrayRobinson, P.A., 1221 Brickell Ave, Suite 1600, Miami 33131 (a/f BB&T); Steven Fox, Esq., Epstein, Becker & Green, 250 Park Ave., New York, NY 10177; R. Jeffrey Smith, Esq., 1 State Street, 1400 Hartford, CT 06103 (a/f Liberty Bank); All Creditors and Parties-In-Interest; and the U.S. Trustee, 135 West Central Boulevard, Suite 620, Orlando, Florida 32801, this 12th day of September 2010.

                                  /s/ Elizabeth A. Green
                                  Elizabeth A. Green, Esquire

# ISLAND ONE SUMMARY - ALL ENTITIES

**SHORT-TERM CASH FLOW - PLANNING**

Date Prepared: 9/10/10

Filing Date Assumption: Fri. 9/10/10

|  | 1 | 2 | 3 | 4 | 5 | 6 | 7 | Monthly Summary | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
|  | | SEPTEMBER 2010 | | | OCTOBER 2010 | | | last 3 wks Sep '10 | Oct '10 | Nov '10 | Dec '10 | Total: last 3 wks Sep - Dec '10 |
| Fiscal Week # | Fisc 37 | Fisc 38 | Fisc 39 | Fisc 40 | Fisc 41 | Fisc 42 | Fisc 43 | | | | | |
|  | 9/13 - 9/19 | 9/20 - 9/26 | 9/27 - 10/3 | 10/4 - 10/10 | 10/11 - 10/17 | 10/18 - 10/24 | 10/25 - 10/31 | | | | | |
| Beginning Cash Balance | 18,888 | 344,929 | 298,126 | 553,710 | 487,908 | 496,696 | 598,621 | 18,888 | 553,710 | 199,634 | 13,728 | 18,888 |
| **Inflow:** | | | | | | | | | | | | |
| Liberty Funding (gross of Release Fees) | 633,588 | 359,033 | 591,349 | 527,313 | 316,388 | 674,961 | 590,591 | 1,583,971 | 2,109,253 | 2,105,379 | 2,099,273 | 7,897,876 |
| Portfolio Cash | 37,335 | 36,302 | 33,293 | 42,343 | 48,219 | 47,576 | 38,374 | 106,931 | 176,511 | 208,217 | 220,244 | 711,903 |
| House Paper | | | | | | | | | | | 85,000 | 85,000 |
| Escrow - Sales Deposits | 10,000 | | | | | | | | | | | |
| Lando Bulk Inventory Sale | | | | | | | | | | | | |
| Miscellaneous | 119,601 | 176,875 | 241,901 | 120,374 | 161,599 | | | 538,377 | 667,592 | 832,467 | 720,184 | 2,758,620 |
| Lando Commission Revenues | 5,497 | 2,154 | 206,553 | 724 | 1,018 | 157,106 | 228,512 | 214,203 | 245,160 | 216,641 | 244,229 | 1,320,233 |
| Management Co Fees Revenues | 20,000 | | | | | | 243,418 | 40,000 | 40,000 | 161,517 | 687,991 | 929,258 |
| HOA Management Revenues | 20,000 | 20,000 | 20,000 | 20,000 | 20,000 | 20,000 | 44,250 | 40,000 | 40,000 | 161,517 | 25,000 | 315,290 |
| Club Navigo Revenues | | | | | | | | | | | | |
| St. Croix Shortfall to be funded by BB&T | | | | 15,000 | 15,000 | 15,000 | 15,000 | | | | | |
| **Total Inflow** | 849,022 | 602,364 | 1,121,096 | 710,755 | 567,223 | 899,643 | 1,140,895 | 2,572,482 | 3,316,516 | 3,598,472 | 4,416,621 | 13,906,391 |
| **Outflow:** | | | | | | | | | | | | |
| Payroll - IOI (Developer) | 167,000 | 164,000 | 164,000 | 164,000 | 164,000 | 164,000 | 164,000 | 495,000 | 656,000 | 820,000 | 656,000 | 2,627,000 |
| Payroll - IOR (Mgmt Co) | 57,500 | 57,500 | 57,500 | 56,500 | 56,500 | 56,500 | 56,500 | 172,500 | 226,000 | 270,000 | 216,000 | 884,500 |
| Payroll - SCO | 12,500 | 12,500 | 12,500 | 12,500 | 12,500 | 12,500 | 12,500 | 37,500 | 50,000 | 62,500 | 50,000 | 200,000 |
| Commissions | 39,185 | 41,527 | 33,926 | 23,486 | 25,954 | 28,908 | 35,887 | 114,639 | 119,234 | 152,165 | 152,165 | 563,520 |
| Employee Insurance | 17,000 | | 150,000 | 17,000 | | 70,000 | 150,000 | 167,000 | 137,292 | 167,000 | 133,304 | 666,000 |
| Portfolio Servicing (Equiant) | 67,000 | 67,000 | | | 70,000 | | | 167,000 | 167,000 | 167,000 | 167,000 | 668,000 |
| Office Rent | | | 56,559 | 56,559 | 56,559 | 56,559 | 56,559 | 56,559 | 56,559 | 56,559 | 56,559 | 414,292 |
| Subtotal - Sales & Marketing | 33,385 | 43,797 | 50,250 | 37,800 | 58,708 | 34,800 | 28,800 | 110,382 | 271,360 | 140,000 | 128,984 | 323,984 |
| Subtotal - G&A | 33,375 | 48,700 | 44,000 | 60,300 | 104,800 | 62,150 | 161,108 | 132,150 | 271,350 | 174,300 | 174,300 | 588,650 |
| Professional Services - Accounting Audits, Lender Audits, | | | | | | | 29,800 | | | 56,559 | 56,559 | 146,559 |
| Professional & Administrative Services - BK Legal Fees | 13,000 | | | 200,000 | | | | 13,000 | | | | 26,000 |
| Prof & Admin Services - Legal/litensure regulatory compliance | | | | 13,000 | 13,035 | 104,800 | 110,300 | 271,350 | 212,650 | 500,000 | 500,000 | 800,475 |
| Professional & Administrative Services (includes IB) | 10,000 | 15,000 | 15,000 | 15,000 | 15,000 | 15,000 | 62,150 | 161,108 | 45,000 | 45,000 | 45,000 | 45,000 |
| Professional Fees - Machinext (Post-Filing) | | 15,000 | | | | | | 30,000 | 225,000 | 125,000 | 125,000 | 500,000 |
| Professional Fees - Lender's Counsel | | | 10,000 | 15,000 | 15,000 | 15,000 | 146,000 | 10,000 | 190,000 | 10,000 | 10,000 | 40,000 |
| US Trustee Fees | | | | | | | | | | | | |
| Filing and Court / Administrative Fees | | | | | | 75,000 | 50,000 | 75,000 | 75,000 | 50,000 | 600,000 | 800,000 |
| Closing & Foreclosure Costs | 12,155 | 12,155 | 12,155 | 41,035 | 13,035 | 13,035 | 13,035 | 36,465 | 80,141 | 92,108 | 83,096 | 291,151 |
| Upgrade Repurchases | 28,154 | 28,154 | 28,154 | 32,554 | 32,554 | 32,554 | 32,554 | 84,463 | 130,217 | 147,482 | 152,482 | 499,222 |
| HOA M&T (Net Obligation) | | | | | | | 441,245 | | 114,051 | 513,546 | 513,546 | 1,106,911 |
| Release Fees | | | 57,722 | 24,822 | 21,782 | 20,175 | 23,257 | 57,722 | 90,036 | 133,304 | 112,519 | 393,580 |
| Other Funding Fees - Master Sncr Fee (Conduit) due TFC | 2,000 | 2,079 | | 1,936 | 1,936 | 1,936 | 1,936 | 2,079 | 1,936 | 1,925 | 1,792 | 7,732 |
| Construction / Capital Expenditures | 89,834 | 150,764 | 114,545 | 89,860 | 96,101 | 143,410 | 112,051 | 355,143 | 441,422 | 473,179 | 441,741 | 1,718,484 |
| Management Company | | 5,591 | 70,000 | | 2,000 | 1,906 | 78,053 | 84,282 | 80,053 | 81,300 | 70,555 | 315,590 |
| Club Navigo | 8,??? | | | | | | | | | | | 2,000 |
| **Total Outflow** | 522,980 | 649,168 | 865,511 | 776,557 | 558,435 | 797,718 | 1,539,882 | 2,037,659 | 3,672,592 | 3,784,377 | 3,608,800 | 13,103,429 |
| **Net Change** | 326,042 | (46,804) | 255,585 | (65,802) | 8,788 | 101,925 | (398,987) | 534,823 | (354,076) | (185,906) | 808,121 | 802,962 |
| **Cash Balance** | 344,929 | 298,126 | 553,710 | 487,908 | 496,696 | 598,621 | 199,634 | 553,710 | 199,634 | 13,728 | 821,849 | 821,849 |



EXHIBIT A

PENGAD 800-631-6989

ISLAND ONE, INC. (IOI)

SHORT TERM CASH FLOW - PLANNING

Date Prepared: 9/10/10

*Filing Date Assumption: Fri. 9/10/10*

| | 1 | 2 | 3 | 4 | 5 | 6 | 7 | Monthly Summary | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | SEPTEMBER 2010 | | | OCTOBER 2010 | | | | last 3 wks Sep '10 | Oct '10 | Nov '10 | Dec '10 | Total: last 3 wks Sep - Dec '10 |
| | Fcst | Fcst | Fcst | Fcst | Fcst | Fcst | Fcst | | | | | |
| Fiscal Week # | 37<br>9/13 - 9/19 | 38<br>9/20 - 9/26 | 39<br>9/27 - 10/3 | 40<br>10/4 - 10/10 | 41<br>10/11 - 10/17 | 42<br>10/18 - 10/24 | 43<br>10/25 - 10/31 | | | | | |
| Beginning Cash Balance | 3,391 | 189,616 | 94,637 | (16,922) | (159,415) | (249,813) | (252,846) | 3,391 | (16,922) | (1,029,149) | (2,064,785) | 3,391 |
| Inflow: | | | | | | | | | | | | |
| Presale Funding | | | | | | | | 0 | 0 | 0 | 0 | 0 |
| TFC Crescent Hypo Funding | | | | | | | | 0 | 0 | 0 | 0 | 0 |
| TFC Hypo Funding - House Paper ("Z") | | | | | | | | 0 | 0 | 0 | 0 | 0 |
| TFC Hypo Funding - Post 5/21 (5%) ("Y") | | | | | | | | 0 | 0 | 0 | 0 | 0 |
| TFC Hypo Funding - Pre 5/21 Paper ("X") | | | | | | | | 0 | 0 | 0 | 0 | 0 |
| TXT Funding - Liberty rec. pledged to TXT (85%) | | | | | | | | 0 | 0 | 0 | 0 | 0 |
| LBY Forward 85% Hypo Line (net of Release Fees) | | | | | | | | 0 | 0 | 0 | 0 | 0 |
| Liberty Funding (gross of Release Fees) | | | | | | | | 0 | 0 | 0 | 0 | 0 |
| Portfolio Cash | 492,444 | 279,052 | 459,615 | 410,361 | 246,216 | 525,262 | 459,604 | 1,231,111 | 1,641,443 | 1,640,059 | 1,636,335 | 6,148,948 |
| House Paper | | | | | | | | 0 | 0 | 0 | 0 | 0 |
| Escrow - Sales Deposits | 37,335 | 36,302 | 33,293 | 42,343 | 48,219 | 47,576 | 38,374 | 106,931 | 176,511 | 208,217 | 220,244 | 711,903 |
| Lando Bulk Inventory Sale | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Miscellaneous | 10,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 20,000 | 20,000 | 25,000 | 20,000 | 85,000 |
| Pre-Filing Transition Advance | | | | | | | | 0 | 0 | 0 | 0 | 0 |
| Post-Filing Transition Advance | | - | | | | | | 0 | 0 | 0 | 0 | 0 |
| Repayment of Post-Filing Transition Advance | | | | | | | | 0 | 0 | 0 | 0 | 0 |
| Total Inflow | 539,780 | 320,354 | 497,908 | 457,704 | 299,435 | 577,837 | 502,978 | 1,358,042 | 1,837,954 | 1,873,276 | 1,876,580 | 6,945,852 |
| Outflow: | | | | | | | | | | | | |
| Payroll - IOI (Developer) | 167,000 | 164,000 | 164,000 | 164,000 | 164,000 | 164,000 | 164,000 | 495,000 | 656,000 | 820,000 | 656,000 | 2,627,000 |
| Commissions | 39,185 | 41,527 | 33,926 | 28,486 | 25,954 | 28,908 | 35,887 | 114,639 | 119,234 | 177,482 | 152,165 | 563,520 |
| Employee Insurance | 17,000 | 0 | 150,000 | 17,000 | 0 | 0 | 150,000 | 167,000 | 167,000 | 167,000 | 167,000 | 668,000 |
| Portfolio Servicing (Equiant) | 0 | 67,000 | 0 | 0 | 0 | 70,000 | 67,292 | 67,000 | 137,292 | 140,000 | 70,000 | 414,292 |
| Office Rent | 0 | 0 | 56,559 | 0 | 0 | 0 | 56,559 | 56,559 | 56,559 | 56,559 | 56,559 | 226,236 |
| Utilities - Sales Centers and Marketing | 8,000 | 0 | 0 | 8,000 | 16,408 | 0 | 0 | 8,000 | 24,408 | 8,000 | 8,000 | 48,408 |
| Executive Advisor to the Board Consultant | 12,500 | 0 | 0 | 0 | 12,500 | 0 | 0 | 12,500 | 12,500 | 12,500 | 12,500 | 50,000 |
| Tour Pay | 7,468 | 7,000 | 7,000 | 6,500 | 6,500 | 6,500 | 6,500 | 21,468 | 26,000 | 32,500 | 26,000 | 105,968 |
| Food costs | 2,100 | 2,200 | 2,200 | 2,300 | 2,300 | 2,300 | 2,300 | 6,500 | 9,200 | 11,500 | 9,200 | 36,400 |
| Premiums | 0 | 15,000 | 15,000 | 12,000 | 12,000 | 12,000 | 12,000 | 30,000 | 48,000 | 60,000 | 48,000 | 186,000 |
| Tour Scoring | 0 | 5,000 | 0 | 0 | 0 | 5,000 | 0 | 5,000 | 5,000 | 5,000 | 5,000 | 20,000 |
| Outside Hotel Costs | 0 | 5,000 | 4,000 | 3,500 | 3,500 | 3,500 | 3,500 | 9,000 | 14,000 | 17,500 | 14,000 | 54,500 |
| Spiffs | 2,500 | 2,000 | 3,000 | 2,500 | 2,500 | 2,500 | 2,500 | 7,500 | 10,000 | 12,500 | 10,000 | 40,000 |
| Other Sales and Marketing | 817 | 7,597 | 2,000 | 3,000 | 3,000 | 3,000 | 3,000 | 10,414 | 12,000 | 15,000 | 12,000 | 49,414 |
| Subtotal - Sales & Marketing | 33,385 | 43,797 | 33,200 | 37,800 | 58,708 | 34,800 | 29,800 | 110,382 | 161,108 | 174,500 | 142,700 | 588,690 |
| Utilities - Internet services | 800 | 0 | 0 | 0 | 2,400 | 0 | 1,200 | 800 | 3,600 | 1,200 | 1,200 | 6,800 |
| Utilities - Telephone | 14,000 | 10,000 | 0 | 0 | 42,000 | 30,000 | 0 | 24,000 | 72,000 | 24,000 | 24,000 | 144,000 |
| Utilities - Data Lines | 0 | 0 | 3,500 | 0 | 0 | 7,000 | 3,500 | 3,500 | 10,500 | 3,500 | 3,500 | 21,000 |
| Utilities Corporate Office - Electric | 0 | 15,000 | 0 | 0 | 0 | 45,000 | 0 | 15,000 | 45,000 | 15,000 | 15,000 | 90,000 |
| Utilities Corporate Office - Water/Sewer | 0 | 0 | 1,200 | 0 | 0 | 2,400 | 1,200 | 1,200 | 3,600 | 1,200 | 1,000 | 7,000 |
| Utilities Corporate Office - Cable | 0 | 200 | 0 | 200 | 0 | 0 | 0 | 200 | 200 | 200 | 200 | 800 |
| Utilities Corporate Office - Trash Removal | 0 | 0 | 300 | 500 | 0 | 0 | 0 | 300 | 500 | 500 | 500 | 1,800 |
| Pest Control | 400 | 0 | 0 | 300 | 0 | 0 | 0 | 400 | 300 | 0 | 0 | 700 |
| HVAC | 0 | 0 | 3,500 | 0 | 0 | 0 | 3,500 | 3,500 | 3,500 | 3,500 | 3,500 | 14,000 |
| Rent - Copiers/Other Office Equipment | 1,000 | 0 | 2,000 | 0 | 0 | 4,000 | 0 | 3,000 | 4,000 | 4,000 | 4,000 | 15,000 |
| Printing | 1,000 | 0 | 750 | 0 | 0 | 0 | 750 | 1,750 | 750 | 750 | 750 | 4,000 |
| Postage/Express Mail | 0 | 4,500 | 0 | 0 | 0 | 4,500 | 0 | 4,500 | 4,500 | 4,500 | 4,500 | 18,000 |
| Office Supplies | 2,000 | 0 | 0 | 2,000 | 0 | 0 | 0 | 2,000 | 2,000 | 2,000 | 2,000 | 8,000 |
| Coffee Service | 0 | 0 | 0 | 800 | 0 | 0 | 0 | 0 | 800 | 800 | 800 | 2,400 |
| Landscaping | 0 | 0 | 0 | 0 | 0 | 0 | 3,000 | 0 | 3,000 | 6,000 | 8,000 | 18,000 |
| Janitorial Supplies | 0 | 1,000 | 0 | 2,000 | 0 | 0 | 0 | 1,000 | 2,000 | 2,000 | 2,000 | 7,000 |
| Mainframe Computer Maint /Software Licenses/Svc | 6,900 | 0 | 0 | 0 | 6,900 | 0 | 0 | 6,900 | 6,900 | 0 | 0 | 13,800 |
| PC Software Licenses and Supplies | 0 | 0 | 0 | 0 | 0 | 4,000 | 0 | 0 | 4,000 | 4,000 | 4,000 | 12,000 |
| Insurance | 0 | 5,000 | 0 | 0 | 0 | 0 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 20,000 |
| Transportation | 0 | 500 | 0 | 0 | 0 | 500 | 0 | 500 | 500 | 500 | 500 | 2,000 |
| Business Travel and Expenses | 0 | 0 | 0 | 0 | 0 | 2,000 | 0 | 0 | 2,000 | 2,000 | 2,000 | 6,000 |
| Mortgage Statements | 0 | 5,000 | 0 | 0 | 0 | 0 | 5,000 | 5,000 | 5,000 | 5,000 | 0 | 15,000 |
| Bank Charges and Lockbox Fees | 0 | 0 | 7,500 | 0 | 0 | 0 | 7,500 | 7,500 | 7,500 | 7,500 | 7,500 | 30,000 |
| Credit Card Fees | 0 | 0 | 27,000 | 0 | 0 | 0 | 27,000 | 27,000 | 27,000 | 27,000 | 27,000 | 108,000 |
| Automobile Expenses (includes van for mailroom, maint) | 0 | 2,000 | 0 | 0 | 4,500 | 0 | 0 | 2,000 | 4,500 | 4,500 | 4,500 | 15,500 |
| RFS Statements (Mortgage/HOA Dues) | 0 | 0 | 0 | 5,000 | 0 | 0 | 0 | 0 | 5,000 | 5,000 | 5,000 | 15,000 |
| Payroll Service (Data) | 0 | 0 | 0 | 6,000 | 0 | 0 | 0 | 0 | 6,000 | 6,000 | 6,000 | 18,000 |
| Employee background/screening checks / recruitment | 0 | 0 | 0 | 5,000 | 0 | 0 | 0 | 0 | 5,000 | 5,000 | 5,000 | 15,000 |
| Offsite Record Storage and Shredding Service | 2,000 | 0 | 0 | 3,000 | 0 | 0 | 0 | 2,000 | 3,000 | 3,000 | 3,000 | 11,000 |
| Assurance Bond | 75 | 0 | 0 | 1,200 | 0 | 0 | 0 | 75 | 1,200 | 1,200 | 1,200 | 3,675 |
| Other | 3,500 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 9,500 | 12,000 | 29,000 | 12,000 | 62,500 |
| Subtotal - G&A | 31,675 | 46,200 | 48,750 | 29,000 | 58,800 | 102,400 | 60,650 | 126,625 | 250,850 | 175,850 | 153,650 | 706,975 |
| Professional Services - Accounting Audits, Lender Audits, | 0 | 0 | 0 | 0 | 0 | 25,000 | 0 | 0 | 25,000 | 10,000 | 10,000 | 45,000 |
| Professional & Administrative Services - BK Legal Fees | 0 | 15,000 | 15,000 | 15,000 | 15,000 | 15,000 | 145,000 | 30,000 | 190,000 | 155,000 | 125,000 | 500,000 |
| Prof & Admin Services - Legal/timeshare regulatory complian | 0 | 0 | 10,000 | 0 | 0 | 0 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 40,000 |
| Professional & Administrative Services (includes IB) | 0 | 0 | 0 | 0 | 0 | 0 | 50,000 | 0 | 50,000 | 0 | 0 | 50,000 |
| Professional Fees - Mackinac (Post-Filing) | 0 | 0 | 0 | 0 | 0 | 75,000 | 0 | 0 | 75,000 | 120,000 | 128,984 | 323,984 |
| Professional Fees - Lenders' Counsel | 0 | 0 | 0 | 200,000 | 0 | 0 | 0 | 0 | 200,000 | 0 | 600,000 | 800,000 |
| US Trustee Fees | 13,000 | 0 | 0 | 13,000 | 0 | 0 | 0 | 13,000 | 13,000 | 0 | 0 | 26,000 |
| Filing and Court / Administrative Fees | 10,000 | 0 | 0 | 0 | 0 | 0 | 0 | 10,000 | 0 | 0 | 0 | 10,000 |
| Restructuring Costs (Legal, Monitoring, pre-BK) | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Clsg & Frcl Costs (includes credit scoring, notary svcs, etc.) | 12,155 | 9,655 | 12,155 | 38,535 | 13,035 | 13,035 | 13,035 | 33,965 | 77,641 | 89,608 | 80,596 | 281,811 |
| Upgrade Repurchases | 28,154 | 28,154 | 28,154 | 32,554 | 32,554 | 32,554 | 32,554 | 84,463 | 130,217 | 166,061 | 118,482 | 499,222 |
| HOA M&T (Net Obligation) | 0 | 0 | 0 | 0 | 0 | 0 | 441,245 | 0 | 441,245 | 513,548 | 152,119 | 1,106,911 |
| Release Fees | 0 | 0 | 57,722 | 24,822 | 21,782 | 20,175 | 23,257 | 57,722 | 90,036 | 133,304 | 112,519 | 393,580 |
| Other Funding Fees | | | | | | | | 0 | 0 | 0 | 0 | 0 |
| Construction / Cap Ex | 2,000 | 0 | 0 | 0 | 0 | 0 | 0 | 2,000 | 0 | 0 | 0 | 2,000 |
| Debt Service (Pre-BK) | | | | | | | | 0 | 0 | 0 | 0 | 0 |
| Debt Service, Textron (Pre-BK) | | | | | | | | 0 | 0 | 0 | 0 | 0 |
| Transfer: to / (from) SCO | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Transfer: to / (from) CRM | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Transfer: to / (from) SPV Conduit (IOI Funding, Inc.) | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Transfer: to / (from) IOR | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Total Outflow | 353,555 | 415,334 | 609,466 | 600,197 | 389,834 | 580,872 | 1,279,278 | 1,378,355 | 2,850,181 | 2,908,912 | 2,735,774 | 9,873,222 |
| Net Change | 186,225 | (94,979) | (111,559) | (142,493) | (90,396) | (3,035) | (776,300) | (20,313) | (1,012,227) | (1,035,636) | (859,195) | (2,927,370) |
| ENDING CASH BALANCE | 189,616 | 94,637 | (16,922) | (159,415) | (249,813) | (252,848) | (1,029,149) | (16,922) | (1,029,149) | (2,064,785) | (2,923,979) | (2,923,979) |

| | 1 | 2 | 3 | 4 | 5 | 6 | 7 | | Monthly Summary | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Fiscal Week # | Fcst | Fcst | Fcst | Fcst | Fcst | Fcst | Fcst | last 3 wks Sep '10 | Oct '10 | Nov '10 | Dec '10 | Total: last 3 wks Sep - Dec '10 |
| | 37 | 38 | 39 | 40 | 41 | 42 | 43 | | | | | |
| | 9/13 - 9/19 | 9/20 - 9/26 | 9/27 - 10/3 | 10/4 - 10/10 | 10/11 - 10/17 | 10/18 - 10/24 | 10/25 - 10/31 | | | | | |
| | | SEPTEMBER 2010 | | | OCTOBER 2010 | | | | | | | |
| **Beginning Cash Balance** | 3,391 | 189,616 | 94,637 | (16,922) | (159,415) | (249,813) | (252,848) | 3,391 | (16,922) | (1,029,149) | (2,084,785) | 3,391 |
| **Inflow:** | | | | | | | | | | | | |
| Presale Funding | | | | | | | | 0 | 0 | 0 | 0 | 0 |
| TFC Crescent Hypo Funding | | | | | | | | 0 | 0 | 0 | 0 | 0 |
| TFC Hypo Funding - House Paper ("Z") | | | | | | | | 0 | 0 | 0 | 0 | 0 |
| TFC Hypo Funding - Post 5/21 (5%) ("*") | | | | | | | | 0 | 0 | 0 | 0 | 0 |
| TFC Hypo Funding - Pre 5/21 Paper ("*") | | | | | | | | 0 | 0 | 0 | 0 | 0 |
| TXT Funding - Liberty rec. pledged to TXT (85%) | | | | | | | | 0 | 0 | 0 | 0 | 0 |
| LBY Forward 85% Hypo Line (net of Release Fees) | | | | | | | | 0 | 0 | 0 | 0 | 0 |
| Liberty Funding (gross of Release fees) | | | | | | | | 0 | 0 | 0 | 0 | 0 |
| Portfolio Cash | 492,444 | 279,052 | 459,615 | 410,361 | 246,216 | 525,262 | 459,604 | 1,231,111 | 1,641,443 | 1,640,059 | 1,636,335 | 6,148,948 |
| House Paper | | | | | | | | 0 | 0 | 0 | 0 | 0 |
| Escrow - Sales Deposits | 37,335 | 36,302 | 33,293 | 42,343 | 48,219 | 47,576 | 38,374 | 106,931 | 176,511 | 208,277 | 220,244 | 711,903 |
| Lando Bulk Inventory Sale | | | | | | | | 0 | 0 | 0 | 0 | 0 |
| Miscellaneous | 10,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 20,000 | 20,000 | 25,000 | 20,000 | 85,000 |
| Pre-Filing Transition Advance | | | | | | | | 0 | 0 | 0 | 0 | 0 |
| Post-Filing Transition Advance | | | | | | | | 0 | 0 | 0 | 0 | 0 |
| Repayment of Post-Filing Transition Advance | | | | | | | | 0 | 0 | 0 | 0 | 0 |
| **Total Inflow** | 539,780 | 320,354 | 497,908 | 457,704 | 299,435 | 577,837 | 502,978 | 1,358,042 | 1,837,954 | 1,873,276 | 1,876,580 | 6,945,852 |
| **Outflow:** | | | | | | | | | | | | |
| Payroll - IOI (Developer) | 167,000 | 164,000 | 164,000 | 164,000 | 164,000 | 164,000 | 164,000 | 495,000 | 656,000 | 820,000 | 656,000 | 2,627,000 |
| Commission | 38,185 | 41,527 | 33,926 | 28,486 | 25,954 | 35,887 | 35,887 | 114,639 | 119,234 | 177,482 | 152,165 | 563,520 |
| Employee Insurance | 17,000 | 0 | 150,000 | 0 | 0 | 0 | 0 | 150,000 | 167,000 | 167,000 | 152,185 | 668,000 |
| Portfolio Servicing (Equiant) | 0 | 67,000 | 56,559 | 0 | 0 | 70,000 | 67,292 | 56,559 | 137,292 | 140,000 | 70,000 | 414,292 |
| Office Rent | | | | 8,000 | 16,408 | | | 8,000 | 24,408 | 56,559 | 56,559 | 225,236 |
| Executive Advisor to the Board Consultant | 12,500 | | | 8,000 | 12,500 | | | 12,500 | 12,500 | 12,500 | 12,500 | 50,000 |
| Tour Pay | 7,448 | 7,000 | 7,000 | 6,500 | 6,500 | 6,500 | 6,500 | 21,468 | 32,500 | 40,000 | 40,000 | 105,968 |
| Food costs | 2,100 | 2,200 | 2,200 | 2,300 | 2,300 | 2,300 | 2,300 | 6,500 | 9,200 | 11,500 | 9,200 | 36,400 |
| Premiums | 12,500 | 15,000 | 15,000 | 12,000 | 12,000 | 12,000 | 12,000 | 30,000 | 48,000 | 60,000 | 48,000 | 186,000 |
| Tour Scoring | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 20,000 |
| Outside Hotel Costs | 5,000 | 5,000 | 4,000 | 3,500 | 3,500 | 3,500 | 3,500 | 9,000 | 14,000 | 14,000 | 14,000 | 54,500 |
| Spiffs | 2,500 | 2,000 | 2,000 | 2,500 | 2,500 | 2,500 | 2,500 | 7,500 | 12,500 | 12,500 | 10,000 | 40,000 |
| Other Sales & Marketing | 817 | 7,597 | | | | | | 10,414 | 15,000 | 15,000 | 10,000 | 40,000 |
| **Subtotal - Sales & Marketing** | 33,385 | 43,797 | 33,200 | 37,800 | 58,708 | 34,800 | 29,800 | 110,382 | 161,108 | 174,500 | 142,700 | 588,690 |
| Utilities : Internet services | 800 | | | | 16,408 | | 1,200 | 800 | 3,600 | 1,200 | 1,200 | 6,800 |
| Utilities : Telephone | 14,000 | 10,000 | | | | 42,000 | 24,000 | 24,000 | 72,000 | 24,000 | 24,000 | 144,000 |
| Utilities : Data Lines | | | 15,000 | | | | 30,000 | 15,000 | 10,500 | 3,500 | | 21,000 |
| Utilities Corporate Office : Electric | | | | | | 7,000 | 45,000 | 15,000 | 45,000 | 15,000 | 15,000 | 90,000 |
| Utilities Corporate Office : Water/Sewer | | 15,000 | 3,500 | 3,500 | | 45,000 | 2,400 | 3,500 | 3,600 | 3,500 | 3,500 | 14,000 |
| Utilities Corporate Office : Cable | | 200 | 1,200 | | | | 1,200 | 1,200 | 1,200 | 1,000 | 200 | 7,000 |
| Utilities Corporate Office : Trash Removal | | | | 200 | | | | 300 | 300 | 200 | 500 | 800 |
| Pest Control | 400 | | 300 | 300 | 300 | | | 400 | 400 | 500 | 1,200 | 1,700 |
| Rent : Copiers/Other Office Equipment | | 3,500 | | | 3,500 | 3,500 | 3,500 | 3,500 | 3,500 | 3,500 | 3,500 | 14,000 |
| HVAC | 1,000 | | | 3,500 | 3,500 | 4,000 | | 3,000 | 4,000 | 4,000 | 4,000 | 15,000 |
| Printing | 1,000 | | 2,000 | | | | 4,000 | 3,000 | 3,000 | 4,000 | 4,000 | 14,000 |
| Postage/Express Mail | | 14,500 | 750 | | 750 | 750 | 750 | 1,750 | 4,750 | 4,750 | 4,750 | 16,000 |
| Office Supplies | 2,000 | | 2,000 | 2,000 | 2,000 | 4,500 | | 4,500 | 4,500 | 4,500 | 4,500 | 18,000 |
| Coffee Service | | | | 800 | | | | 2,000 | 2,000 | 2,000 | 2,000 | 8,000 |
| Landscaping | | | | | | | | 500 | 500 | 500 | 500 | 4,000 |
| Janitorial Supplies | | 1,000 | | 2,000 | | 3,000 | 3,000 | 1,000 | 2,000 | 8,000 | 8,000 | 19,000 |
| | | | | | | | | | | | | 77,000 |

# ISLAND ONE, INC. (IOI)

## SHORT TERM CASH FLOW - PLANNING

Date Prepared: 9/10/10

Filing Date Assumption: Fri, 9/10/10

| | 1 SEPTEMBER 2010 9/13 - 9/19 | 2 SEP 9/20 - 9/26 | 3 SEP 9/27 - 10/3 | 4 OCTOBER 2010 10/4 - 10/10 | 5 OCT 10/11 - 10/17 | 6 OCT 10/18 - 10/24 | 7 OCT 10/25 - 10/31 | Monthly Summary last 3 wks Sep '10 | Oct '10 | Nov '10 | Dec '10 | Total: last 3 wks Sep - Dec '10 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Fiscal Week #** | Fcst 37 | Fcst 38 | Fcst 39 | Fcst 40 | Fcst 41 | Fcst 42 | Fcst 43 | | | | | |
| Maintain Computer Maint /Software Licenses/Svc | 6,900 | | | | 6,900 | | | 6,900 | 6,900 | 4,000 | | 13,800 |
| PC Software Licenses and Supplies | | | | | | | | | | | | 20,000 |
| Insurance | | | | | | | | | | | | |
| Transportation | | | | | | | | | | | | |
| Business Travel and Expenses | | | | | | | | | | | | 2,000 |
| Insurance | | | | | | | | | | | | 6,000 |
| Mortgage Statements | | | | | | | | | | | | 6,000 |
| Bank Charges and Lockbox Fees | | | | | | | | 5,000 | | | | 30,000 |
| Credit Card Fees | | | 27,000 | | 27,000 | 27,000 | | | 27,000 | 27,000 | 27,000 | 108,000 |
| Automobile Expenses (includes van for mailroom, maint) | | | | | | | | | | | | 18,000 |
| RFS Statements (Mortgage/HOA Dues) | | | | | | | | | | | | 15,000 |
| Payroll Service (Data) | | | | | | | | | | | | |
| Employee background/screening checks / recruitment | | | | | | | | | | | | 3,000 |
| Offsite Record Storage and Shredding Service | 75 | | | | | | | 75 | | | | 3,675 |
| Assurance Bond | | | | | | | | | | | | 62,500 |
| Other | 3,500 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 9,500 | 12,000 | 29,000 | 12,000 | 62,500 |
| **Subtotal - G&A** | 31,675 | 46,200 | 48,750 | 29,000 | 58,800 | 102,400 | 60,650 | 126,625 | 250,850 | 175,650 | 153,650 | 708,975 |
| Professional Services - Accounting Audits, Lender Audits, | | 15,000 | 15,000 | 15,000 | 15,000 | 25,000 | 145,000 | 30,000 | 190,000 | 155,000 | 125,000 | 45,000 |
| Professional & Administrative Services - BK Legal Fees | | | 10,000 | 15,000 | 15,000 | 15,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | |
| Prof & Admin Services - Legal/timeshare regulatory complian | | | | | | | 50,000 | | | | | |
| Professional & Administrative Services (includes IB) | | | | 200,000 | | 75,000 | 50,000 | | 75,000 | 120,000 | 128,984 | 323,984 |
| Professional Fees - MacKinac (Post-Filing) | 13,000 | | | 13,000 | | | | 13,000 | 13,000 | | 600,000 | 800,000 |
| Professional Fees - Lenders' Counsel | 10,000 | | | | | | | 10,000 | 13,000 | | | 26,000 |
| US Trustee Fees | | | | | | | | | | | | |
| Filing and Court / Administrative Fees | | | | | | | | | | | | |
| Restructuring Costs (Legal, Monitoring, pre-BK) | 12,155 | 9,655 | 12,155 | 38,535 | 13,035 | 13,035 | 13,035 | 33,965 | 77,641 | 89,608 | 80,596 | 281,811 |
| Cisg & Frcl Costs (includes credit scoring, notary svcs, etc.) | 28,154 | 12,155 | 28,154 | 32,554 | 32,554 | 32,554 | 32,554 | 84,463 | 130,217 | 130,217 | 118,462 | 499,022 |
| Upgrade Repurchases | 28,154 | 28,154 | 28,154 | 32,554 | 32,554 | 32,554 | 32,554 | 84,463 | 441,245 | 441,245 | 152,119 | 1,169,221 |
| HOA M&T (Net Obligation) | | | | | | | 441,245 | | 441,245 | 441,245 | 112,519 | 1,106,911 |
| Release Fees | | | 57,722 | 24,822 | 21,782 | 20,175 | 23,257 | 57,722 | 90,036 | 133,304 | 112,519 | 393,580 |
| Other Funding Fees | | | | | | | | | | | | |
| Construction / Cap Ex | | | | | | | | | | | | |
| Debt Service (Pre-BK) | | | | | | | | | | | | |
| Debt Service, Texron (Pre-BK) | 2,000 | | | | | | | | 2,000 | | | 2,000 |
| Transfer: to/ (from) SCO | | | | | | | | | | | | |
| Transfer: to/ (from) CRM | | | | | | | | | | | | |
| Transfer: to/ (from) SPV Conduit (IOI Funding, Inc) | | | | | | | | | | | | |
| Transfer: to/ (from) IOR | | | | | | | | | | | | |
| **Total Outflow** | 353,555 | 415,334 | 609,466 | 600,197 | 389,834 | 580,872 | 1,279,278 | 1,378,355 | 2,850,181 | 2,908,912 | 2,735,774 | 9,873,222 |
| **Net Change** | 188,225 | (94,979) | (111,569) | (142,493) | (90,398) | (3,035) | (776,300) | (20,313) | (1,012,227) | (1,035,636) | (859,195) | (2,927,370) |
| **ENDING CASH BALANCE** | 189,616 | 94,637 | (16,922) | (159,415) | (249,813) | (252,848) | (1,029,149) | (16,922) | (1,029,149) | (2,064,785) | (2,923,979) | (2,923,979) |

# CRESCENT ONE, LLC (CRM)
## SHORT TERM CASH FLOW - PLANNING

Date Prepared: 9/10/10
Filing Date Assumption: Fri. 9/10/10

| | 1 | 2 | 3 | 4 | 5 | 6 | 7 | Monthly Summary | | | | |
| --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- |
| | SEPTEMBER 2010 | | | OCTOBER 2010 | | | | last 3 wks Sep '10 | Oct '10 | Nov '10 | Dec '10 | Total: last 3 wks Sep - Dec '10 |
| Fiscal Week # | Fcst 37 | Fcst 38 | Fcst 39 | Fcst 40 | Fcst 41 | Fcst 42 | Fcst 43 | | | | | |
| | 9/13 - 9/19 | 9/20 - 9/26 | 9/27 - 10/3 | 10/4 - 10/10 | 10/11 - 10/17 | 10/18 - 10/24 | 10/25 - 10/31 | | | | | |
| Beginning Cash Balance | 9,145 | 32,442 | 43,144 | 64,889 | 81,579 | 93,094 | 117,658 | 9,145 | 64,889 | 139,151 | 212,578 | 9,145 |
| **Inflow:** | | | | | | | | | | | | |
| Portfolio Cash | 23,297 | 13,202 | 21,744 | 19,191 | 11,514 | 24,564 | 21,493 | 58,244 | 76,762 | 75,927 | 75,142 | 286,075 |
| Miscellaneous | | | | | | | | 0 | 0 | 0 | 0 | |
| Total Inflow | 23,297 | 13,202 | 21,744 | 19,191 | 11,514 | 24,564 | 21,493 | 58,244 | 76,762 | 75,927 | 75,142 | 286,075 |
| **Outflow:** | | | | | | | | | | | | |
| G&A | | | | | | | | 0 | 0 | 0 | 0 | |
| Closing/foreclosure costs | | 2,500 | | 2,500 | | | | 2,500 | 2,500 | 2,500 | 2,500 | 10,000 |
| Management Company | | | | | | | | 0 | 0 | 0 | 0 | |
| Club Navigo | | | | | | | | 0 | 0 | 0 | 0 | |
| Transfer: to / (from) IOI | | | | | | | | 0 | 0 | 0 | 0 | |
| Total Outflow | - | 2,500 | - | 2,500 | - | - | - | 2,500 | 2,500 | 2,500 | 2,500 | 10,000 |
| Net Change | 23,297 | 10,702 | 21,744 | 16,691 | 11,514 | 24,564 | 21,493 | 55,744 | 74,262 | 73,427 | 72,642 | 276,075 |
| ENDING CASH BALANCE | 32,442 | 43,144 | 64,889 | 81,579 | 93,094 | 117,658 | 139,151 | 64,889 | 139,151 | 212,578 | 285,220 | 285,220 |

# ISLAND ONE RESORTS MANAGEMENT COMPANY (IOR)

## SHORT TERM CASH FLOW - PLANNING

Date Prepared: 9/10/10

Filing Date Assumption: Fri, 9/10/10

| | 1 | 2 | 3 | 4 | 5 | 6 | 7 | Monthly Summary | | | | Total: last 3 wks |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | Fcst | Fcst | Fcst | Fcst | Fcst | Fcst | Fcst | last 3 wks | | | | |
| Fiscal Week # | 37 | 38 | 39 | 40 | 41 | 42 | 43 | Sep '10 | Oct '10 | Nov '10 | Dec '10 | Sep - Dec '10 |
| | SEPTEMBER 2010 | | | OCTOBER 2010 | | | | | | | | |
| | 9/13 - 9/19 | 9/20 - 9/26 | 9/27 - 10/3 | 10/4 - 10/10 | 10/11 - 10/17 | 10/18 - 10/24 | 10/25 - 10/31 | | | | | |
| Beginning Cash Balance | 5,792 | (10,432) | (50,312) | 177,437 | 182,374 | 208,910 | 163,646 | 5,792 | 177,437 | 405,121 | 800,805 | 5,792 |
| **OPERATING CASH INFLOW:** | | | | | | | | | | | | |
| Management Co Revenues | 101,101 | 158,375 | 223,401 | 111,297 | 134,898 | 141,721 | 201,466 | 488,877 | 589,382 | 747,277 | 614,951 | 2,434,487 |
| HOA Management Fees | 0 | 0 | 206,393 | 0 | 0 | 0 | 242,028 | 206,393 | 242,028 | 206,605 | 642,235 | 1,297,261 |
| Club Navigo Revenue | 20,000 | 20,000 | 20,000 | 20,000 | 20,000 | 20,000 | 20,000 | 40,000 | 40,000 | 161,517 | 687,991 | 929,508 |
| **Total Operating Cash In** | 121,101 | 158,375 | 449,794 | 111,297 | 154,898 | 141,721 | 463,494 | 729,270 | 871,410 | 1,115,399 | 1,945,177 | 4,661,256 |
| **OPERATING CASH OUTFLOW** | | | | | | | | | | | | |
| Payroll | 57,500 | 57,500 | 57,500 | 56,500 | 56,500 | 56,500 | 56,500 | 172,500 | 226,000 | 270,000 | 216,000 | 884,500 |
| Administration | 5,910 | 6,232 | 7,885 | 1,038 | 935 | 2,480 | 3,804 | 20,027 | 8,257 | 14,507 | 14,239 | 57,030 |
| Rental Advertising | 0 | 324 | 11,680 | 10,393 | 150 | 200 | 5,181 | 12,004 | 15,924 | 15,615 | 13,478 | 57,021 |
| Rental Checks | 41,384 | 43,933 | 34,669 | 35,553 | 49,968 | 64,680 | 53,481 | 119,986 | 203,682 | 209,462 | 231,402 | 784,552 |
| Liki Tiki Lagoon | 12,154 | 17,427 | 14,311 | 2,876 | 20,809 | 8,151 | 11,000 | 43,892 | 42,836 | 53,459 | 43,297 | 183,474 |
| Sales/Use/Other Taxes | 14,386 | 66,848 | | | | 54,974 | | 81,234 | 54,974 | 67,372 | 71,252 | 274,832 |
| Allegro | | | | | | | | | | 10,000 | 274,832 | 284,832 |
| Meridian Collections | | | 26,000 | | | | | 26,000 | | | 58,000 | 84,000 |
| Club Navigo - Interval Int'l Fees | | | | | | | 14,000 | | 14,000 | | | 14,000 |
| Club Navigo - Other Expenses | 5,991 | 5,991 | | | | | 70,000 | 11,982 | 70,000 | 68,800 | 68,800 | 219,582 |
| Transfer: to / (from) SCO | | | 70,000 | | | | 8,053 | 70,000 | 8,053 | 10,500 | 55 | 88,608 |
| Transfer: to / (from) IOI | | | | | | | | 0 | 0 | 0 | 0 | 0 |
| Other | | | | | | | | 0 | 0 | 0 | 30,590 | 30,590 |
| **Total Operating Cash Out** | 137,325 | 198,255 | 222,045 | 106,360 | 128,362 | 186,985 | 222,019 | 557,625 | 643,727 | 719,715 | 666,513 | 2,587,580 |
| **Net Change** | (16,224) | (39,880) | 227,749 | 4,937 | 26,536 | (45,264) | 241,475 | 171,645 | 227,683 | 395,684 | 1,278,664 | 2,073,676 |
| **ENDING CASH BALANCE** | (10,432) | (50,312) | 177,437 | 182,374 | 208,910 | 163,646 | 405,121 | 177,437 | 405,121 | 800,805 | 2,079,469 | 2,079,469 |

# ST CROIX ONE, LLC (SCO)
## SHORT TERM CASH FLOW - PLANNING

Date Prepared: 9/10/10
Filing Date Assumption: Fri. 9/10/10

| | 1 | 2 | 3 | 4 | 5 | 6 | 7 | Monthly Summary | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | SEPTEMBER 2010 | | | OCTOBER 2010 | | | | last 3 wks Sep '10 | Oct '10 | Nov '10 | Dec '10 | Total: last 3 wks Sep - Dec '10 |
| Fiscal Week # | F'cst | F'cst | F'cst | F'cst | F'cst | F'cst | F'cst | | | | | |
| | 37 | 38 | 39 | 40 | 41 | 42 | 43 | | | | | |
| | 9/13 - 9/19 | 9/20 - 9/26 | 9/27 - 10/3 | 10/4 - 10/10 | 10/11 - 10/17 | 10/18 - 10/24 | 10/25 - 10/31 | | | | | |
| Beginning Cash Balance | 559 | 15,456 | 28,109 | 35,769 | (6,929) | (4,450) | (1,989) | 559 | 35,769 | 2,862 | (3,987) | 559 |
| **Inflow:** | | | | | | | | | | | | |
| Advance Deposits | 2,500 | 2,500 | 2,500 | 2,461 | 2,462 | 2,461 | 2,462 | 7,500 | 9,844 | 6,864 | 13,712 | 37,921 |
| Maint & Tax Payments (from Owners) | 5,497 | 2,154 | 160 | 724 | 1,018 | 1,390 | - | 7,810 | 3,132 | 10,036 | 1,994 | 22,972 |
| Front Desk | 10,000 | 10,000 | 10,000 | 817 | 18,439 | 6,425 | 18,085 | 30,000 | 43,766 | 37,826 | 55,521 | 167,112 |
| Food & Beverage | 6,000 | 6,000 | 6,000 | 5,800 | 5,800 | 6,500 | 6,500 | 18,000 | 24,600 | 40,500 | 36,000 | 119,100 |
| St. Croix Shortfall to be funded by BB&T | 23,000 | 23,000 | 23,000 | 15,000 | 15,000 | 15,000 | 15,000 | 69,000 | 60,000 | 49,250 | 25,000 | 203,250 |
| **Total Inflow** | 46,997 | 43,654 | 41,660 | 24,801 | 42,718 | 30,385 | 43,437 | 132,310 | 141,342 | 144,476 | 132,227 | 550,355 |
| **Payroll - IOI (Developer)** | | | | | | | | | | | | |
| Payroll - SCO | 12,500 | 12,500 | 12,500 | 12,500 | 12,500 | 12,500 | 12,500 | 37,500 | 50,000 | 62,500 | 50,000 | 200,000 |
| G&A | 1,500 | 2,500 | 1,500 | 15,000 | 1,500 | 2,500 | 1,500 | 5,500 | 20,500 | 8,500 | 59,000 | 93,500 |
| Construction / Cap Ex | | | | | | | | 0 | 0 | 0 | 0 | 0 |
| Resort Operations | 16,000 | 16,000 | 20,000 | 40,000 | 24,239 | 12,925 | 24,585 | 52,000 | 101,749 | 78,326 | 91,521 | 323,595 |
| Club Navigo | 2,100 | - | - | - | 2,000 | - | - | 2,100 | 2,000 | 2,000 | 1,700 | 7,800 |
| Transfer to / (from) IOI | | | | | | | | 0 | 0 | 0 | 0 | 0 |
| Transfer to / (from) IOR | | | | | | | | 0 | 0 | 0 | 0 | 0 |
| **Total Outflow** | 32,100 | 31,000 | 34,000 | 67,500 | 40,239 | 27,925 | 38,585 | 97,100 | 174,249 | 151,326 | 202,221 | 624,895 |
| Net Change | 14,897 | 12,654 | 7,660 | (42,699) | 2,479 | 2,461 | 4,852 | 35,210 | (32,907) | (6,850) | (69,994) | (74,540) |
| **ENDING CASH BALANCE** | 15,456 | 28,109 | 35,769 | (6,929) | (4,450) | (1,989) | 2,862 | 35,769 | 2,862 | (3,987) | (73,981) | (73,981) |

# IOI FUNDING, INC. (SPV)

**SHORT TERM CASH FLOW - PLANNING**

**Date Prepared: 9/10/10**

Filing Date Assumption: Fri. 9/10/10

| | 1 | 2 | 3 | 4 | 5 | 6 | 7 |
|---|---|---|---|---|---|---|---|
| | Fcst | Fcst | Fcst | Fcst | Fcst | Fcst | Fcst |
| | SEPTEMBER 2010 | | | OCTOBER 2010 | | | |
| Fiscal Week # | 37 | 38 | 39 | 40 | 41 | 42 | 43 |
| | 9/13 - 9/19 | 9/20 - 9/26 | 9/27 - 10/3 | 10/4 - 10/10 | 10/11 - 10/17 | 10/18 - 10/24 | 10/25 - 10/31 |
| Beginning Cash Balance | 0 | 117,846 | 182,547 | 292,537 | 390,299 | 448,956 | 572,155 |
| **Inflow:** | | | | | | | |
| Portfolio Cash | 117,846 | 66,780 | 109,990 | 97,762 | 58,657 | 125,135 | 109,493 |
| Miscellaneous | | | | | | | |
| Total Inflow | 117,846 | 66,780 | 109,990 | 97,762 | 58,657 | 125,135 | 109,493 |
| **Outflow:** | | | | | | | |
| Master Servicer Fee (due to Textron) | | 2,079 | | | | 1,936 | |
| Total Outflow | - | 2,079 | - | - | - | 1,936 | - |
| Transfer: to / (from) IOI | | | | | | | |
| Net Change | 117,846 | 64,700 | 109,990 | 97,762 | 58,657 | 123,199 | 109,493 |
| ENDING CASH BALANCE | 117,846 | 182,547 | 292,537 | 390,299 | 448,956 | 572,155 | 681,648 |

| | Monthly Summary | | | | Total: last 3 wks |
|---|---|---|---|---|---|
| | last 3 wks Sep '10 | Oct '10 | Nov '10 | Dec '10 | Sep - Dec '10 |
| Beginning Cash Balance | 0 | 292,537 | 681,648 | 1,069,117 | 0 |
| **Inflow:** | | | | | |
| Portfolio Cash | 294,616 | 391,048 | 389,393 | 387,795 | 1,462,853 |
| Miscellaneous | 0 | 0 | 0 | 0 | 0 |
| Total Inflow | 294,616 | 391,048 | 389,393 | 387,795 | 1,462,853 |
| **Outflow:** | | | | | |
| Master Servicer Fee (due to Textron) | 2,079 | 1,936 | 1,925 | 1,792 | 7,732 |
| | 0 | 0 | 0 | 0 | 0 |
| | 0 | 0 | 0 | 0 | 0 |
| | 0 | 0 | 0 | 0 | 0 |
| Total Outflow | 2,079 | 1,936 | 1,925 | 1,792 | 7,732 |
| Transfer: to / (from) IOI | 0 | 0 | 0 | 0 | 0 |
| Net Change | 292,537 | 389,112 | 387,469 | 386,004 | 1,455,120 |
| ENDING CASH BALANCE | 292,537 | 681,648 | 1,069,117 | 1,455,120 | 1,455,120 |

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

**In re**                                    **Chapter 11**

**ISLAND ONE RESORTS, INC., et al.,**        **Case No. 6:10-bk-16117-KSJ**

                                             **Jointly Administered With Case Nos.:**
                **Debtors.**                 **6:10-bk-16179-KSJ; 6:10-bk-16180-KSJ;**
_____/             **6:10-bk-16182-KSJ; 6:10-bk-16183-KSJ;**
                                             **and 6:10-bk-16189-KSJ**

**INTERIM ORDER GRANTING DEBTORS'
EMERGENCY MOTION FOR USE OF CASH COLLATERAL**

This case came on for hearing on September __, 2010 (the "Hearing"), to consider the motion ("Motion")1 [D.R. ___] by Island One Resorts, Inc., et al., debtors-in-possession (collectively, the "Debtors"), for authorization to use of cash collateral on an emergency interim basis. For the reasons stated on the record of the Hearing, it is

**ORDERED:**

1.       <u>Interim Authorization Granted.</u>

(a)       The Court considered the Motion, the exhibits attached thereto, and the evidence submitted at the interim hearing held on September __, 2010 (the "Interim Hearing"); and notice of the Final Hearing having been given in accordance with Bankruptcy Rules 4001 and 9014; and all objections, if any, to the relief requested in the Motion on an interim basis either having been withdrawn, resolved or overruled by the Court.

(b)       The Debtors' need to use Cash Collateral is immediate and critical to enable the Debtors to administer their chapter 11 cases generally, continue to operate their businesses in the normal course, preserve the value of their estates for all stakeholders, and to implement and execute the orderly sale process as set forth hereinbelow. The ability of the

---

[1]       Capitalized terms used herein and not otherwise defined shall have the meanings ascribed thereto in the Motion.

Debtors to finance their operations, maintain business relationships with their customers, pay their employees and otherwise finance their operations throughout the cases requires the availability of working capital from the use of Cash Collateral, the absence of which would immediately and irreparably harm the Debtors, their estates, and their creditors. The Debtors do not have sufficient available sources of working capital and financing to operate their businesses or maintain their properties in the ordinary course of business without the authorized use of Cash Collateral.

(c)     Given their current financial condition, financing arrangements, and capital structure, the Debtors are unable to obtain financing from sources other than through the use of Cash Collateral on terms more favorable than provided for in this Order. The Debtors likewise have been unable to obtain unsecured credit allowable under Section 364(b)(1) of the Bankruptcy Code as an administrative expense.

(d)     The terms concerning the Debtors' use of Cash Collateral as provided in this First Interim Order were negotiated in good faith and at arms' length among the Debtors and the Secured Creditors (as defined below), and the Secured Creditors' claims, superpriority claims, replacement liens and other protections granted pursuant to this First Interim Order will have the protections provided in Section 364(e) of the Bankruptcy Code and will not be affected by any subsequent reversal, modification, vacatur, amendment, reargument or reconsideration of this First Interim Order or any other order.

(e)     For these reasons, the Motion is granted as provided herein.

2.     <u>Cash Collateral Authorization.</u>

Subject to the provisions of this Order and Paragraph 10 below, the Debtors are authorized to use Cash Collateral to pay: (a) amounts expressly authorized by this Court, including payments to the United States Trustee for quarterly fees; (b) the current and necessary expenses set forth in the budget attached hereto and made a part hereof as Exhibit A; and (c) such

additional amounts as may be expressly approved in writing by Textron Financial Corporation ("TFC") and Liberty Bank, N.A. ("Liberty"), and collectively with TFC, the "Secured Creditors"). Subject to Paragraph 10 below, this authorization will continue until further order of the Court. Except as authorized in this Order, the Debtors are prohibited from using cash collateral.

3.     <u>Debtors' Obligations.</u>

The Debtors shall timely perform all obligations of a debtors-in-possession required by the Bankruptcy Code, Federal Rules of Bankruptcy Procedure, and the orders of this Court.

4.     <u>Access to Records and Premises.</u>

Upon reasonable notice, and provided that it does not unreasonably interfere with the business of the Debtors, the Debtors shall grant to the Secured Creditors access to the Debtors' business records and premises for review and inspection.

5.     <u>Replacement Lien.</u>

Subject to the provisions of this Order and Paragraph 10 below, each creditor, including, but not limited to, the Secured Creditors, with a security interest in Cash Collateral shall have a perfected post-petition lien against Cash Collateral to the same extent and with the same validity and priority as such creditor's prepetition lien, without the need to file or execute any document as may otherwise be required under applicable non-bankruptcy law.

6.     <u>Insurance.</u>

Debtors shall maintain insurance coverage for their properties in accordance with the obligations under the loan and security documents with the Secured Creditors.

7.     <u>Without Prejudice.</u>

This Order is without prejudice to: (a) any subsequent request by a party in interest (including, but not limited to the Secured Creditors) for modified adequate protection or

restrictions on use of Cash Collateral; or (b) any other right or remedy which may be available to the Secured Creditors.

      8.    <u>Creditors' Committee.</u>

The provisions of this Order are without prejudice to the rights of the United States Trustee to appoint a committee or any rights of a duly appointed committee to challenge the validity, priority or extent of any lien(s) asserted against Cash Collateral, subject to the provisions of this Order and Paragraph 10 below.

      9.    <u>Enforcement.</u>

The Court shall retain jurisdiction to enforce the terms of this First Interim Order.

      10.    <u>Other Non-Standard Terms or Conditions.</u>

      a)    Debtors' Acknowledgment of Indebtedness; Stipulations. Subject to Paragraph 10(g) below and the entry of a Final Order (as it may be amended or modified by the Secured Creditors and the Debtors) and the First Interim Budget (defined below), the Debtors hereby acknowledge and agree that:

      i.    TFC Receivables Loan. (a) Each of the TFC Obligors is jointly and severally liable to TFC in respect of the TFC Pre-Petition Receivables Loan in the amount of $_____, as of_____ __, 2010 (the "TFC Receivables Claim"), together with such other interest accruing from and after such date under the Pre-Petition Loan Documents, plus all fees, costs, expenses, and costs of collection (including, without limitation, reasonable attorneys' fees) as set forth in the Pre-Petition Receivables Loan Documents, heretofore or hereafter incurred by TFC in connection therewith, to the extent allowable by the Court pursuant to § 506(b) of the Bankruptcy Code and subject to the rights of the Debtors to contest under § 506(b) of the Bankruptcy Code the allowance or payment of those amounts to TFC (the "506(b) Rights"); and

      (b)    The TFC Receivables Claim is secured by a valid, perfected, and unavoidable first priority security interest in the TFC Receivables Collateral (subject to the provisions of Paragraph 10(a)(i) above) and shall constitute an allowed secured claim pursuant to

§ 506(b) of the Bankruptcy Code for all purposes in connection with the Debtors' Chapter 11 Cases.

ii.      TFC/Crescent Receivables Loan.  (a) The TFC Crescent Obligors are jointly and severally liable to TFC in respect of the TFC Pre-Petition Crescent Receivables Loan in the amount of $_____, as of_____ __, 2010 (the "TFC Crescent Receivables Claim"), together with such other interest accruing from and after such date under the Pre-Petition Crescent Loan Documents, plus all fees, costs, expenses, and costs of collection (including, without limitation, reasonable attorneys' fees) as set forth in the Pre-Petition Crescent Receivables Loan Documents, heretofore or hereafter incurred by TFC in connection therewith, to the extent allowable by the Court pursuant to § 506(b) of the Bankruptcy Code and subject to the rights of the Debtors' 506(b) Rights; and

(c)      The TFC Crescent Receivables Claim is secured by valid, perfected, and unavoidable first priority security interests in the TFC Crescent Receivables Collateral (subject to the provisions of Paragraph 10(b)(i) above) and shall constitute an allowed secured claim pursuant to § 506(b) of the Bankruptcy Code for all purposes in connection with the Debtors' Chapter 11 Cases.

iii.      TFC/Conduit Receivables Loan.  (a) The TFC Conduit Obligors are jointly and severally liable to TFC in respect of the TFC Pre-Petition Conduit Receivables Loan in the amount of $_____, as of_____ __, 2010 (the "TFC Conduit Receivables Claim"), together with such other interest accruing from and after such date under the Pre-Petition Conduit Loan Documents, plus all fees, costs, expenses, and costs of collection (including, without limitation, reasonable attorneys' fees) as set forth in the Pre-Petition Conduit Receivables Loan Documents, heretofore or hereafter incurred by TFC in connection therewith, to the extent allowable by the Court pursuant to § 506(b) of the Bankruptcy Code and subject to the rights of the Debtors' 506(b) Rights; and

(d)     The TFC Conduit Receivables Claim is secured by valid, perfected, and unavoidable first priority security interests in the TFC Conduit Receivables Collateral (subject to the provisions of Paragraph 10(c)(i) above) and shall constitute an allowed secured claim pursuant to § 506(b) of the Bankruptcy Code for all purposes in connection with the Debtors' Chapter 11 Cases.

(iv).     New Liberty/TFC Receivables Loan.     (a) The New Liberty/TEXTRON Receivables Obligors are jointly and severally liable to Liberty, as agent, in respect of the New Liberty/TFC Receivables Loan in the amount of $_____, as of _____ __, 2010 (the "New Liberty/TFC Receivables Claim"), together with such other interest accruing from and after such date under the New Liberty/TFC Pre-Petition Loan Documents, plus all fees, costs, expenses, and costs of collection (including, without limitation, reasonable attorneys' fees) as set forth in the New Liberty/TFC Pre-Petition Receivables Loan Documents, heretofore or hereafter incurred by Liberty, as agent, in connection therewith, to the extent allowable by the Court pursuant to § 506(b) of the Bankruptcy Code and subject to the rights of the Debtors' 506(b) Rights; and

(e)     The New Liberty/TFC Receivables Claim is secured by valid, perfected, and unavoidable first priority security interests in the New Liberty/TFC Receivables Collateral (subject to the provisions of Paragraph 10(d)(i) above) and shall constitute an allowed secured claim pursuant to § 506(b) of the Bankruptcy Code for all purposes in connection with the Debtors' Chapter 11 Cases.

(f)     Waiver of Claim/Lien Challenges.

(i)     Subject to Paragraphs 10(a) above and Paragraph 10(g) below, the Debtors hereby acknowledge and agree that they have no offsets, defenses, claims, or counterclaims against the Secured Creditors, or the Secured Creditors' officers, directors, employees, attorneys, representatives, parent, affiliates, predecessors, successors, or assigns, with respect to the pre-petition indebtedness due and owing to either or both of them, or otherwise, and

that if any of the Debtors now has, or ever did have, any offsets, defenses, claims, or counterclaims against the Secured Creditors, or its/their officers, directors, employees, attorneys, representatives, parent, affiliates, predecessors, successors, or assigns, whether known or unknown, at law or in equity, from the beginning of the world through this date, all of them are hereby expressly WAIVED, and each of the Debtors hereby RELEASES the Secured Creditors and its/their respective officers, directors, employees, attorneys, representatives, parent, affiliates' predecessors, successors, and assigns from any liability therefor.

(ii.) Subject to Paragraphs 10(a) above and Paragraph 10(g) below, any and all challenges by the Debtors (a) to the validity, sufficiency, priority or amount of the TFC Receivables Claim, TFC Crescent Receivables Claim, TFC Conduit Receivables Claim, and/or New Liberty/TFC Receivables Claim, as and to the extent applicable; (b) the perfection of TFC and/or Liberty's, as agent, security interests and liens in the TFC Receivables Collateral, TFC Crescent Receivables Collateral, TFC Conduit Receivables Collateral, and/or New Liberty/TFC Receivables Collateral, as and to the extent applicable; and (c) any and all transfers received by TFC or Liberty, as agent, prior to the Filing Date with respect to the TFC Receivables Claim, TFC Crescent Receivables Claim, TFC Conduit Receivables Claim, and/or New Liberty/TFC Receivables Claim, including, but not limited to, claims or challenges pursuant to §§ 506(c), 544, 547, 548, 549, 550, and 553 of the Bankruptcy Code, shall be forever barred.

11. <u>First Interim Budget.</u>

(i) Anything herein to the contrary notwithstanding, the Debtors are authorized to continue their use of the Secured Creditors' Cash Collateral during the period from September 10, 2010 through and including 5:00 p.m. (ET) on October 8, 2010 (the "First Interim Period"), on the terms, for the purposes, and in the amounts set forth in the First Interim Budget attached hereto and made a part hereof as Exhibit "A". Unless sooner terminated in accordance with the terms of this First Interim Order, the Debtors' right to use the Secured Creditors' Cash Collateral shall terminate ("Termination") at 5:00 pm (prevailing eastern time) on October 8, 2010. Upon

Termination, the Debtor shall immediately cease using the Secured Creditors' Cash Collateral; however, nothing herein shall be deemed a waiver of the Debtors' right to seek authority to continue their use of the Secured Creditors' Cash Collateral beyond the Termination, in accordance with §§ 361 and 363 of the Bankruptcy Code and the right of the Secured Creditors to object thereto.

(ii)     The Debtors warrant and represent that, as of the date of this First Interim Order, the Budget includes all reasonable, necessary, and foreseeable expenses to be incurred in connection with the Chapter 11 Cases and the operation of the Debtors' businesses for the First Interim Period.

(iii)     The Debtors agree not to knowingly or intentionally incur any administrative expenses other than as set forth in the Budget, including any professional fees approved by the Bankruptcy Court pursuant to §§ 330, 331, or 503(b) of the Bankruptcy Code and fees payable pursuant to 28 U.S.C. § 1930, without the prior written consent of the Secured Creditors or approval by the Bankruptcy Court after notice to the Secured Creditors and a hearing; provided that the Secured Creditors consent to the Debtors' establishment  under the First Interim Budget of a legal reserve in favor of Debtors' counsel in the amounts and at the times provided for in the First Interim Budget.

(iv)     In no event shall the Debtors use any of the Secured Creditors' Cash Collateral to pay any items:

(a)     Not contained in the Budget, except as approved by the Court after written notice to the Secured Creditors and a hearing, or after written request to the Secured Creditors and receipt by the Debtors of the Secured Creditors' written consent;

(b)     In excess of the amount set forth in the Budget, whether by line item category, or in the aggregate subject, however, to the following:

(i)     with respect to any amount to be paid in a given week, in the event such amount is not paid and carried over to a subsequent week, the weekly and aggregate amounts shall be adjusted accordingly; and

(ii)    subject to (a) above, the Debtors shall not exceed any weekly amount, on a cumulative basis, by more than 10% without prior approval of the Secured Creditors or by order of the Court; and

(iii)    In advance of the week in which any cash disbursement (as otherwise contemplated in the Budget), is scheduled to be paid without prior approval of the Secured Creditors or by order of the Court.

(c)    In a manner that is otherwise inconsistent with the terms and provisions of this First Interim Order.

12.    <u>Adequate Protection.</u>

Anything in paragraph 5 above to the contrary notwithstanding, the Secured Creditors are granted the following adequate protection for any diminution in the value of its/their respective interests in their respective Cash Collateral from and after the Filing Date resulting from (a) the use, sale, lease, disposition, shrinkage, decline in market value, consumption or physical deterioration of their Cash Collateral by any one or more of the Debtors, and (b) the imposition of the automatic stay pursuant to § 362(a) of the Bankruptcy Code:

(a)    The Secured Creditors are hereby granted a replacement lien (the "Replacement Liens"), not to exceed the value of their respective Cash Collateral used, to the extent of the amount of the TFC Receivables Claim, TFC Crescent Receivables Claim, TFC Conduit Receivables Claim, and/or New Liberty/TFC Receivables Claim, as and to the extent applicable (less any post-petition reductions in the TFC Receivables Claim, TFC Crescent Receivables Claim, TFC Conduit Receivables Claim, and/or New Liberty/TFC Receivables Claim, as and to the extent applicable) exceeds the value of the pre-petition TFC Receivables Collateral, TFC Crescent Receivables Collateral, TFC Conduit Receivables Collateral, and/or New Liberty/TFC Receivables Collateral, as and to the extent applicable (as agreed to by the applicable Secured Creditor and Debtors, or

as determined by the Court), in all of the Debtor's pre-petition and post-petition assets of every kind, nature, and description, tangible and intangible, now existing or hereafter arising, including, but not limited to, all "Timeshare Interests" (as defined in the Loan Documents), all notes receivable with respect to Timeshare Interests that previously have been sold, all mortgages covering Timeshare Interests that previously have been sold, all contracts, including the food and beverage lease and all sales and marketing agreements, all accounts, inventory, equipment, general intangibles, goods, motor vehicles, real estate, and leasehold interests, as well as all products and proceeds thereof (collectively, the "Post-Petition Collateral"). The post-petition grant of the foregoing security interests shall be supplemental to and in addition to, the security interest which the Secured Creditors possess(es) pursuant to the Secured Creditors' respective pre-petition loan documents.

(b)     The Replacement Liens granted to the Secured Creditors pursuant to this First Interim Order shall be prior and senior to all liens and encumbrances of (a) all other secured creditors in and to such property granted, or arising, subsequent to the date of this Order (including, without limitation, liens and security interests, if any, granted in favor of any federal, state, municipal or other governmental unit, commission, board or court for any liability of the Debtors other than taxes); (b) any intercompany claim of any Debtor or subsidiary of any Debtor; and (c) any security interest or lien that is avoided or otherwise preserved for the benefit of any Debtor's estate pursuant to § 551 of the Bankruptcy Code; provided, however, that the Replacement Liens granted to the Secured Creditors pursuant to this First Interim Order: (x) shall be subject, during the First Interim Period, to a carveout for any quarterly or other fees payable to the United

States Trustee pursuant to, inter alia, 28 U.S.C. § 1930(a); (y) shall not attach to any claims for relief under Chapter 5 of the Bankruptcy Code or the proceeds thereof (other than claims arising under section 549 of the Bankruptcy Code); and (z) shall not prime any valid, perfected, and non-avoidable pre-petition lien held by, or granted to, any other party. The Replacement Liens granted pursuant to this First Interim Order shall constitute valid and duly perfected security interests and liens, and the Secured Creditors shall not be required to file or serve financing statements, notices of lien or similar instruments which otherwise may be required under federal or state law in any jurisdiction, or take any action, including taking possession, to validate and perfect such security interests and liens; and the failure by the Debtors to execute any documentation relating to the Replacement Liens shall in no way affect the validity, perfection or priority of such replacement liens. If, however, the Secured Creditors, in their sole discretion, shall determine to file any such financing statements, notices of lien or similar instruments, or to otherwise confirm perfection of such Replacement Liens, the Debtors are directed to cooperate with and assist in such process, the stay imposed by § 362(a) of the Bankruptcy Code hereby is lifted to allow the filing and recording of a certified copy of this Interim Order or any such financing statements, notices of lien or similar instructions, and all such documents shall be deemed to have been filed or recorded at the time and date of this First Interim Order.

(c)     The Replacement Liens will be first in priority if no other valid or non-avoidable pre-existing lien(s) exist on the subject Post-Petition Collateral, and junior in priority if valid and non-avoidable pre-existing lien(s) do exist on the subject Post-Petition Collateral. The lien granted to the Secured Creditors herein may not be primed

by any other lien or encumbrance, except by order of the Bankruptcy Court pursuant to, and within the meaning of, §§ 364(d)(l) and (d)(2) of the Bankruptcy Code. All rights of the Secured Creditors to object to any priming are expressly reserved.

(d)     If, and to the extent that, the Replacement Liens described in paragraphs (i) and (ii) above and adequate protection payments described below are insufficient to provide adequate protection for the Secured Creditors, each of the Secured Creditors is hereby granted allowed superpriority claims against the Debtors' estates pursuant to § 507(b) of the Bankruptcy Code (the "Lenders' Superpriority Claims"), with priority in payment over any and all administrative expenses of the kinds specified or ordered pursuant to any provision of the Bankruptcy Code, including, but not limited to, Bankruptcy Code §§ 105, 326, 328, 330, 331, 503(b), 507(a), 507(b), 1113 and 1114, and shall at all times be senior to the rights of the Debtors, and any successor trustee or any creditor, in the Chapter 11 Cases or any subsequent proceedings under the Bankruptcy Code.  No cost or expense of administration asserted against the Debtors' estates under §§ 105, 503(b) and 507(b) of the Bankruptcy Code shall be senior to, or pari passu with, the Lenders' Superpriority Claims.

(e)     The liens and security interests created herein shall continue in full force and effect until the TFC Receivables Claim, TFC Crescent Receivables Claim, TFC Conduit Receivables Claim, and/or New Liberty/TFC Receivables Claim, as and to the extent applicable, has been indefeasibly paid in full in cash, including all principal and, to the extent authorized by the Court pursuant to § 506(b) of the Bankruptcy Code, such interest, fees, costs, and expenses, including reasonable attorneys' fees, whether currently existing or hereafter accrued and incurred, as provided for by the applicable pre-petition

loan documents. Except as otherwise provided herein, the lien and security interest granted and created herein and the priorities of same shall not be affected by the incurrence of indebtedness pursuant § 364 of the Bankruptcy Code, or otherwise.

(f)     Subject to the entry of a Final Order, no expenses of administration of the Debtors' estates shall be charged pursuant to § 506(c) of the Bankruptcy Code, or otherwise, against the TFC Receivables Collateral, TFC Crescent Receivables Collateral, TFC Conduit Receivables Collateral, and/or New Liberty/TFC Receivables Collateral, as and to the extent applicable, or the Post-Petition Collateral. Nothing contained in this First Interim Order shall be deemed to be the consent by the Secured Creditors, whether express or implied, to any claims against the TFC Receivables Collateral, TFC Crescent Receivables Collateral, TFC Conduit Receivables Collateral, and/or New Liberty/TFC Receivables Collateral, as and to the extent applicable, or the Post-Petition Collateral under § 506(c) of the Bankruptcy Code.

(g)     The Secured Creditors shall not be subject to the equitable doctrine of "marshaling" or any other similar doctrine with respect to any of the Collateral (whether pre-petition or post-petition). Additionally, the Secured Creditors shall each be entitled to all of the rights and benefits of Section 552(b) of the Bankruptcy Code, and the "equities of the case" exception under Section 552(b) of the Bankruptcy Code shall not apply to the Secured Creditors with respect to proceeds, product, offspring or profits of any of the Collateral upon entry of a Final Order, to the extent such relief is granted.

(i)     As additional adequate protection, the Debtors, without further order of or application to the Court, stipulate and agree to the accrual of post-petition interest on and after the Filing Date with respect to the TFC Receivables Claim, TFC

Crescent Receivables Claim, TFC Conduit Receivables Claim, and/or New Liberty/TFC Receivables Claim, as and to the extent applicable, at the contractual default rate set forth in the applicable pre-petition loan documents, subject to the Debtors' 506(b) Rights. Notwithstanding any provision of this First Interim Order or the Secured Creditors' applicable pre-petition loan documents to the contrary, the Secured Creditors reserve, and this First Interim Order is without prejudice to, their respective rights to, among other things, claim additional interest (including default interest), fees and expenses (including, without limitation, professional fees and expenses) in an amount greater than the amounts provided for in this First Interim Order.

(j)     As additional adequate protection, the Debtors, without further order of or application to the Court, are directed and authorized to pay the post-petition out-of-pocket costs and expenses incurred by the Secured LendersCreditors within 10 days of submission of an invoice (including, without limitation, reasonable fees and expenses of counsel; any dispute as to the reasonableness of such fees shall be subject to the jurisdiction of this Court).  Notwithstanding any provision of this First Interim Order or the Secured Creditors' applicable pre-petition loan documents to the contrary, the Secured Creditors reserve, and this First Interim Order is without prejudice to, their respective rights to, among other things, claim additional interest (including default interest), fees and expenses (including, without limitation, professional fees and expenses) in an amount greater than the amounts provided for in this First Interim Order, and any Debtors may withhold payment of only those amounts properly disputed).

(k)     As additional adequate protection, the Debtors, without further order of or application to the Court, are directed and authorized to continue to engage and utilize the services in the normal course of their operations of Equiant Financial Services ("Equiant") as the

Debtors' servicer of the various notes receivable portfolios that make up a part of the Secured Creditors' pre-petition and post-petition collateral, and to continue to compensate Equiant in the normal course in the amounts and at the times as are set forth in the First Interim Budget.

13. <u>Sale/Marketing of Company; Plan Conformation; Appointment of Chief Sale Officer.</u>

(a) The Debtors have delivered to the Secured Creditors a proposed sale process and plan confirmation timeline. As a condition to the Secured Creditors' consent to the Debtor's use of their Cash Collateral in the manner and for the periods provided herein, the Debtors shall effectuate the following agreed sale/confirmation timetable ("Confirmation Process"):

(i) on or before [October 1], 2010, the Debtors shall have filed a proposed plan of reorganization ("Plan") and related proposed disclosure statement ("Disclosure Statement") providing for, inter alia, the sale of its equity interests to [Bay Harbour] or such potential purchaser that makes the highest and best offer for the equity interests in the Debtors; provided that the terms and provisions of the Plan and Disclosure Statement must be satisfactory to the Secured Creditors, in their discretion;

(ii) on or before [October 1], 2010, the Debtors shall include in the Disclosure Statement or file a motion for expedited approval of bidding procedures ("Bidding Procedures") with respect to the sale of the equity interests in the Debtors as provided for in the Plan, which sale and bidding/auction procedures shall be acceptable to the Secured Creditors in their sole discretion. In the event the Debtors file a Bidding Procedures motion, the Debtors shall use commercially reasonable efforts to obtain the Bidding Procedures Order no later than [November 1], 2010;

(iii) on or before [November 1], 2010, the Court shall have entered an order, inter alia, approving the Disclosure Statement and ;

(iv) on or before [November 22], 2010, the Debtors' shall have required and received letters of interest from interested parties for the purchase and sale of the equity interests in the Debtors as provided for in the Plan, which letters of interest shall be in form and substance acceptable to the Secured Creditors in their sole discretion;

(v) on or before [December 3], 2010, the Debtors shall have required and received executed purchase agreements for the purchase and sale of the equity interests in the Debtors as provided for in the Plan, which

letters of interest shall be in form and substance acceptable to the Secured Creditors in their sole discretion;

(vi)    to the extent the Debtors are pursuing a refinancing of the obligations owing to the Secured Creditors, on or before [December 3], 2010, the Debtors shall have delivered to the Secured Creditors a written refinancing commitment from a lender acceptable to the Secured Creditors which contemplates indefeasible payment in full in cash of all obligations owing to the Secured Creditors and is otherwise in form and content acceptable to the Secured Creditors in their sole discretion;

(vii)    on or before [December 10], 2010, the Debtors shall have conducted and completed the auction or auctions ("Auction") contemplated by the approved Bidding Procedures or Disclosure Statement with respect to the purchase and sale of the equity interests in the Debtors as provided for in the Plan;

(viii)    on or before [December 17], 2010, the Debtors shall have obtained Bankruptcy Court approval of the sale of the equity interests in the Debtors as provided for in the Plan; and

(ix)    on or before [December 17], 2010, the Bankruptcy Court shall have entered an order, inter alia, confirming the Plan (as same shall have been modified to reflect the successful offer received and accepted at the Auction), including, but note limited to, approving the sale of the equity interests in the Debtors as provided for in the Plan.

(b)    As additional adequate protection for the use of Cash Collateral, the Debtors shall continue and expand the employment and role of Mackinac Partners ("Mackinac"), presently the Debtors' Chief Restructuring Officer ("CRO"), to include the expanded role of "Chief Sale Officer" of the Debtors ("CSO"), and the Debtors shall be authorized to compensate Mackinac at the times and as provided for in the First Interim Budget. In addition to its role as CRO, Mackinac, as the CSO, will have the following additional duties and responsibilities:

(i)    Direct the sale process of all or substantially all of the assets of the Debtors in a manner designed to maximize value for stakeholders, subject to Court oversight and approval;

(ii)    Interface with the investment bankers and prospective bidders, as well as the Debtors' senior employees to the extent necessary to obtain information relevant to the sale process. Each of the Debtors' officers and directors shall have an affirmative obligation to fully cooperate with CSO and to afford the CSO access to all information concerning the

Debtors deemed by the CSO to be necessary or appropriate to the discharge of his/her role.

(iii)     The CSO shall have responsibility for making decisions on behalf of the Debtors regarding the retention of investment bankers, brokers, sales consultants, etc., and on what terms, subject to Court approval.

(iv)     Negotiate with competing bidders regarding the terms of their offers (including, for these purposes, the evaluation, value, treatment, assumption and/or rejection of executory contracts and unexpired leases in the context of the sale efforts);

(v)     Receive legal advice from Debtors' counsel and make decisions in the best interests of the Debtors'' estates and their creditors relating to the sale process, including bidding procedures (such as break-up fees, expense reimbursement and bidding increments), what constitutes a qualified bid, the conduct of the auction, and the manner to assess the highest and best bid, subject to Court approval. The CSO shall be authorized and directed to consult with the Secured Creditors and their agents at all stages of the sale process; provided, however, the CSO shall not be authorized to disclose anything that would be subject to any applicable privilege.The CSO shall not  be authorized to consult with counsel for the Secured Creditors without Debtors' counsel being present;

(vi)     Exercise exclusive corporate authority of the Debtors to make decisions on the Debtors' behalf for those matters listed herein;

(vii)     Ensure that a data room has complete and current information, and that eligible parties have prompt access to the data subject to standard confidentiality agreements;

(viii)     Make applications through Debtors' counsel, declarations and/or provide testimony to the Court regarding the sale process and requested approvals;

(ix)     Report regularly to the Court (through Debtors' counsel), Debtors' counsel, the Debtors' management team, and parties in interest on the status of the sale efforts; and

(x)     Such other administrative functions as may be necessary and appropriate to effectuate the sale process in a manner designed to realize upon the highest value for the Debtors assets.

f)       Financial Reporting.

The Debtors shall furnish to the Secured Creditors such financial and other information as the Secured Creditors shall reasonably request, including, but not limited to the following:

a)       On or before the close of business on each Thursday during the First Interim Period, each of the following financial reports:

    (i)      disbursements for the preceding week
             ending the preceding Friday;

    (ii)     sales, including, without limitation, for food and
             beverage, and in-house sales of Timeshare
             Interests for the week ending the preceding
             Friday; and

    (iii)    receipts for the week ending the preceding Friday.

b)       Any financial information and pleadings filed with the Court shall be served upon the Secured Creditors and their counsel simultaneously with the filing of such information or pleading with the Court.

c)       All other financial information and reports prepared by the Debtors in the ordinary course of its business, including any financial information required by the Court or by the Operating Guidelines and Reporting Requirements of the U.S. Trustee's Office subject, however, to any applicable attorney-client and/or work-product privileges.

d)       All other reports and financial information required to be provided to the Secured Creditors by the Secured Creditors' respective pre-petition loan documents or historically provided to the Secured Creditors that are not duplicative of or inconsistent with post-petition budgets, reports, or financial information, and any additional reports as may be reasonably requested by the Secured Creditors from time to time.

g)       Claims/Lien Challenge Period.

(a)       Notwithstanding the provisions of Paragraph 10(a) above, any subsequently appointed statutory committee, a successorany trustee or any other party in interest

with requisite standing claiming by, through or under any one or more of the Debtors, other than

the Debtors, may file an objection to the amount of the TFC Receivables Claim, TFC Crescent

Receivables Claim, TFC Conduit Receivables Claim, and/or New Liberty/TFC Receivables

Claim, as and to the extent applicable, or file (or seek authority to file, as the case may be) a

complaint on behalf of the estates under §§ 544, 547, 548, 549, 550, or 553 of the Bankruptcy

Code challenging the validity, priority, or extent of TFC's and/or Liberty's security interests in

the TFC Receivables Collateral, TFC Crescent Receivables Collateral, TFC Conduit Receivables

Collateral, and/or New Liberty/TFC Receivables Collateral, as and to the extent applicable, or

otherwise seeking to avoid or recover any transfers received by TFC and/or Liberty with respect

to the TFC Receivables Claim, TFC Crescent Receivables Claim, TFC Conduit Receivables

Claim, and/or New Liberty/TFC Receivables Claim, as and to the extent applicable. Any such

objection or complaint (as is applicable) shall set forth the basis for the objection or complaint,

and the reason why the TFC Receivables Claim, TFC Crescent Receivables Claim, TFC Conduit

Receivables Claim, and/or New Liberty/TFC Receivables Claim, as and to the extent applicable,

should not be allowed in full. If no such objection or complaint (as is applicable) is filed: (a) by a

statutory committee on or before sixty (60) days after the appointment thereof, or (b) by a trustee

on or before forty-five (45) days following the date of entry of a Final Order (as applicable, the

"Challenge Period"), any and all challenges by any party to the TFC Receivables Claim, TFC

Crescent Receivables Claim, TFC Conduit Receivables Claim, and/or New Liberty/TFC

Receivables Claim, as and to the extent applicable, or the Secured Creditors' security interests or

liens against the TFC Receivables Collateral, TFC Crescent Receivables Collateral, TFC Conduit

Receivables Collateral, and/or New Liberty/TFC Receivables Collateral, as and to the extent

applicable, or transfers received by the Secured Creditors in respect of the TFC Receivables

Claim, TFC Crescent Receivables Claim, TFC Conduit Receivables Claim, and/or New

Liberty/TFC Receivables Claim, as and to the extent applicable, including, but not limited to,

those under §§ 544, 547,548, 549, 550 and 553 of the Bankruptcy Code (including, without

limitation, any claimsuch challenge or any such claim as described herein including, but not limited to, claims seeking to subordinate or recharacterize the Secured Creditors' claims or liens), shall be forever barred. The Challenge Period may only be extended with the written consent of the Secured Creditors, or by order of the Court.

(b)  The Secured Creditors' Cash Collateral may not be used in connection with: (i) objecting, challenging, litigating, opposing, or seeking to subordinate or recharacterize in any way any claims or liens held by or on behalf of any of the Secured Creditors; (ii) asserting, commencing or prosecuting any claims or causes of action, including, without limitation, any actions under Chapter 5 of the Bankruptcy Code, against any of the Secured Creditors, or any of their respective affiliates, agents, attorneys, advisors, professionals, officers, directors and employees; or (iii) prosecuting an objection to, or contesting or opposing in any manner, or raising any defenses to, the validity, extent, amount, perfection, priority, character or enforceability of any of the Secured Creditors' respective claims or liens, including, without limitation, the Replacement Liens; provided, however, that Cash Collateral, in an amount not to exceed $25,000 in the aggregate, may be used for allowed fees and expenses incurred solely by a statutory committee, if appointed, in investigating (but not objecting to, challenging, litigating, opposing, or seeking to subordinate or recharacterize) the validity, enforceability, perfection, priority, character or extent of the Secured Creditors' respective claims or liens, including, without limitation, the Replacement Liens, during the Challenge Period (as defined herein).

h)  Default; Termination of Cash Collateral Use.

Anything in this First Interim Order to the contrary notwithstanding, the Debtors shall be prohibited from using the Secured Creditors' Cash Collateral absent further order of this Court upon the Secured Creditors having first notified the Debtors, any statutory committee(s), and the U.S. Trustee in writing that an Event Of Default has occurred and is continuing. For purposes of this Interim Order, an "Event Of Default" shall occur if (a) the Debtors fail to perform any of their obligations in accordance with the terms of this First Interim

Order, including, without limitation, their failure to use Cash Collateral in compliance with the Budget, (b) any representation or warranty made by the Debtors under this First Interim Order or any pleading, certificate, report or financial statement delivered to the Secured Creditors in these Chapter 11 Cases proves to have been false or misleading in any material respect as of the time when made or given (including by omission of material information necessary to make such representation, warranty or statement not misleading), (c) the appointment of a Chapter 11 trustee or examiner with duties in addition to those set forth in §§ 1106(a)(3) and (a)(4) of the Bankruptcy Code, (d) one or more of the Debtors' Chapter 11 Cases are converted to cases under Chapter 7, (e) without the prior written consent of the Secured Creditors, the Debtors shall file a motion seeking to grant a third party a security interest or lien upon all or part of any property of the Debtors that has a priority which is senior to, or equal with, the Secured Creditors' pre-petition liens or the Replacement Liens in all or any of a portion of such property, (f) the Debtors shall fail to furnish to the Secured Creditors the financial reporting required under Paragraph 10(f) hereof, (g) the Debtors shall fail to provide the Secured Creditors with the access provided for under Paragraph 4 above, (h) the termination by any one or more of the Debtors of the CSO, or the interference by the Debtors in the performance by the CSO of his/her duties as set forth in Paragraph 10(e)(ii) above, (i) failure by the Debtors to implement the Confirmation Process in the manner and within the times set forth in Paragraph 10(e)(i) above, (j) the grant by the Court of a motion for relief from the automatic stay in favor of any party of other than the Secured Creditors with respect to any portion of the secured Creditors' collateral (including, but not limited to, any Cash Collateral), (k) reversal, vacatur, or reconsideration of this First Interim Order by the Court, or (l) there is filed by the Debtors any motion to amend or modify the terms of this First Interim Order without the prior written consent of the Secured Creditors; provided, however, that to the extent the alleged Event Of Default is a payment default or otherwise susceptible to cure, the Secured Creditors shall provide the Debtors and their counsel with written notice thereof and five (5) days' opportunity to cure such default. If the Secured Creditor believes that the Debtors have

used their Cash Collateral in a manner not consistent with this First Interim Order, or fails to provide the Secured Creditors with financial information as requested or with the access as provided above, the Secured Creditors shall be permitted to seek relief, including, without limitation, termination of the Debtors' use of Cash Collateral, on an emergency or expedited basis. Upon Termination of the Debtors' right to use Cash Collateral pursuant to the terms of this First Interim Order, nothing in this First Interim Order shall be deemed to waive the right of the Debtors or any successor thereto, to bring a motion requesting that this Court authorize the use of Cash Collateral over the objection of the Secured Creditors or any parties' rights to contest any such motion.

     i)     <u>Miscellaneous.</u>

     (a)     Any stay, modification, reversal or vacation of this First Interim Order shall not affect the validity of any obligation of the Debtors to the Secured Creditors incurred pursuant to this First Interim Order. Notwithstanding any such stay, modification, reversal or vacation, all use of Cash Collateral and all obligations incurred by the Debtors pursuant hereto prior to the effective date of such stay, modification, reversal or vacation, shall be governed in all respects by the original provisions hereof and the Secured Creditors shall be entitled to all the rights, privileges and benefits, including without limitation, the replacement liens and Lenders' Superpriority Claims granted herein.

     (b)     The provisions of this First Interim Order and any actions taken pursuant hereto shall survive entry of any order which may be entered (a) confirming any plan of reorganization in any of the Chapter 11 Cases, (b) converting any of the Chapter 11 Cases to a Chapter 7 case, or (c) dismissing any of the Chapter 11 Cases, and the terms and provisions of this Order as well as the Lenders' Superpriority Claims and Replacement Liens granted pursuant to this First Interim Order shall continue in full force and effect notwithstanding the entry of such order, and such Lenders' Superpriority Claims and Replacement Liens shall maintain their priority as provided by this First Interim Order.

(c)     Nothing contained in the Motion or this First Interim Order shall constitute a waiver by the Secured Creditors of their rights to seek other or additional adequate protection, or other or additional relief from the Court as the circumstances may dictate, including, but not limited to, the right to seek additional adequate protection, relief from the automatic stay, dismissal or conversion of the Chapter 11 Cases, or the appointment of a trustee or an examiner.

j)     <u>Final Hearing Notice.</u>

The Final Hearing to consider entry of the Final Order and final approval of the Debtors' request for use of the Secured Creditors' Cash Collateral is scheduled for _____, 2010 at 3:00 p.m. (ET), before the Honorable _____, United States Bankruptcy Judge, at the United States Bankruptcy Court for the Middle District of Florida, Orlando Division. On or before _____, 2010, the Debtors shall serve, by United States mail, first-class postage prepaid, notice of the entry of this First Interim Order and of the Final Hearing, together with copies of this First Interim Order and the Motion, on: (a) the parties having been given notice of the First Interim Hearing; (b) any party which has filed prior to such date a request for notices with this Court; and (c) counsel for any statutory committee, if appointed by such date.

(a)     Extension of First Interim Order. The Secured Creditors and the Debtors may extend this First Interim Order without further court hearing or further order of the Court. The Debtors shall provide written notification of any such extension to all parties-in-interest.

**DONE and ORDERED on _____ __, 2010.**

---
**HONORABLE KAREN S. JENNEMANN**
**UNITED STATES BANKRUPTCY JUDGE**

Copies provided to:

Debtor:  Island One, Inc., et al., 8680 Commodity Circle, Orlando, FL 32819

Debtor's Counsel:  Elizabeth A. Green, Esq., Baker & Hostetler LLP, 200 S. Orange Ave., SunTrust Center, Suite 2300, Orlando, FL 32801-3432;

Attorney for BB & T:  Frank Terzo, Esq., GrayRobinson, P.A., 1221 Brickell Ave, Suite 1600, Miami 33131;

Steven Fox, Esq., Epstein, Becker & Green, 250 Park Ave., New York, NY 10177;

Attorney for Liberty Bank:  R. Jeffrey Smith, Esq., 1 State Street, 1400 Hartford, CT 06103;

United States Trustee's Office, 135 W. Central Blvd., Suite 620, Orlando, FL 32801; and

All Creditors and Parties-In-Interest

Label Matrix for local noticing
113A-6
Case 6:10-bk-16177-KSJ
Middle District of Florida
Orlando
Sun Sep 12 17:54:36 EDT 2010

ARDA FLORIDA
1201 15TH ST. NW, STE 400
WASHINGTON, DC 20005-2842

ABBOTT PRINTING
110 ATLANTIC DR
SUITE 110
MAITLAND, FL 32751-3300

AMERICAN EXPRESS,INC.
PO BOX 360001
FT LAUDERDALE, FL 03333-6001

AT&T
P.O. BOX 105262
ATLANTA, GA 30348-5262

AUTOMATED MECHANICAL SERVICES,
INC.
17440 MAGNOLIA ISLAND BLVD
CLERMONT, FL 34711-8001

AVID HOME TECHNOLOGIES
1970 E OSCEOLA PKY STE 3320
KISSIMMEE, FL 34743-8629

AXIS, INC.
6851 TPC DRIVE
ORLANDO, FL 32822-5142

BANC OF AMERICA LEASING
LEASE ADMINISTRATION CENTER
PO BOX 371992
PITTSBURGH, PA 15250-7992

BB&T ACQUIRED ASSET GROUP
2000 Interstate Park Drive
Montgomery, AL 36109-5421

BB&T Acquired Asset Group
c/o Frank P. Terzo, Esq
GrayRobinson, PA
1221 Brickell Ave
Suite 1600
Miami, FL 33131-3247

BB&T Acquired Asset Group
c/o Frank P. Terzo
Gray Robinson, P.A.
1221 Brickell Avenue, #1600
Miami, FL 33131-3247

CDW DIRECT, LLC
P.O.BOX 75723
CHICAGO, IL 60675-5723

CIT TECHNOLOGY FIN SERV, INC.
21719 NETWORK PLACE
CHICAGO, IL 60673-0001

COMMUNICATION BROKERS &
CONSULTANTS, INC DBA: DIAL 411
23939 VENTURA BLVD.
CALABASAS, CA 91302-1445

COMPASS GROUP
HIGHLAND EST COFFEE TRADERS-A
DIV OF CANTEEN, PO BOX 91337
CHICAGO, IL 60693-1337

Campbell, Ken
8400 Darlene Drive
Orlando, FL 32836-5902

Collier County Appraiser's
Office
3950 Radio Road
Naples, FL 34104-3750

Collier County Atty Office
Collier County Government
3301 E. Tamiami Trail
Naples, FL 34112-4987

Collier County Tax Collector
3301 E. Tamiami Trail
Building C-1
Naples, FL 34112-4997

Comfeld, Robert
3850 Hollywood Blvd.
Suite 1400
Hollywood, FL 33021-6748

DADE PAPER
P.O. BOX 593829
ORLANDO, FL 32859-3829

DELL MARKETING L.P.
C/O DELL USA L.P.
PO BOX 534118
ATLANTA, GA 30353-4118

DEX IMAGING INC
5109 W. LEMON STREET
TAMPA, FL 33609-1102

DIGITAL CONNECTIONS, INC.
P.O. BOX 277995
ATLANTA, GA 30384-7995

E-TECHSERVICES.COM, INC.
5220 SW 91ST TERRACE
GAINESVILLE, FL 32608-7124

EZREZ SOFTWARE, INC.
50 1ST ST, FLOOR 7
SAN FRANCISCO, CA 94105-2405

Erfurth, Cary
8911 Charles E. Limpus Road
Orlando, FL 32836-5829

FLORIDA POWER AND LIGHT
GENERAL MAIL FACILITY
MIAMI, FL 33188-0001

FLORIDA POWER CORP.
DBA PROGRESS ENERGY FLORIDA
PO BOX 33199
ST PETERSBURG, FL 33733-8199

FLORIDA SUPPLY & CLEANING INC
1710 INDUSTRIAL ST
EDGEWATER, FL 32132-3561

FOCALITY INTERACTIVE
490 WILFRED DR
PETERBOROUGH, ON K9K2H1

(c)FEY, LARRY
20855 S LA GRANGE RD STE 202
FRANKFORT IL 60423-2042

Florida Department of Revenue
Bankruptcy Unit
Post Office Box 6668
Tallahassee FL 32314-6668

Florida Dept. of Revenue
Attn: Executive Director
5050 W. Tennessee Street
Tallahassee, FL 32399-0100

GETAGADGET, INC.
2101 E SAINT ELMO RD., STE 101
AUSTIN, TX 78744-1864

Gibellina, Ronald
4513 Grove
Brookfield, IL 60513-2556

Elizabeth A Green
Baker & Hostetler LLP
200 S Orange Ave
Suntrust Center, Suite 2300
Orlando, FL 32801-3410

H.J.C. FLORIDIAN CORP.
8911 Charles E. Limpus Road
Orlando, FL 32836-5829

HERITAGE OPERATING, LP
HERITAGE PROPANE
9307 BACHMAN RD
ORLANDO, FL 32824-8061

HOME TEAM PEST DEFENSE
765 W. STATE RD. 434 SUITE H
LONGWOOD, FL 32750-4936

HOSPITALITY CAREERS ONLINE INC
C/O COMERCIA BANK
P.O. BOX 673682
DETROIT MI 48267-3682, WA 98111

INTEGRATED FIRE & SAFETY
SERVICES, INC.
1730 DIPLOMACY ROW, STE B
ORLANDO, FL 32809-5761

INTERVAL INTERNATIONAL INC
ATTN: ACCOUNTING DEPARTMENT
6262 SUNSET DRIVE
MIAMI, FL 33143-4843

Internal Revenue Service
850 Trafalgar Court
Suite 200
Maitland, FL 32751-4168

(p)INTERNAL REVENUE SERVICE
CENTRALIZED INSOLVENCY OPERATIONS
PO BOX 21126
PHILADELPHIA PA 19114-0326

Island One, Inc.
8680 Commodity Circle
Orlando, FL 32819-9000

J & R DONUTS, INC
3501 W VINE ST
KISSIMMEE, FL 34741-4643

KIRBY OIL CO., INC.
P O BOX 567
LAKE CITY, FL 32056-0567

KISSIMMEE UTILITY AUTHORITY
PO BOX 850001
ORLANDO, FL 32885-0096

Kramer, Rollin
703 Midwest Club
Oak Brook, IL 60523-2531

LCG CAPITAL GROUP,LLC.
401 E.JACKSON ST
SUITE 2450
TAMPA, FL 33602-5215

LEXISNEXIS RISK DATA MGMT
ACCURINT ACCOUNT #1046600
PO BOX 7247-6157
PHILADELPHIA, PA 19170-0001

LIBERTY BANK
315 Main Street
Middletown, CT 06457-3338

Liberty Bank
c/o R. Jeffrey Smith
Bingham McCutchen, LLP
One State Street, Suite 1400
Hartford, CT 06103-3100

MAGIC MEDIA
C/O BORDEN,JONES & MITCHELL,LC
P.O. BOX 544
CARROLLTON, GA 30112-0010

MASSEY SERVICES INC.
315 GROVELAND ST
ORLANDO, FL 32804-4052

MICHAEL ALDERMAN SERVICE
CENTER
428 FERGUSON DR
ORLANDO, FL 32805-1010

MUZAK,LLC
P.O. BOX 71070
CHARLOTTE, NC 28272-1070

NOBLE SYSTEMS CORPORATION
4151 ASHFORD DUNWOODY DR
STE 600
ATLANTA, GA 30319-1452

ORANGE BULB,INC.
LIGHT BULBS UNLIMITED
6203-B W.SAND LAKE ROAD
ORLANDO, FL 32819-8912

ORLANDOJOBS.COM, LLC
43 E PINE ST
ORLANDO, FL 32801-2607

Orange County Atty. Office
Division, Admin. Bldg. 3rd F
201 S. Rosalind Avenue
Orlando, FL 32801-3527

Orange County Comptroller
109 E. Church Street
Suite 300
Orlando, FL 32801-3326

Orange County Property
Appraiser
200 S. Orange Avenue
17th Floor
Orlando, FL 32801-3438

Orange County Tax Collector
Attn: Earl K. Wood
Post Office Box 2551
Orlando FL 32802-2551

Orange County Tax Collector
Attn: Earl K. Wood
200 S Orange Ave
Suite 1500
Orlando, FL 32801-3438

Osceola County Atty
Administration Building
1 Courthouse Square
Suite 4200
Kissimmee, FL 34741-5440

Osceola Property Appraiser
2505 E. Irlo Bronson Memoria
Highway
Kissimmee, FL 34744-4909

Osceola Tax Collector
2501 E. Irlo Bronson Memoria
Highway
Kissimmee, FL 34744-4909

PAETEC
PO BOX 1283
BUFFALO, NY 14240-1283

PENINSULA RESORT MANAGEMENT
LLC
2424 N. ATLANTIC AVE.
DAYTONA BEACH, FL 32118-3245

PLATINUM TRANSPORTATION
PO BOX 470552
CELEBRATION, FL 34747-0552

PMAT BELLAIR, LLC
C/O PROPERTY ONE, INC.
4141 VETERANS BLVD, STE 300
METAIRIE, LA 70002

PRECISION MEDIA, INC.
4320 MIDDLEBROOK RD
ORLANDO, FL 32811-3087

PREMIERE GLOBAL SERVICES
P.O. BOX 404351
ATLANTA, GA 30384-4351

R.E. MICHEL COMPANY, INC.
HOSIER REFRIGERATION SUPPLY
P.O. BOX 2318
BALTIMORE, MD 21203-2318

RIVERPOINT SOLUTIONS GROUP,LLC
2200 E DEVON AVE, STE 385
DES PLAINS, IL 60018-4590

ROYAL CUP, INC.
P.O BOX 170971
BIRMINGHAM, AL 35217-0971

STAPLES ADVANTAGE
STAPLES CONTRACT & COMMERCIAL
PO BOX 405386
ATLANTA, GA 30384-5386

STAPLES ADVANTAGE
STAPLES CONTRACT & COMMERCIAL
PO BOX 95708
CHICAGO, IL 60694-5708

STARR ASSOCIATES,LLP.
245 FIFTH AVENUE
SUITE 1102
NEW YORK, NY 10016-8717

STERLING INFOSYSTEMS,INC.
NEWARK POST OFFICE
P.O. BOX 35626
NEWARK, NJ 07193-5626

Springer, John
89 Dallas Drive
Hendersonville, NC 28739-8733

Springer, Jr., John
P.O. Box 1718
Avon, CO 81620-1718

Springer, Roberta
2731 Kenora Court
Orlando, FL 32837-7727

Stimac, Nicholas
4813 Randolph Street
Hillside, IL 60162-1018

Stimac, Rosalie
4813 Randolph Street
Hillside, IL 60162-1018

TEXTRON FINANCIAL CORP.
40 Westminster Street
Providence, RI 02903-2503

THE BEST PEST CONTROL COMPANY
PO BOX 677546
ORLANDO,, FL 32867-7546

THE CITY OF DAYTONA BEACH
UTILITY BILL
PO BOX 2455
DAYTONA BEACH, FL 32115-2455

THE DOC SIGNERS, INC.
PO BOX 71457
PHOENIX, AZ 85050-1008

THOMKAT STAMP & SIGNS, INC
DBA ACME STAMP & SIGN CO
822 N MILLS AVE
ORLANDO, FL 32803-4097


Frank P Terzo
GrayRobinson
1221 Brickell Avenue
Suite 1650
Miami, FL 33131-3259

Textron Financial Corp.
c/o Steven E. Fox
EpsteinBeckerGreen
250 Park Avenue
New York, NY 10177-1211

US BANK
PO BOX 790448
ST. LOUIS, MO 63179-0448


United States Trustee - ORL
135 W. Central Blvd., Suite 620
Orlando, FL 32801-2440

Volusia County Atty/
County Manager
Thomas C. Kelly Adm. Center
123 W. Indiana
Deland, FL 32720-4615

Volusia County Tax Collector
123 W. Indiana Avenue
Room 103
Deland, FL 32720-4615


WAGEWATCH, INC.
P.O. BOX 15851
PHOENIX, AZ 85060-5851

WESTERN RESERVE PARTNERS, LLC
200 PUBLIC SQUARE, STE 3750
CLEVELAND, OH 44114-2321

Williams, Judith
124 Oolenoy Court
Pickens, SC 29671-7306


The preferred mailing address (p) above has been substituted for the following entity/entities as so specified
by said entity/entities in a Notice of Address filed pursuant to 11 U.S.C. 342(f) and Fed.R.Bank.P. 2002 (g)(4).


Internal Revenue Service
Centralized Insolvency Ops
PO Box 21126
Philadelphia, PA 19114-0326

(d)Internal Revenue Service
Post Office Box 21126
Philadelphia PA 19114


Addresses marked (c) above for the following entity/entities were corrected
as required by the USPS Locatable Address Conversion System (LACS).


Fey, Larry
655 N. LaGrange Road
Suite 202
Frankfort, IL 60423


The following recipients may be/have been bypassed for notice due to an undeliverable (u) or duplicate (d) address.


(u)Karen S. Jennemann
Orlando

End of Label Matrix
Mailable recipients   101
Bypassed recipients     1
Total                 102

Label Matrix for local noticing
113A-6
Case 6:10-bk-16179-KSJ
Middle District of Florida
Orlando
Sun Sep 12 17:55:57 EDT 2010

Crescent One, LLC
8680 Commodity Circle
Orlando, FL 32819-9000

Dade County Tax Collection
140 W. Flagler Street
Suite 1407
Miami, FL 33130-1561

Florida Department of Revenue
Bankruptcy Unit
Post Office Box 6668
Tallahassee FL 32314-6668

Florida Dept. of Revenue
Attn: Executive Director
5050 W. Tennessee Street
Tallahassee, FL 32399-0100

Elizabeth A Green
Baker & Hostetler LLP
200 S Orange Ave
Suntrust Center, Suite 2300
Orlando, FL 32801-3410

Internal Revenue Service
850 Trafalgar Court
Suite 200
Maitland, FL 32751-4168

(p)INTERNAL REVENUE SERVICE
CENTRALIZED INSOLVENCY OPERATIONS
PO BOX 21126
PHILADELPHIA PA 19114-0326

Miami-Dade County
Office of the Property
Appraiser
111 NW 1st St., Suite 710
Miami, FL 33128-1984

Miami-Dade County Attorneys
Office - Risk Management
111 NW 1st Street
Suite 2810
Miami, FL 33128-1930

Orange County Comptroller
109 E. Church Street
Suite 300
Orlando, FL 32801-3326

Orange County Tax Collector
Attn: Earl K. Wood
Post Office Box 2551
Orlando FL 32802-2551

Orange County Tax Collector
Attn: Earl K. Wood
200 S Orange Ave
Suite 1500
Orlando, FL 32801-3438

Textron Financial Corp.
40 Westminster Street
Providence, RI 02903-2503

Textron Financial Corp.
c/o Steven E. Fox
EpsteinBeckerGreen
250 Park Avenue
New York, NY 10177-1211

The New York Law Publishing
Company Daily Business Rev.
P.O. Box 862882
Orlando, FL 32886-0001

United States Trustee - ORL
135 W. Central Blvd., Suite 620
Orlando, FL 32801-2440

The preferred mailing address (p) above has been substituted for the following entity/entities as so specified
by said entity/entities in a Notice of Address filed pursuant to 11 U.S.C. 342(f) and Fed.R.Bank.P. 2002 (g)(4).

Internal Revenue Service
Centralized Insolvency Ops
PO Box 21126
Philadelphia, PA 19114-0326

(d)Internal Revenue Service
Post Office Box 21126
Philadelphia PA 19114

The following recipients may be/have been bypassed for notice due to an undeliverable (u) or duplicate (d) address.

(u)Karen S. Jennemann
Orlando

End of Label Matrix
Mailable recipients    16
Bypassed recipients     1
Total                  17

Label Matrix for local noticing
113A-6
Case 6:10-bk-16180-KSJ
Middle District of Florida
Orlando
Sun Sep 12 17:56:26 EDT 2010

BB&T Acquired Asset Group
c/o Frank P. Terzo
Gray Robinson, P.A.
1221 Brickell Avenue, #1600
Miami, FL 33131-3247

FEDERAL EXPRESS
P.O. BOX 94515
PALATINE, IL 60094-4515

Government of the U.S.
Virgin Islands Bureau of
Internal Revenue
9601 Estate Thomas
St. Thomas, VI 00802-2689

Internal Revenue Service
850 Trafalgar Court
Suite 200
Maitland, FL 32751-4168

MERCHANTS MARKET- ST. CROIX
4000 ESTATE DIAMONE
ST CROIX, VI 00820-5215

NICHOLS NEWMAN LOGAN & GREY PC
1131 KING STREET,SUITE 204
CHRISTIANSTED, VI 00820-4974

SURVEY SERVICES CO., LLC
27-28 KING CROSS ST
CHRISTIANSTED, VI 00820

TRAVELCLICK
2193 PAYSPHERE CIRCLE
CHICAGO, IL 60674-0001

Virgin Islands Design Build
Group, LLC
5031 Estate Cotton Valley
55 H&C
Christiansted, St. Croix, VI 00820

ANTILLES GAS CORPORATION
PO BOX 5435
SUNNY ISLE, ST. CROIX     00823-5435

BELLOWS INTERNATIONAL
PO BOX 302695
ST. THOMAS, VI 00803-2695

FIRST NATIONAL BANK OF OMAHA
P.O. BOX 2818
OMAHA, NE 68103-2818

Elizabeth A Green
Baker & Hostetler LLP
200 S Orange Ave
Suntrust Center, Suite 2300
Orlando, FL 32801-3410

(p)INTERNAL REVENUE SERVICE
CENTRALIZED INSOLVENCY OPERATIONS
PO BOX 21126
PHILADELPHIA PA 19114-0326

Maple Leaf, LLC
4521 Sharon Road
Suite 420
Charlotte, NC 28211-3627

PREMIER WINES & SPIRITS LTD.
132 SUNDIAL PARK
PO BOX 922
ST CROIX,, VI 00821-0922

St. Croix One, LLC
5000 Estate Chenay Bay
Route 82, East End Quarter
Christiansted, VI 00820-4512

United States Trustee - ORL
135 W. Central Blvd., Suite 620
Orlando, FL 32801-2440

WEST INDIES CORPORATION
PO BOX 250
ST. THOMAS, VI 00804-0250

BB&T Acquired Asset Group
2000 Interstate Park Drive
Montgomery, AL 36109-5421

(c)CARIBBEAN INDUSTRIAL PRODUCTS
2187 COMPANY ST
CHRISTIANSTED VI  00820-4952

Florida Dept. of Revenue
Attn: Executive Director
5050 W. Tennessee Street
Tallahassee, FL 32399-0100

HENNEMANN ICE PLANT COMPANY
PO BOX 1429
254 RICHMOND
CHRISTIANSTED, VI 00821-1429

MARIO'S VIRGIN CRYSTAL,LLC
P.O. BOX 25775
CHRISTIANSTED, VI 00824-1775

NEVCO MARKETING ENTERPRISES
PO BOX 6351
CHRISTIANSTED, VI 00823-6351

QUALITY FOODS
96-97 CASTLE COAKLEY
CHRISTIANSTED, VI 00820

THE SCOTT PARTNERSHIP
ARCHITECTURE, INC.
429 S.KELLER RD.SUITE 200
ORLANDO, FL 32810-7187

VIRGIN ISLANDS DESIGN BUILD GROUP, LLC
5031 COTTON VALLEY 55 H&C
CHRISTIANSTED, ST.CROIX, VI 00820

The preferred mailing address (p) above has been substituted for the following entity/entities as so specified
by said entity/entities in a Notice of Address filed pursuant to 11 U.S.C. 342(f) and Fed.R.Bank.P. 2002 (g)(4).

Internal Revenue Service
Centralized Insolvency Ops
PO Box 21126
Philadelphia, PA 19114-0326

Addresses marked (c) above for the following entity/entities were corrected
as required by the USPS Locatable Address Conversion System (LACS).

CARIBBEAN INDUSTRIAL PRODUCTS
27 PRINCE STREET
CHRISTIANSTED, VI 00820

The following recipients may be/have been bypassed for notice due to an undeliverable (u) or duplicate (d) address.

(u)Karen S. Jennemann          End of Label Matrix
Orlando                        Mailable recipients    28
                               Bypassed recipients     1
                               Total                  29

Label Matrix for local noticing
113A-6
Case 6:10-bk-16182-KSJ
Middle District of Florida
Orlando
Sun Sep 12 17:57:48 EDT 2010

AGR FABRICATORS, INC
4879 CLYDO RD. S.
JACKSONVILLE, FL 32207-1708

ALWAYS MOBILE GOLF CARS
4998 E. HINSON AVENUE
HAINES CITY, FL 33844-9153

AMERIGAS - ORLANDO
P.O. BOX 371473
PITTSBURGH, PA 15250-7473

CINTAS CORPORATION #073
P.O. BOX 360910
CINCINNATI, OH 45263-0910

CINTAS FIRST AID AND SAFETY
LOCATION F48
P.O. BOX 2409
BRANDON, FL 33509-2409

COMMERCIAL LAWN EQUIPMENT
SALES & SERVICE INC
781 E CARROLL STREET
KISSIMMEE, FL 34744-1467

DADE PAPER
P.O. BOX 593829
ORLANDO, FL 32859-3829

DAVID A. WILSON
SERVICE FIRST UNIFORM SALES
4518 CURRY FORD RD.
ORLANDO, FLORIDA 32812-2711

DEX
PO BOX 660834
DALLAS, TX 75266-0834

DEX IMAGING INC
5109 W. LEMON STREET
TAMPA, FL 33609-1102

FLORIDA POWER CORP.
DBA PROGRESS ENERGY FLORIDA
PO BOX 33199
ST PETERSBURG, FL 33733-8199

Florida Department of Revenue
Bankruptcy Unit
Post Office Box 6668
Tallahassee FL 32314-6668

Florida Dept. of Revenue
Attn: Executive Director
5050 W. Tennessee Street
Tallahassee, FL 32399-0100

GALAXY AVIATION OF ORLANDO,INC
9245 TRADEPORT DRIVE
ORLANDO, FL 32827-5305

GLAZER GIFTS INC
ATTN: ALI STEINBACH
8091 OAKLAND PLACE
ORLANDO, FL 32819-3248

Elizabeth A Green
Baker & Hostetler LLP
200 S Orange Ave
Suntrust Center, Suite 2300
Orlando, FL 32801-3410

Internal Revenue Service
850 Trafalgar Court
Suite 200
Maitland, FL 32751-4168

(p)INTERNAL REVENUE SERVICE
CENTRALIZED INSOLVENCY OPERATIONS
PO BOX 21126
PHILADELPHIA PA 19114-0326

Island One Resorts Management Corporation
8680 Commodity Circle
Orlando, FL 32819-9000

JEFF ELLIS & ASSOCIATES, INC.
508 GOLDENMOSS LOOP
OCOEE, FL 34761-4783

Old Florida National Bank
60 North Court Avenue
Orlando, FL 32801-2409

Orange County Comptroller
109 E. Church Street
Suite 300
Orlando, FL 32801-3326

Orange County Tax Collector
Attn: Earl K. Wood
Post Office Box 2551
Orlando FL 32802-2551

Orange County Tax Collector
Attn: Earl K. Wood
200 S Orange Ave
Suite 1500
Orlando, FL 32801-3438

PEOPLE MISTERS INT'L, LLC
3603 NORTH PALAFOX STREET
PENSACOLA, FL 32505-5234

RDS OF FLORIDA
DBA DATA SYSTEM INC.
13170 92nd Street  Suite 303
LARGO,, FL 33773-1319

ROBERT'S POOL SERVICE
19315 LAKE PICKETT ROAD
ORLANDO, FL 32820-1608

S & S WORLDWIDE, INC.
ACCOUNTS RECEIVABLE
PO BOX 210
HARTFORD, CT 06141-0210

SPIES POOL, INC.
801 SAWDUST TRAIL
KISSIMMEE, FL 34744-1417

STAPLES ADVANTAGE
STAPLES CONTRACT & COMMERCIAL
PO BOX 95708
CHICAGO, IL 60694-5708

SUN LOVERS OF AMERICA
P.O. BOX 593801
ORLANDO, FL 32859-3801

T.L.SAVAGE,INC.
DBA:MONOGRAMS OF DISTINCTION
115 KISSEWAUG ROAD
MIDDLEBURY, CT 06762-3230

THE ORLANDO SENTINEL
P.O. BOX 100608
ATLANTA, GA 30384-0608

Textron Financial Corp.
40 Westminster Street
Providence, RI 02903-2503

Textron Financial Corp.
c/o Steven E. Fox
EpsteinBeckerGreen
250 Park Avenue
New York, NY 10177-1211

United States Trustee - ORL
135 W. Central Blvd., Suite 620
Orlando, FL 32801-2440

WILLIAMS SCOTSMAN,INC.
PO BOX 91975
CHICAGO, IL 60693-1975

YELLOW BOOK USA
P.O. BOX 3162
CEDAR RAPIDS, IA 52406-3162

The preferred mailing address (p) above has been substituted for the following entity/entities as so specified
by said entity/entities in a Notice of Address filed pursuant to 11 U.S.C. 342(f) and Fed.R.Bank.P. 2002 (g)(4).

Internal Revenue Service
Centralized Insolvency Ops
PO Box 21126
Philadelphia, PA 19114-0326

(d)Internal Revenue Service
Post Office Box 21126
Philadelphia PA 19114

The following recipients may be/have been bypassed for notice due to an undeliverable (u) or duplicate (d) address.

(u)Karen S. Jennemann
Orlando

End of Label Matrix
Mailable recipients    38
Bypassed recipients     1
Total                  39

Label Matrix for local noticing
113A-6
Case 6:10-bk-16183-KSJ
Middle District of Florida
Orlando
Sun Sep 12 18:00:24 EDT 2010

Abbott Printing
110 Atlantic Drive
Suite 110
Maitland, FL 32751-3300

Florida Department of Revenue
Bankruptcy Unit
Post Office Box 6668
Tallahassee FL 32314-6668

Florida Dept. of Revenue
Attn: Executive Director
5050 W. Tennessee Street
Tallahassee, FL 32399-0100

Elizabeth A Green
Baker & Hostetler LLP
200 S Orange Ave
Suntrust Center, Suite 2300
Orlando, FL 32801-3410

INTERVAL INTERNATIONAL INC
ATTN: ACCOUNTING DEPARTMENT
6262 SUNSET DRIVE
MIAMI, FL 33143-4843

Internal Revenue Service
850 Trafalgar Court
Suite 200
Maitland, FL 32751-4168

(p)INTERNAL REVENUE SERVICE
CENTRALIZED INSOLVENCY OPERATIONS
PO BOX 21126
PHILADELPHIA PA 19114-0326

Navigo Vacation Club, Inc.
8680 Commodity Circle
Orlando, FL 32819-9000

Orange County Comptroller
109 E. Church Street
Suite 300
Orlando, FL 32801-3326

Orange County Tax Collector
Attn: Earl K. Wood
Post Office Box 2551
Orlando FL 32802-2551

Orange County Tax Collector
Attn: Earl K. Wood
200 S Orange Ave
Suite 1500
Orlando, FL 32801-3438

Textron Financial Corp.
40 Westminster Street
Providence, RI 02903-2503

Textron Financial Corp.
c/o Steven E. Fox
EpsteinBeckerGreen
250 Park Avenue
New York, NY 10177-1211

United States Trustee - ORL
135 W. Central Blvd., Suite 620
Orlando, FL 32801-2440

The preferred mailing address (p) above has been substituted for the following entity/entities as so specified
by said entity/entities in a Notice of Address filed pursuant to 11 U.S.C. 342(f) and Fed.R.Bank.P. 2002 (g)(4).

Internal Revenue Service
Centralized Insolvency Ops
PO Box 21126
Philadelphia, PA 19114-0326

(d)Internal Revenue Service
Post Office Box 21126
Philadelphia PA 19114

The following recipients may be/have been bypassed for notice due to an undeliverable (u) or duplicate (d) address.

(u)Karen S. Jennemann
Orlando

End of Label Matrix
Mailable recipients    14
Bypassed recipients     1
Total                  15

Label Matrix for local noticing
113A-6
Case 6:10-bk-16189-KSJ
Middle District of Florida
Orlando
Sun Sep 12 18:01:00 EDT 2010

Florida Department of Revenue
Bankruptcy Unit
Post Office Box 6668
Tallahassee FL 32314-6668

Florida Dept of Revenue
Attn: Executive Director
5050 W. Tennessee Street
Tallahassee, FL 32399-0100

Elizabeth A Green
Baker & Hostetler LLP
200 S Orange Ave
Suntrust Center, Suite 2300
Orlando, FL 32801-3410

IOI Funding I, LLC
8680 Commodity Circle
Orlando, FL 32819-9000

(p)INTERNAL REVENUE SERVICE
CENTRALIZED INSOLVENCY OPERATIONS
PO BOX 21126
PHILADELPHIA PA 19114-0326

Internal Revenue Service
850 Trafalgar Court
Suite 200
Maitland, FL 32751-4168

Orange County Comptroller
109 E. Church Street
Suite 300
Orlando, FL 32801-3326

Orange County Tax Collector
Attn: Earl K. Wood
Post Office Box 2551
Orlando FL 32802-2551

Orange County Tax Collector
Attn: Earl K. Wood
200 S Orange Ave
Suite 1500
Orlando, FL 32801-3438

Textron Financial Corp.
40 Westminster Street
Providence, RI 02903-2503

Textron Financial Corp.
c/o Steven E. Fox
EpsteinBeckerGreen
250 Park Avenue
New York, NY 10177-1211

United States Trustee - ORL
135 W. Central Blvd., Suite 620
Orlando, FL 32801-2440

The preferred mailing address (p) above has been substituted for the following entity/entities as so specified
by said entity/entities in a Notice of Address filed pursuant to 11 U.S.C. 342(f) and Fed.R.Bank.P. 2002 (g)(4).

IRS
Centralized Insolvency Ops
PO Box 21126
Philadelphia, PA 19114-0326

(d)Internal Revenue Service
Post Office Box 21126
Philadelphia PA 19114

The following recipients may be/have been bypassed for notice due to an undeliverable (u) or duplicate (d) address.

(u)Karen S. Jennemann
Orlando

End of Label Matrix
Mailable recipients    12
Bypassed recipients     1
Total                  13