UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

| | |
|---|---|
| In re: | CASE NO. 6:10-bk-16177-KSJ |
| ISLAND ONE, INC., a Florida corporation, *et al*. | CHAPTER 11 |
| | Jointly Administered with Case Nos. 6:10-bk-16179-KSJ, 6:10-bk-16180-KSJ, 6:10-bk-16182-KSJ, 6:10-bk-16183-KSJ, 6:10-bk-16189-KSJ |
| Debtor. | |
| _____/ | |

INTERIM ORDER GRANTING DEBTORS'
EMERGENCY MOTION FOR USE OF CASH COLLATERAL
CONTINUED HEARING TO BE HELD ON OCTOBER 8, 2010 @ 2:00 P.M.

This case came on for hearing on September 14, 2010 (the "Hearing"), to consider the motion ("Motion")[1] [D.R. 6] by Island One Resorts, Inc., *et al.*, debtors-in-possession (collectively, the "Debtors"), for authorization to use "cash collateral" (the "Cash Collateral") of Textron Financial Corporation ("TFC") and Liberty Bank, N.A. ("Liberty", and collectively with TFC the "Secured Creditors") on an emergency interim basis. For the reasons stated on the record of the Hearing, it is

**ORDERED:**

1. The Motion is Granted.

2. <u>Cash Collateral Authorization</u>. Subject to the provisions of this Order, the Debtors are authorized to use Cash Collateral to pay: (a) amounts expressly authorized by this Court, including payments to the United States Trustee for quarterly fees; (b) the current and necessary expenses set forth in the budget attached hereto and made a part hereof as Exhibit "A" (the "First Interim Budget"); and (c) such additional amounts as may be expressly approved in writing by the Secured Creditors, or as otherwise permitted by the variance formulation contained in the First Interim Budget. This authorization will continue until 5:00 p.m. (ET) on October 8, 2010 (the "First Interim Period"). Except as authorized in this Order, the Debtors are prohibited from using Cash Collateral.

3. <u>Debtors' Obligations</u>. The Debtors shall timely perform all obligations of a debtors-in-possession required by the Bankruptcy Code, Federal Rules of Bankruptcy Procedure, and the orders of this Court.

---

[1] Capitalized terms used herein and not otherwise defined shall have the meanings ascribed thereto in the Motion.

4. <u>Access to Records; Premises</u>. Upon reasonable notice, and provided that it does not unreasonably interfere with the business of the Debtors, the Debtors shall grant to the Secured Creditors and BB&T access to the Debtors' business records and premises for review and inspection. The Debtors shall furnish to the Secured Creditors and BB&T (defined below) financial and other information as the Secured Creditors and/or BB&T shall reasonably request.

5. <u>Replacement Lien</u>. (a) Subject to the provisions of this Order, each creditor, including, but not limited to, the Secured Creditors, with a security interest in Cash Collateral shall, to the extent of the diminution in value of Cash Collateral, have a perfected post-petition lien ("Replacement Liens") against Cash Collateral to the same extent and with the same validity and priority as such creditor's prepetition lien, and in all of the Debtor's pre-petition and post-petition assets of every kind, nature, and description, tangible and intangible, now existing or hereafter arising (collectively, the "Post-Petition Collateral"); <u>provided</u> <u>that</u> during this First Interim Period only the Secured Creditors' Replacement Liens shall not attach to any asset in which BB&T Special Assets Division ("BB&T") has a prior, valid perfected security interest. The Replacement Liens shall continue in full force and effect until the Secured Creditors' Claims (defined below) have been indefeasibly paid in full in cash, including all principal and, to the extent authorized by the Court pursuant to § 506(b) of the Bankruptcy Code. The grant of the Replacement Liens shall be supplemental to and in addition to, the security interest which the Secured Creditors possess(es) pursuant to the Secured Creditors' respective pre-petition loan documents, without the need to file or execute any document as may otherwise be required under applicable non-bankruptcy law. The Replacement Liens may not be primed by any other lien or encumbrance, except by order of the Bankruptcy Court pursuant to, and within the meaning of, §§ 364(d)(l) and (d)(2) of the Bankruptcy Code, following notice to the Secured Creditors and an opportunity for a hearing thereon. All rights of the Secured Creditors to object to any priming are expressly reserved.

(b) The Replacement Liens granted to the Secured Creditors pursuant to this First Interim Order shall be prior and senior to all liens and encumbrances of (i) all other secured creditors in and to such property granted, or arising, subsequent to the date of this Order; (ii) any intercompany claim of any Debtor or subsidiary of any Debtor; and (iii) any security interest or lien that is avoided or otherwise preserved for the benefit of any Debtor's estate pursuant to § 551 of the Bankruptcy Code; <u>provided</u>, <u>however</u>, that the Replacement Liens granted to the Secured Creditors pursuant to this First Interim Order shall not attach to any claims for relief under Chapter 5 of the Bankruptcy Code or the proceeds thereof (other than claims arising under section 549 of the Bankruptcy Code).

(c) If, and to the extent that, the Replacement Liens and other forms of adequate protection provided herein are insufficient to provide adequate protection for the Secured Creditors, each of the Secured Creditors is hereby granted allowed superpriority claims against the Debtors' estates

pursuant to § 507(b) of the Bankruptcy Code (the "Lenders' Superpriority Claims"), with priority in payment over any and all administrative expenses of the kinds specified or ordered pursuant to any provision of the Bankruptcy Code, and shall at all times be senior to the rights of the Debtors, and any successor trustee or any creditor in the Chapter 11 Cases or any subsequent proceedings under the Bankruptcy Code. No cost or expense of administration asserted against the Debtors' estates under §§ 105, 503(b) and 507(b) of the Bankruptcy Code shall be senior to, or *pari passu* with, the Lenders' Superpriority Claims.

6. <u>Insurance</u>. Debtors shall maintain insurance coverage for their properties in accordance with the obligations under the loan and security documents with the Secured Creditors.

7. <u>Without Prejudice</u>. This Order is without prejudice to: (a) any subsequent request by a party in interest (including, but not limited to the Secured Creditors) for modified adequate protection or restrictions on use of Cash Collateral; or (b) any other right or remedy which may be available to the Secured Creditors.

8. <u>Creditors' Committee</u>. (a) The provisions of this Order are without prejudice to the rights of the United States Trustee to appoint a committee ("Committee") or any rights of a duly appointed Committee, claiming by, through or under any one or more of the Debtors, to challenge the validity, priority or extent of the Secured Creditors' Claims and/or the Secured Creditors' interests in the Secured Creditors' Collateral (each as defined below), whether under §§ 544, 547, 548, 549, 550, or 553 of the Bankruptcy Code, or otherwise seeking to avoid or recover any transfers received by one or more of the Secured Creditors with respect to the Secured Creditors' Claims and/or the Secured Creditors' Collateral. Any such objection or complaint (as is applicable) shall set forth the basis for the objection or complaint, and the reason why the applicable Secured Creditors' Claim should not be allowed in full. If no such objection or complaint (as is applicable) is filed (a) by a Committee on or before sixty (60) days after the appointment thereof, or (b) by a successor trustee on or before forty-five (45) days following the date of entry of a Final Order (as applicable, the "Challenge Period"), any and all challenges by any party to the Secured Creditors' Claims or the Secured Creditors' security interests or liens against the Secured Creditors' Collateral shall be forever barred. The Challenge Period may only be extended with the written consent of the Secured Creditors, or by order of the Court.

(b) The Secured Creditors' Cash Collateral may not be used in connection with: (i) objecting, challenging, litigating, opposing, or seeking to subordinate or recharacterize in any way any claims or liens held by or on behalf of any of the Secured Creditors; (ii) asserting, commencing or prosecuting any claims or causes of action, including, without limitation, any actions under Chapter 5 of the Bankruptcy Code, against any of the Secured Creditors, or any of their respective affiliates, agents, attorneys, advisors, professionals, officers, directors and employees; or (iii) prosecuting an objection to,

or contesting or opposing in any manner, or raising any defenses to, the validity, extent, amount, perfection, priority, character or enforceability of any of the Secured Creditors' respective claims or liens, including, without limitation, the Replacement Liens.

9. <u>Enforcement</u>. The Court shall retain jurisdiction to enforce the terms of this First Interim Order.

10. <u>Other Non-Standard Terms or Conditions</u>.

(a) <u>Debtors' Acknowledgment of Indebtedness; Stipulations</u>. (i) Subject to Paragraph 8 above, the Debtors hereby acknowledge and agree that the claims in favor of the Secured Creditors as set forth below are valid in the principal amounts set forth below:

| Loan Facility | Loan Agreement Date | Principal Amount |
|---|---|---|
| TFC Receivables | March 14, 2001 | $67,543,660.11 |
| Crescent Receivables Loan | December 28, 2004 | $6,515,497.37 |
| TFC/Conduit Receivables Loan | September 27, 2002 | $3,632,580.25 |
| TFC Inventory Loan | July 12, 2004 December 26, 2006 | $3,704,550.00 |
| TFC/Crescent Inventory Loan | March 31, 2004 | $4,901,264.12 |
| TFC/IORMC Loan | December 20, 2007 | $8,732,518.34 |
| New Liberty/TFC Receivables Loan | October 30, 2009 | $7,943,945.89 |

<u>plus</u> interest accruing both prior to and from and after the Petition Date and all fees, costs, expenses, and costs of collection (including, without limitation, reasonable attorneys' fees), heretofore or hereafter incurred by the Secured Creditors in connection therewith, to the extent allowable by the Court pursuant to § 506(b) of the Bankruptcy Code, subject to the rights of the Debtors to contest under § 506(b) of the Bankruptcy Code the allowance or payment of those amounts to the Secured Creditors (the "506(b) Rights"). The claims provided for under the forgoing loan facilities are respectively defined as the "TFC Receivables Claim", "TFC/Crescent Receivables Claim", "TFC/Conduit Receivables Claim", "TFC Inventory Claim", "TFC/Crescent Inventory Claim", "TFC/IORMC Claim", and "New Liberty/TFC Receivables Claim", and are collectively defined as the "Secured Creditors' Claims".

(ii) The Secured Creditors' Claims are secured by valid, perfected, and unavoidable first priority security interests in all of the collateral provided for under the respective applicable loan documents governing each such loan facility (collectively, the "Secured Creditors' Collateral"), and subject to the provisions of this Order, shall constitute separate allowed secured claims pursuant to § 506(b) of the Bankruptcy Code for all purposes in connection with the Debtors' Chapter 11 Cases.

(b) <u>Waiver of Claim/Lien Challenges</u>. Subject to Paragraph 8 above, the Debtors hereby acknowledge and agree that they have no offsets, defenses, claims, or counterclaims against the

Secured Creditors, or the Secured Creditors' officers, directors, employees, attorneys, representatives, parent, affiliates, predecessors, successors, or assigns, with respect to the pre-petition indebtedness due and owing to either or both of them, or otherwise, and that if any of the Debtors now has, or ever did have, any offsets, defenses, claims, or counterclaims against the Secured Creditors, or its/their officers, directors, employees, attorneys, representatives, parent, affiliates, predecessors, successors, or assigns, whether known or unknown, at law or in equity, from the beginning of the world through this date, all of them are hereby expressly WAIVED, and each of the Debtors hereby RELEASES the Secured Creditors and its/their respective officers, directors, employees, attorneys, representatives, parent, affiliates' predecessors, successors, and assigns from any liability therefor, and any such claims are hereby barred.

    (c)    <u>Additional Adequate Protection.</u>

    (i)    Subject to the entry of a Final Order, no expenses of administration of the Debtors' estates shall be charged pursuant to § 506(c) of the Bankruptcy Code, or otherwise, against the Secured Creditors' Collateral or the Post-Petition Collateral. Nothing contained in this First Interim Order shall be deemed to be the consent by the Secured Creditors, whether express or implied, to any claims against the Secured Creditors' Collateral or the Post-Petition Collateral under § 506(c) of the Bankruptcy Code.

    (ii)    The Secured Creditors shall not be subject to the equitable doctrine of "marshaling" or any other similar doctrine with respect to any of the Secured Creditors' Collateral (whether pre-petition or post-petition). Additionally, the Secured Creditors shall each be entitled to all of the rights and benefits of Section 552(b) of the Bankruptcy Code, and the "equities of the case" exception under Section 552(b) of the Bankruptcy Code shall not apply to the Secured Creditors with respect to proceeds, product, offspring or profits of any of the Collateral upon entry of a Final Order, to the extent such relief is granted.

    (iii)    The Debtors stipulate and agree to the accrual of post-petition interest on and after the Filing Date at the contractual default rate set forth in the applicable pre-petition loan documents, subject to the 506(b) Rights. Notwithstanding any provision of this First Interim Order or the Secured Creditors' applicable pre-petition loan documents to the contrary, the Secured Creditors reserve, and this First Interim Order is without prejudice to, their respective rights to, among other things, claim additional interest (including default interest), fees and expenses (including, without limitation, professional fees and expenses) in an amount greater than the amounts provided for in this First Interim Order.

    (iv)    The Debtors are directed and authorized to pay the post-petition out-of-pocket costs and expenses incurred by the Secured Creditors within 10 days of submission of an invoice

(including, without limitation, reasonable fees and expenses of counsel; any dispute as to the reasonableness of such fees shall be subject to the jurisdiction of this Court).

(v) The Debtors, without further order of or application to the Court, are directed and authorized to continue to engage and utilize the services in the normal course of their operations of Equiant Financial Services ("Equiant") as the Debtors' servicer of the various notes receivable portfolios and to continue to compensate Equiant in the normal course in the amounts and at the times as are set forth in the First Interim Budget.

(c) Sale/Marketing of Company; Plan Confirmation; Appointment of Chief Sale Officer.

(i) As a condition to the Secured Creditors' consent to the Debtor's use of their Cash Collateral in the manner and for the periods provided herein, the Debtors shall effectuate the sale/confirmation timetable set forth below for the sale of the equity interests in the Debtors, and/or all or some of the Debtors' assets:

| Event | Deadline |
| --- | --- |
| File Plan and Disclosure Statement (including bid procedures) | October 1, 2010 |
| Disclosure Statement Hearing; | November 1, 2010 |
| Entry of Disclosure Statement Approval Order | November 1, 2010 |
| Receive letters of interest from interested parties for the purchase and sale of the equity/assets of the Debtors | November 22, 2010 |
| Receive executed purchase agreements from interested parties | December 3, 2010 |
| Debtors conduct and complete the auction or auctions | December 10, 2010 |
| Plan confirmation hearing | December 17, 2010 |

(ii) The Debtors shall continue and expand the employment and role of Mackinac Partners ("Mackinac"), presently the Debtors' Chief Restructuring Officer ("CRO"), to include the expanded role of "Chief Sale Officer" of the Debtors ("CSO"), to perform those additional duties and functions as set forth in the Motion, and the Debtors shall be authorized to compensate Mackinac at the times and as provided for in the First Interim Budget.

(d) Default; Termination of Cash Collateral Use. Anything in this First Interim Order to the contrary notwithstanding, the Debtors shall be prohibited from using the Secured Creditors' Cash Collateral absent further order of this Court upon the Secured Creditors having first notified the Debtors, BB&T, any Committee, and the U.S. Trustee in writing that an Event Of Default has occurred and is continuing; provided, however, that to the extent the alleged Event Of Default is a payment default or otherwise susceptible to cure, the Secured Creditors shall provide the Debtors and their counsel with

written notice thereof and five (5) days' opportunity to cure such default. If the Secured Creditor believes that the Debtors have used their Cash Collateral in a manner not consistent with this First Interim Order the Secured Creditors shall be permitted to seek relief, including, without limitation, termination of the Debtors' use of Cash Collateral, on an emergency or expedited basis. Upon Termination of the Debtors' right to use Cash Collateral pursuant to the terms of this First Interim Order, nothing in this First Interim Order shall be deemed to waive the right of the Debtors or any successor thereto, to bring a motion requesting that this Court authorize the use of Cash Collateral over the objection of the Secured Creditors or any parties' rights to contest any such motion.

(d) <u>Miscellaneous.</u>

(i) Any stay, modification, reversal or vacation of this First Interim Order shall not affect the validity of any obligation of the Debtors to the Secured Creditors incurred pursuant to this First Interim Order.

(ii) The provisions of this First Interim Order and any actions taken pursuant hereto shall survive entry of any order which may be entered (a) confirming any plan of reorganization in any of the Chapter 11 Cases, (b) converting any of the Chapter 11 Cases to a Chapter 7 case, or (c) dismissing any of the Chapter 11 Cases.

11. <u>Final Hearing Notice.</u>

The Final Hearing to consider entry of the Final Order and final approval of the Debtors' request for use of the Secured Creditors' Cash Collateral is scheduled for **October 8, 2010 at 2:00 p.m.** (ET), before the Honorable Karen S. Jennemann, United States Bankruptcy Judge, at the United States Bankruptcy Court for the Middle District of Florida, Orlando Division.

**DONE and ORDERED on September 15, 2010.**

_____
**HONORABLE KAREN S. JENNEMANN**
**UNITED STATES BANKRUPTCY JUDGE**

Copies provided to:

Debtor: Island One, Inc., et al., 8680 Commodity Circle, Orlando, FL 32819

Debtor's Counsel: Elizabeth A. Green, Esq., Baker & Hostetler LLP, 200 S. Orange Ave., SunTrust Center, Suite 2300, Orlando, FL 32801-3432;

Attorney for Textron Financial Corporation: Steven Fox, Esq., Epstein, Becker & Green, 250 Park Ave., New York, NY 10177;

Attorney for Liberty Bank: R. Jeffrey Smith, Esq. and Jonathan Alter, Esq., Bingham McCutchen LLP, 1 State Street, Hartford, CT 06103;

Attorney for BB & T: Frank Terzo, Esq., GrayRobinson, P.A., 1221 Brickell Ave, Suite 1600, Miami 33131;

United States Trustee's Office, 135 W. Central Blvd., Suite 620, Orlando, FL 32801; and

# ISLAND ONE SUMMARY - ALL ENTITIES

SHORT-TERM CASH FLOW - PLANNING
Date Prepared: 9/10/10

Filing Date Assumption: Fri. 9/10/10

| | 1 | 2 | 3 | 4 | 5 | 6 | 7 | last 3wks | Oct '10 | Nov '10 | Dec '10 | Total: last 3 wks |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | SEPTEMBER 2010 | | | OCTOBER 2010 | | | | Monthly Summary | | | | Sep - Dec '10 |
| | Fcst | Fcst | Fcst | Fcst | Fcst | Fcst | Fcst | Sep '10 | | | | |
| Fiscal Week # | 37 | 38 | 39 | 40 | 41 | 42 | 43 | | | | | |
| | 9/13 - 9/19 | 9/20 - 9/26 | 9/27 - 10/3 | 10/4 - 10/10 | 10/11 - 10/17 | 10/18 - 10/24 | 10/25 - 10/31 | | | | | |
| Beginning Cash Balance | 18,888 | 344,929 | 298,126 | 553,710 | 487,908 | 496,696 | 598,621 | 18,888 | 553,710 | 199,634 | 13,728 | 18,888 |
| **Inflow:** | | | | | | | | | | | | |
| Liberty Funding (gross of Release Fees) | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Portfolio Cash | 633,588 | 359,033 | 591,349 | 527,313 | 316,388 | 674,961 | 590,591 | 1,583,971 | 2,109,253 | 2,105,379 | 2,099,273 | 7,897,876 |
| House Paper | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Escrow - Sales Deposits | 37,335 | 36,302 | 33,293 | 42,343 | 48,219 | 47,576 | 38,374 | 106,931 | 176,511 | 208,217 | 220,244 | 711,903 |
| Lando Bulk Inventory Sale | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Miscellaneous | 10,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 20,000 | 20,000 | 25,000 | 20,000 | 85,000 |
| Management Co Revenues | 119,601 | 176,875 | 241,901 | 120,374 | 161,599 | 157,106 | 228,512 | 538,377 | 667,592 | 832,467 | 720,184 | 2,758,620 |
| HOA Management Fees | 5,497 | 2,154 | 206,553 | 724 | 1,018 | 0 | 243,418 | 214,203 | 245,160 | 216,641 | 644,229 | 1,320,233 |
| Club Navigo Revenues | 20,000 | 0 | 20,000 | 0 | 20,000 | 0 | 20,000 | 40,000 | 40,000 | 161,517 | 687,991 | 929,508 |
| St. Croix Shortfall to be funded by BB&T | 23,000 | 23,000 | 23,000 | 15,000 | 15,000 | 15,000 | 15,000 | 69,000 | 60,000 | 49,250 | 25,000 | 203,250 |
| Total Inflow | 849,022 | 602,364 | 1,121,096 | 710,755 | 567,223 | 899,643 | 1,140,895 | 2,572,482 | 3,318,516 | 3,598,472 | 4,416,921 | 13,906,391 |
| **Outflow:** | | | | | | | | | | | | |
| Payroll - IOI (Developer) | 167,000 | 164,000 | 164,000 | 164,000 | 164,000 | 164,000 | 164,000 | 495,000 | 656,000 | 820,000 | 656,000 | 2,627,000 |
| Payroll - IOR (Mgmt Co) | 57,500 | 57,500 | 57,500 | 56,500 | 56,500 | 56,500 | 56,500 | 172,500 | 226,000 | 270,000 | 216,000 | 884,500 |
| Payroll - SCO | 12,500 | 12,500 | 12,500 | 12,500 | 12,500 | 12,500 | 12,500 | 37,500 | 50,000 | 62,500 | 50,000 | 200,000 |
| Commissions | 39,185 | 41,527 | 33,926 | 28,486 | 25,954 | 28,908 | 35,887 | 114,639 | 119,234 | 177,482 | 152,165 | 563,520 |
| Employee Insurance | 17,000 | 0 | 150,000 | 17,000 | 0 | 0 | 150,000 | 167,000 | 167,000 | 167,000 | 167,000 | 668,000 |
| Portfolio Servicing (Equiant) | 0 | 67,000 | 0 | 0 | 0 | 70,000 | 67,292 | 67,000 | 137,292 | 140,000 | 70,000 | 414,292 |
| Office Rent | 0 | 0 | 56,559 | 0 | 0 | 0 | 56,559 | 56,559 | 56,559 | 56,559 | 56,559 | 226,236 |
| Subtotal - Sales & Marketing | 33,385 | 43,797 | 33,200 | 37,800 | 58,708 | 34,800 | 29,800 | 110,382 | 161,108 | 174,500 | 142,700 | 588,690 |
| Subtotal - G&A | 33,175 | 48,700 | 50,250 | 44,000 | 60,300 | 104,900 | 62,150 | 132,125 | 271,350 | 184,350 | 212,650 | 800,475 |
| Professional Services - Accounting Audits, Lender Audits, | 0 | 0 | 0 | 0 | 0 | 25,000 | 0 | 0 | 25,000 | 10,000 | 10,000 | 45,000 |
| Professional & Administrative Services - BK Legal Fees | 0 | 15,000 | 15,000 | 15,000 | 15,000 | 15,000 | 145,000 | 30,000 | 190,000 | 155,000 | 125,000 | 500,000 |
| Prof & Admin Services - Legal/timeshare regulatory compliance | 0 | 0 | 10,000 | 0 | 0 | 0 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 40,000 |
| Professional & Administrative Services (includes IB) | 0 | 0 | 0 | 0 | 0 | 0 | 50,000 | 0 | 50,000 | 0 | 0 | 50,000 |
| Professional Fees - Mackinac (Post-Filing) | 0 | 0 | 0 | 0 | 0 | 75,000 | 0 | 0 | 75,000 | 120,000 | 128,984 | 323,984 |
| Professional Fees - Lenders' Counsel | 0 | 0 | 0 | 200,000 | 0 | 0 | 0 | 0 | 200,000 | 0 | 600,000 | 800,000 |
| US Trustee Fees | 13,000 | 0 | 0 | 13,000 | 0 | 0 | 0 | 13,000 | 13,000 | 0 | 0 | 26,000 |
| Filing and Court / Administrative Fees | 10,000 | 0 | 0 | 0 | 0 | 0 | 0 | 10,000 | 0 | 0 | 0 | 10,000 |
| Closing & Foreclosure Costs | 12,155 | 12,155 | 12,155 | 41,035 | 13,035 | 13,035 | 13,035 | 36,465 | 80,141 | 92,108 | 83,096 | 291,811 |
| Upgrade Repurchases | 28,154 | 28,154 | 28,154 | 32,554 | 32,554 | 32,554 | 32,554 | 84,463 | 130,217 | 166,061 | 118,482 | 499,222 |
| HOA M&T (Net Obligation) | 0 | 0 | 0 | 0 | 0 | 0 | 441,245 | 0 | 441,245 | 513,548 | 152,119 | 1,106,911 |
| Release Fees | 0 | 0 | 57,722 | 24,822 | 21,782 | 20,175 | 23,257 | 57,722 | 90,036 | 133,304 | 112,519 | 393,580 |
| Other Funding Fees - Master Svcr Fee (Conduit) due TFC | 0 | 2,079 | 0 | 0 | 0 | 1,936 | 0 | 2,079 | 1,936 | 1,925 | 1,792 | 7,732 |
| Construction / Capital Expenditures | 2,000 | 0 | 0 | 0 | 0 | 0 | 0 | 2,000 | 0 | 0 | 0 | 2,000 |
| Management Company | 89,834 | 150,764 | 114,545 | 89,860 | 96,101 | 143,410 | 112,051 | 355,143 | 441,422 | 448,741 | 473,179 | 1,718,484 |
| Club Navigo | 8,091 | 5,991 | 70,000 | 0 | 2,000 | 0 | 78,053 | 84,082 | 80,053 | 81,300 | 70,555 | 315,990 |
| Total Outflow | 522,980 | 649,168 | 865,511 | 776,557 | 558,435 | 797,718 | 1,539,882 | 2,037,659 | 3,672,592 | 3,784,377 | 3,608,800 | 13,103,429 |
| Net Change | 326,042 | (46,804) | 255,585 | (65,802) | 8,788 | 101,925 | (398,987) | 534,823 | (354,076) | (185,906) | 808,121 | 802,962 |
| Cash Balance | 344,929 | 298,126 | 553,710 | 487,908 | 496,696 | 598,621 | 199,634 | 553,710 | 199,634 | 13,728 | 821,849 | 821,849 |

The category and line item limitations provided for in this budget shall be subject to the following: (a) with respect to any amount to be paid in a given week, in the event such amount is not paid and carried over to a subsequent week, the weekly and aggregate amounts shall be adjusted accordingly; (b) subject to (a) above, the Debtors shall not exceed any weekly amount, on a cumulative basis, by more than 10% without prior approval of the Secured Creditors or by order of the Court; (c) the Debtors shall not pay any budgeted amount in advance of the week in which such disbursement is scheduled to be paid without prior approval of the Secured Creditors or by order of the Court.