UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

IN RE:                                                CHAPTER 11

**ISLAND ONE, INC.**, *et al.*             CASE NO.: 6:10-bk-16177-KSJ

              Debtors.                        Jointly Administered with Case Nos.:
                                                      6:10-bk-16179-KSJ; 6:10-bk-16180KSJ;
                                                        6:10-bk-16182-KSJ; 6:10-bk-16183-KSJ
                                                        and 6:10-bk-16189-KSJ

_____/

## MOTION TO APPROVE BID AND SALE PROCEDURES

**ISLAND ONE, INC.**, *et al.* and its affiliates ("IOI " or the "Debtors"), as the debtors and debtors-in-possession, pursuant to 11 U.S.C. §1129 of the Bankruptcy Code and Rule 6004 of the Federal Rules of Bankruptcy Procedure, move for an order establishing bidding procedures in connection with the sale of the equity interests in some or all of the Debtors and/or the sale of some or all of the property and assets of the Debtors' businesses ("Business Assets") as set forth in the Debtors' Plan of Reorganization. In support hereof, the Debtors state as follows:

### BACKGROUND

1.     On September 10, 2010 (the "Petition Date"), the Debtors filed voluntary petitions for relief under Chapter 11 of Title 11 of the United States Code ("Bankruptcy Code"). No trustee has been appointed. The Debtors continue to operate their businesses and manage their properties as debtors-in-possession pursuant to §§ 1107 and 1108 of the Bankruptcy Code.

2.     On September 13, 2010, this Court entered an Order granting joint administration of this case and five affiliated or related cases (Doc. No. 19). This case is the lead case.

3.     This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157(b) and

1334. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b).

4. The statutory predicates for the relief requested herein are § 1129 of the Bankruptcy Code and Rule 6004 of the Federal Rules of Bankruptcy Procedure.

## The Debtors

5. The Debtors have been in the time share industry in Central Florida for over twenty-five (25) years. In 1981, the Debtors began development of their first timeshare resort, and initiated their first sales of time shares in 1983. Since 1981, the Debtors have developed and managed time share resorts in Florida and the U.S. Virgin Islands. In addition, through Club Navigo Vacation Club, Inc., the Debtors have developed a timeshare network that extends throughout the United States, Latin America, the Caribbean and Europe.

6. Through its management arm, Island One Resorts Management Corporation ("IORMC"), the Debtors manage thirteen (13) resorts owned or developed by the Debtors. IORMC has the exclusive right to manage the resorts owned or developed by IOI and the affiliated Debtors by virtue of various contracts between IORMC and the resort associations. In connection with its management duties, IORMC provides IOI with the employees to manage the day-to-day operations of the resorts and provides the reservation system at the resorts.

7. In addition to owning unsold inventory at a number of resorts, IOI also provides all sales and marketing functions for the resorts and provides developer accounting operations for the resort system.

8. Each of the resorts owned or developed by the Debtors consists of one (1) or two (2) bedroom furnished units and various pool features, playgrounds, activity decks, restaurants

2

and other recreational amenities. Examples of the amenities include a water park, water slides, hot tubs, a 1,500 gallon salt water aquarium, volley ball courts, tennis courts, and club houses.

9. The resorts are located in Orlando, Florida; Ormond Beach, Florida; Naples, Florida; South Beach Miami, Florida and the U.S. Virgin Islands.

## Reasons For Filing the Chapter 11

10. For the last several years, the real estate market in Florida and across the country has suffered devastating decline. In addition, the worldwide decline in the credit markets has significantly decreased sales and revenues in the timeshare industry across the world. The declining state of the economy also significantly impacted time share sales, and default rates on existing receivables. As a result, the Debtors were unable to meet their obligations to their secured creditors, Liberty Bank, N.A. ("LB") and Textron Financial Corporation ("TFC").

11. Prior to the Petition Date, the Debtors sought an equity infusion to recapitalize the company, and had extensive negotiations with several parties. However, the key constituencies were not able to come to an agreement.

12. The Debtors determined that it was in the best interest of all of their creditors to file petitions for reorganization under Chapter 11 of Title 11 of the Code.

## Marketing Efforts

13. Prior to the Petition Date, in May of 2009, the Debtors retained LCG Capital Group, LLC ("LCG") as their investment bankers in order to facilitate an infusion of capital in the Debtors or a sale of equity in the Debtors to a third party. In December of 2009, the Debtors amended their agreement with LCG to include Western Reserve Partners LLC ("Western Reserve") as a co-party to act as investment bankers with LCG.

14. During the period leading up to the filing of these cases, Western Reserve

contacted one hundred sixty seven (167) parties, and sent thirty seven (37) confidentiality agreements of which nineteen (19) were returned. Confidential information was delivered to seventeen (17) interested parties.

15. On October 25, 2010, the Court approved the Debtors' retention of Western Reserve for purposes of these cases *nunc pro tunc* to September 10, 2010 (Doc. No. 134).

16. Since being retained herein, Western Reserve has actively marketed both the Debtors' equity and Business Assets. Since the Petition Date, Western Reserve has sent information regarding the sale of the equity in the Debtors or the Business Assets to seventy seven (77) parties identified by Western Reserve as potential purchasers or investors. Nineteen (19) have executed confidentiality agreements.

17. The Debtors believe that the implementation of the procedures set forth in this Motion will assist the Debtors, their secured and unsecured creditors, and the Court in evaluating the bids to be received by the Debtors.

## Proposed Bidding and Sale Procedures

18. <u>Interests/Assets to be Sold</u>. The Debtors shall offer for sale the equity interests in some or all of the Debtors and/or the Business Assets.[1]

19. <u>Participation Requirements</u>. Any person or entity that wishes to participate in the bidding process (each, a "Potential Bidder") must become a "Qualifying Bidder." As a prerequisite to becoming a Qualifying Bidder (and, thus, being able to conduct due diligence), a

---

[1] In the event that any of the Business Assets subject to the lien of BB & T Acquired Asset Group, LLC ("BB & T") are sold to a third party purchaser, with the consent of BB & T, BB &T will pay Western Reserve its fees as set forth in the agreement retaining Western Reserve, approved by the Court on October 25, 2010.

Potential Bidder: (a) must have delivered an executed confidentiality agreement to the Debtors. and Western Reserve, in form and substance reasonably acceptable to the Debtors; and (b) must be able, as determined by the Debtors in their reasonable discretion (following consultation with their secured lenders and the Official Committee of Unsecured Creditors (the "Creditors' Committee")), to consummate a transaction involving all or substantially all of the Debtors' equity interests or some or all of the Business Assets, as applicable, if selected as the successful bidder following the conduct of an auction (as described below). TFC, LB and BB &T , as secured creditors of the Debtors, are deemed Qualifying Bidders, and shall be entitled to credit bid all or any portion of its/their indebtedness to acquire the assets upon which it/they have a lien at the Auction as provided in paragraphs 29(f) and (g) hereof. TFC, LB, and BB & T shall not be required to meet the requirements for a Qualified Bid as set forth herein, including, without limitation, submitting a letter of interest or a bid deposit.

20. Due Diligence. A Qualifying Bidder will have the opportunity to conduct reasonable due diligence through and including the Bid Deadline (as defined below).

21. Bid Requirements. To be deemed a "Qualifying Bid," a Letter of Interest (as defined below) must be delivered on or before November 24, 2010 and Purchase Documents (as defined below), together with a Bid Deposit as set forth below, must be received from a Qualifying Bidder by a date no later than the Bid Deadline set forth below.

22. Letter of Interest. On before November 24, 2010, a Qualifying Bidder must deliver a letter of interest ("Letter of Interest") to the parties set forth in paragraph 25 hereof, indicating the Qualifying Bidder's interest in purchasing the equity interests in some or all of the Debtors or some or all of Business Assets. The Letter of Interest must identify the equity or specific Business Assets to be purchased and a minimum total bid amount ("Minimum Bid") and

provide adequate information to demonstrate the bidder's financial wherewithal and credit worthiness to consummate the proposed transaction. The Debtors, in consultation with their secured lenders and the Creditors' Committee, reserve the right to extend the deadline for submitting a Letter of Interest with respect to a particular Potential Bidder.

23. Bid Deposit. On or before December 3, 2010, a Qualifying Bidder must deliver a deposit equal to the greater of ten percent (10%) of the purchase price contained in the Purchase Documents (as defined below) or Five Hundred Thousand Dollars $500,000.00 ("Bid Deposit"), which deposit shall be delivered by wire transfer of immediately available funds to Debtors' counsel, in accordance with the following wire transfer instructions:

**Wire To SunTrust Bank of Central Florida, N.A.**
**Atlanta, Georgia**
**For credit to Orange Avenue Office, Orlando, FL**

**ABA Routing #061-000104**

**Baker & Hostetler LLP Trust Account**
**Account #0700700219657**

**Reference: "To the attention of Elizabeth A. Green for IOI Bid Deposit"**

24. Purchase Documents and Qualified Bid. On or before December 3, 2010 (" Bid Deadline"), any Qualifying Bidder who has previously submitted a Letter of Interest shall deliver its Bid Deposit as set forth above and shall deliver to the parties set forth in paragraph 25 hereof a clean and duly executed purchase agreement (with all exhibits thereto, the "Purchase Documents") which sets forth the terms and conditions of such Qualifying Bidder's proposed equity or asset purchase. To be deemed a Qualifying Bid, the Purchase Documents or other submitted documents must:

a) state such Qualifying Bidder offers to purchase all or substantially all of the Debtors' equity interests or some or all of the Business Assets;

b) state such Qualifying Bidder is financially capable of consummating the transactions contemplated by the Purchase Documents, and provide written evidence reasonably satisfactory to the Debtors (following consultation with their secured lenders and the Creditors' Committee) demonstrating that such Qualifying Bidder has the financial ability to consummate the purchase proposed by the Purchase Documents;

c) state such Qualifying Bidder's offer is irrevocable until the closing of the proposed sale transaction if such Qualifying Bidder is the Prevailing Bidder (as defined below);

d) contain such financial and other information to allow the Debtors to make a reasonable determination as to the Qualifying Bidder's financial and other capabilities to consummate the transactions contemplated by the Purchase Documents, including, without limitation, such financial and other information setting forth adequate assurance of future performance under contracts and leases to be assumed pursuant to § 365 of Title 11 of the United States Code in a form requested by the Debtors to allow the Debtors to serve, within two (2) business days after such receipt, such information on counter-parties to any contracts or leases being assumed or assumed and assigned in connection with the proposed sale that have requested, in writing, such information;

e) identify with particularity each and every executory contract and unexpired lease, the assumption and, as applicable, assignment of which is a condition to closing;

f) not request or entitle such Qualifying Bidder to any break-up fee, expense reimbursement, or similar type of payment;

g) fully disclose the identity of each entity that will be bidding in the Auction (defined below) or otherwise participating in connection with such bid, and the complete terms of any such participation;

h) be likely to result in a value to the Debtors' estates in the Debtors' reasonable judgment (following consultation with their secured lenders and the Creditors' Committee), that is equal to or exceeds the fair value for the interests or Business Assets to be sold;

i) (a) not contain any financing contingencies of any kind; (b) provide for expiration of any due diligence contingency on or before the Auction Date and (c) contain evidence that the Qualifying Bidder has received debt and/or equity funding commitments or has financial resources readily available sufficient in the aggregate to consummate the sale, which evidence is reasonably satisfactory to the Debtors (following consultation with their secured lenders and the Creditors' Committee);

j) include evidence of authorization and approval from the Qualifying Bidder's board of directors (or comparable governing body) with respect to the submission, execution, and delivery of the Purchase Documents; and

k) provide that, if the Qualifying Bidder is designated as a Back-Up Bidder (as defined below), in the event the Prevailing Bidder fails to close the transaction contemplated by the Prevailing Bid, then the Qualifying Bidder agrees to close the transaction on the terms set forth in the Back-Up Bid as provided below. A competing bid satisfying all the above requirements as well as the requirements set forth in paragraph 21 hereof shall constitute a "Qualifying Bid".

25. <u>Bid Deadline</u>. A Qualifying Bidder that desires to make a bid shall deliver a written or electronic copy of its Purchase Documents to: (i) Debtors' counsel, Baker & Hostetler LLP, SunTrust Center, Suite 2300, 200 South Orange Avenue, Orlando, FL 32801 (Attn: Elizabeth Green, Esq.); (ii) counsel to TFC, EpsteinBeckerGreen, P.C. 250 Park Avenue, New York, NY 10177 (Attn: Steven E. Fox, Esq.) and Burr & Forman LLP, CNL Center II, 450 S. Orange Avenue, Suite 200, Orlando, FL 32801 (Attn: Denise Dell-Powell, Esq.); (iii) counsel to LB, Bingham McCutchen LLP, One State Street, Hartford, CT 06103 (Attn: Jonathan B. Alter, Esq.); (iv) counsel to the Creditors' Committee, Bush Ross, PA, 1801 N. Highland Avenue, Tampa, FL 33601-3913 (Attn: H. Bradley Staggs, Esq. and Adam Lawton Alpert, Esq.);(v) counsel to BB & T, Gray Robinson P.A, 1221 Brickell Ave. Suite 1600, Miami, FL 33131.,(Attn Frank P. Terzo, Esq.) and (v) Western Reserve Partners, LLC, 200 Public Square, Suite 3750, Cleveland, OH 44114 (Attn: Victor Faris), so as to be received by no later than 5:00 p.m. (EST) on or before **DECEMBER 3, 2010** (the "Bid Deadline"). The Debtors may, in their discretion (following consultation with their secured lenders and the Creditors' Committee), extend the Bid Deadline.

26. <u>Evaluation of Qualifying Bids</u>. The Debtors (following consultation with their secured lenders and the Creditors' Committee) shall make a determination regarding whether a bid is a Qualifying Bid and shall notify bidders whether their bids have been determined to be qualified by a date no later than two (2) business days prior to the Auction Date. Prior to the Auction (as defined below), the Debtors shall determine, in their reasonable judgment (following consultation with their secured lenders and the Creditors' Committee), which of the Qualifying Bids is likely to be the highest and/or best. The Debtors reserve the right (following consultation with their secured lenders and the Creditors' Committee) to have additional dialogue with any

9

bidder concerning the terms of their bid and with respect to the qualification thereof as a Qualifying Bid, including permitting modifications to the bid to enable any bid to become a Qualifying Bid.

27. <u>Stalking Horse Designation</u>. The Debtors reserve the right, in their discretion, (following consultation with their secured lenders and the Creditors' Committee), to designate one or more "Stalking Horse" bidders in connection with the conduct of the Auction. In the event the Debtors determine to designate one or more bidders as a Stalking Horse, the Debtors shall make an announcement at or prior to the commencement of the Auction.

28. <u>No Qualifying Bids</u>. If no timely, conforming Qualifying Bids are submitted by the Bid Deadline, the Debtors (following consultation with their secured lenders and the Creditors' Committee) may determine not to hold an Auction, reserving all right including to conduct a subsequent sale of the equity interests and/or Business Assets and to seek approval of a plan of reorganization.

29. <u>Auction</u>. In the event that the Debtors timely receive one or more Qualifying Bids, the Debtors intend to conduct an open bid auction (the "Auction") at the offices of Debtors' counsel, Baker & Hostetler LLP, SunTrust Center, Suite 2300, 200 South Orange Avenue, Orlando, FL 32801, commencing at 10:00 a.m. (EST) on **DECEMBER 10, 2010** (the "Auction Date"). The Debtors may, in their discretion (following consultation with their secured lenders and the Creditors' Committee), adjourn the date, time and place of the Auction. The Auction shall be governed by the following procedures:

    a) only TFC, LB, BB & T and other Qualifying Bidders shall be entitled to bid at the Auction;

b) Qualifying Bidders shall appear in person at the Auction, or through a duly authorized representative;

c) bidding shall commence at the amount of the highest Qualifying Bid submitted by the Qualifying Bidders prior to the Auction;

d) bidding increments shall be determined by the Debtors, in consultation with their secured lenders and the Creditors' Committee, and shall be announced at the commencement of the Auction;

e) all Qualifying Bidders shall have the right to submit additional bids and make additional modifications to the Purchase Documents at the Auction, provided that any such modifications to the Purchase Documents on an aggregate basis and viewed in whole, shall not be less favorable to the Debtors;

f) Qualifying Bidders may make one or more credit bids of any sums advanced to the Debtors and outstanding under any cash collateral order(s) entered by the Court;

g) TFC, LB, BB & T, as Qualified Bidders, shall be entitled to credit bid at the Auction in the full amount of their respective secured claims against the assets subject to its/their lien(s), and shall be entitled to submit such credit bid at any time during the Auction, including after the submission of the last bid by a Qualified Bidder;

h) the Auction shall continue until there is only one offer that the Debtors determine, following consultation with their secured lenders and the Creditors' Committee, and subject to Bankruptcy Court approval, is the highest and/or best from among the Qualifying Bids submitted at the Auction for the asset(s) or equity sold (the "Prevailing Bid"). In making this decision, the Debtors shall consider, without limitation, the amount of the purchase price, the form of consideration being offered, the likelihood of the Qualifying Bidder's ability to close a

transaction and the timing thereof, and the net benefit to the Debtors' estates. The Debtors, following consultation with their secured lenders and the Creditors' Committee, shall have the right to determine that no bid is a Prevailing Bid if the consideration provided to the estate by the acceptance of such bid does not satisfy a minimum threshold so as to constitute fair value for the interests proposed to be acquired. The Qualifying Bidder submitting such Prevailing Bid shall become the "Prevailing Bidder," and shall have such rights and responsibilities of the purchaser, as set forth in the applicable Purchase Documents. The Debtors, following consultation with their secured lenders and the Creditors' Committee, shall also determine which of the final bids presented at the Auction is the next highest and/or best bid(s), which shall thereupon be designated the "Back-Up Bid(s)" and the maker of the Back-Up Bid(s) will be designated as the "Back-Up Bidder(s)". In the event the Prevailing Bidder fails to close the transaction contemplated by the Prevailing Bid, then the Debtors reserve the right, following consultation with their secured lenders and the Creditors' Committee, to close the transaction contemplated by the Back-Up Bid(s); and

   i)   within two (2) days after adjournment of the Auction, the Prevailing Bidder (and any Back-Up Bidder, as applicable) shall complete and execute all agreements, contracts, instruments and other documents evidencing and containing the terms and conditions upon which the Prevailing Bid (or Back-Up Bid) was made.

30. EACH BID SHALL CONSTITUTE AN IRREVOCABLE OFFER AND BE BINDING ON THE PREVAILING BIDDER(S) AND THE BACK-UP BIDDER(S) FROM THE TIME THE BID IS SUBMITTED UNTIL THE EARLIER OF 48 HOURS AFTER THE SALE OF THE EQUITY INTERESTS AND/OR ASSETS HAS CLOSED OR THIRTY (30) DAYS AFTER THE SALE HEARING.

31. <u>Sale/Confirmation Hearing</u>. The Prevailing Bid will be subject to approval by the Court. The hearing to approve the Prevailing Bid in connection with confirmation of the Debtors' plan of reorganization (the "Confirmation Hearing") shall take place on December 15, 2010. The Debtors may, in their discretion (following consultation with their secured lenders and the Creditors' Committee) and with Court approval, adjourn the date and time of the Confirmation Hearing.

32. <u>Return of Deposits</u>. All deposits shall be returned to each bidder not selected by the Debtors as the Prevailing Bidder no later than five (5) business days following the Auction, except for the Back-Up Bidder whose deposit shall be returned upon the date of the closing of the sale to the Prevailing Bidder unless applied in accordance with the Purchase Documents in the event the Back-Up Bidder becomes the Prevailing Bidder.

33. THE DEBTORS RESERVE THE RIGHT, FOLLOWING CONSULTATION WITH THEIR SECURED LENDERS AND THE CREDITORS' COMMITTEE, TO MODIFY AND/OR DIVERGE FROM THE FOREGOING BID PROCEDURES, IF APPROPRIATE TO FURTHER THE PURPOSES OF THE AUCTION.

34. Notice of the relief requested in this Motion will be given to all known creditors of the Debtors, the Office of the United States Trustee, counsel for TFC, counsel for LB, counsel for BB & T, counsel for the Creditors' Committee, all taxing authorities and all parties on the regular service list for these cases. The Debtors respectfully submit that such notice is sufficient. The Debtors will also notice all parties that previously expressed interest in purchasing the Debtors' equity interests or Business Assets and that executed confidentiality agreements. In addition, the Motion will be posted in the data room maintained by Western Reserve.

**WHEREFORE,** the Debtors respectfully request this Court enter an order: (i) approving the

bid and sale procedures requested herein; and (ii) granting such other and further relief as is just and proper.

DATED this 14th day of November 2010.

/s/ Elizabeth A. Green
Elizabeth A. Green, Esquire
Florida Bar No. 0600547
Email: egreen@bakerlaw.com
Jimmy D. Parrish, Esquire
Florida Bar No. 0526401
Email: jparrish@bakerlaw.com
**BAKER & HOSTETLER LLP**
200 S. Orange Avenue,
SunTrust Center, Suite 2300
P.O. Box 112 (32802-0112)
Orlando, Florida 32801-3432
Telephone: 407-649-4000
Facsimile: 407-841-0168
Attorneys for the Debtor

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on November 14, 2010, a true copy of **MOTION TO APPROVE BID AND SALE PROCEDURES,** together with all exhibits, has been furnished via electronic transmission using the Court's CM/ECF System to all parties requesting such notice, and/or by U.S. First Class, postage prepaid mail to the following: Island One, Inc., attn: Deborah L. Linden, 8680 Commodity Circle, Orlando, FL 32819; BB&T ACQUIRED ASSET GROUP, 2000 Interstate Park Drive, Montgomery, AL 36109; BB&T Acquired Asset Group, c/o Frank P. Terzo and Steven J. Solomon, Gray Robinson, P.A., 1221 Brickell Avenue, #1600, Miami, FL 33131; LIBERTY BANK, 315 Main Street, Middletown, CT 06457; Liberty Bank, c/o Jonathan B. Alter and R. Jeffrey Smith, Bingham McCutchen, LLP, One State Street, Suite 1400, Hartford, CT 06103; TEXTRON FINANCIAL CORP., 40 Westminster Street, Providence, RI 02940; Textron Financial Corp., c/o Steven E. Fox, Epstein Becker Green, 250 Park Avenue, New York, NY 10177; Old Florida National Bank, 60 North Court Avenue, Orlando, FL 32801; COUNSEL FOR UNSECURED CREDITORS COMMITTEE, Adam Lawton Alpert, Esq., Bush Ross, P.A., P.O. Box 3913, Tampa, Florida 33601-3913; H.J.C. FLORIDIAN CORP., 8911 Charles E. Limpus Road, Orlando, FL 32836; Maple Leaf, LLC, 4521 Sharon Road, Suite 420, Charlotte, NC 28211; Virgin Islands Design Build, Group, LLC, 5031 Estate Cotton Valley, 55 H&C, Christiansted, St. Croix, VI 00820; Kenneth Campbell, 8400 Darlene Dr., Orlando, FL 32836; Peninsula Resort Management, LLC, c/o Marsha G. Madorsky, 100 SE 2d Street, Suite 4200, Miami, FL 33133; Steward Cohen, 1510 E. Colonial Drive., Suite 305, Orlando, FL 32803-4734; Denise D. Dell-Powell, Burr & Forman, LLP, 450 S. Orange Avenue, Suite 200,

Orlando, FL 32801-3385; Roger A. Kelly, PO Box 3146, Orlando, FL 32802-3146; Kevin E. Mangum, 5100 Hwy 17-92, Suite 300, Casselberry, FL 32707; Kathleen S. McLeroy, Carlton Fields, P.A., P.O. Box 3239, Tampa, FL 33601-3239; Jason A. Rosenthal, 4798 New Broad Street, Suite 310, Orlando, FL 32814-6436; R. Scott Shuker, Latham, Shuker, Eden & Beaudine, LLP, 390 N. Orange Ave., Suite 600, Orlando, FL 32801; Melinda S. Thornton, Stephen P. Clark Center, 111 N. W. 1st Street, Suite 2810, Miami, FL 33128-1930; Edmund s. Whitson, Akerman Senterfitt, 401 E. Jackson Street, Suite 1700, Tampa, FL 33602-5250; Office of the United States Trustee, 135 West Central Boulevard, Suite 620, Orlando, FL 32801; and All Creditors and Parties-In-Interest.

\* Debtors' Counsel shall serve a copy of the foregoing to All Creditors and Parties-In-Interest and a separate Affidavit of Mailing with the matrix attached will be filed with the Court.

    DATED: November 14, 2010

                                                /s/Elizabeth A. Green
                                                Elizabeth A. Green, Esquire