# UNITED STATES BANKRUPTCY COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

In re:                                        CASE NO. 6:10-bk-16177-KSJ

**ISLAND ONE, INC.,** *et al.*                  CHAPTER 11

      Debtors.                               **Jointly-administered with Cases No.**
**6:10-bk-16179-KSJ; 6:10-bk-16180-KSJ;**
**6-10-bk-16182-KSJ; 6-10-bk-16183-KSJ;**
_____/        **and 6:10-bk-16189-KSJ**

## MODIFIED JOINT PLAN OF REORGANIZATION
## SUBMITTED BY ISLAND ONE, INC., CRESCENT ONE, LLC,
## ST. CROIX ONE, LLC, ISLAND ONE RESORTS MANAGEMENT CORPORATION,
## NAVIGO VACATION CLUB, INC., AND IOI FUNDING I, LLC

COUNSEL FOR DEBTORS

JIMMY D. PARRISH. ESQ.
ELIZABETH GREEN, ESQ.
BAKER & HOSTETLER LLP
200 S. ORANGE AVE.
SUNTRUST CENTER, SUITE 2300
ORLANDO, FLORIDA  32801-3432

November 17, 2010

**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

| | |
|---|---|
| In re: | **CASE NO. 6:10-bk-16177-KSJ** |
| **ISLAND ONE, INC.**, *et al.* | **CHAPTER 11** |
| **Debtors.** | **Jointly-administered with Cases No. 6:10-bk-16179-KSJ; 6:10-bk-16180-KSJ; 6-10-bk-16182-KSJ; 6-10-bk-16183-KSJ; and 6:10-bk-16189-KSJ** |
| _____/ | |

**JOINT PLAN OF REORGANIZATION**
**SUBMITTED BY ISLAND ONE, INC., CRESCENT ONE, LLC,**
**ST. CROIX ONE, LLC, ISLAND ONE RESORTS MANAGEMENT CORPORATION,**
**NAVIGO VACATION CLUB, INC., AND IOI FUNDING I, LLC**

**ISLAND ONE, INC., CRESCENT ONE, LLC, ST. CROIX ONE, LLC, ISLAND ONE RESORTS MANAGEMENT CORPORATION, NAVIGO VACATION CLUB, INC., AND IOI FUNDING I, LLC (collectively the "Debtors")**, hereby propose the following Joint Plan of Reorganization (the "Plan"), pursuant to Chapter 11 of the Code, 11 U.S.C. §101, *et seq.*

**ARTICLE I. - DEFINITIONS.**

For the purpose of the Plan, the following terms will have the meanings set forth below:

**Administrative Claim** shall mean a Claim for payment of an administrative expense of a kind specified in Section 503(b) of the Code and of a kind referred to in Section 507(a)(1) of the Code, including without limitation, the actual, necessary costs, and expenses incurred after the commencement of the Bankruptcy Case, of preserving Debtors' estates and operating the business of the Debtors, including wages, salaries or commissions for services, compensation for legal and other services and reimbursement of expenses awarded under Sections 330(a) or 331 of the Code. and all fees and charges assessed against the Bankruptcy Estate under Chapter 123 of Title 28, United States Code.

**Administrative Claims Bar Date** shall mean the date by which all Administrative Claims must be filed with the Bankruptcy Court to be allowed. The Administrative Claims Bar Date will be established by the Bankruptcy Court as a specific date prior to the Confirmation Date.

**Allowed Administrative Claim** shall mean all or that portion of any Administrative Claim, which has been or becomes allowed by Order of the Bankruptcy Court.

**Allowed Amount** shall mean the amount of an Allowed Claim.

**Allowed Claim** shall mean a Claim: (a) with respect to which a proof of Claim has been filed with the Bankruptcy Court in accordance with the provisions of Section 501 of the Code and Rule 3001 and within any applicable period of limitation fixed by Rule 3003 or any notice or Order of the Bankruptcy Court; (b) deemed filed, pursuant to Section 1111(a) of the Code, by virtue of such Claim having been scheduled in the lists of Creditors prepared and filed by Debtors with the Bankruptcy Court, pursuant to Section 521(1) and Rule 1007(b), and not listed as disputed, contingent or unliquidated; or (c) deemed an Allowed Claim (including Allowed Secured Claims and Allowed Unsecured Claims) pursuant to the provisions of the Plan or any Order of the Bankruptcy Court. Unless otherwise provided in the Plan or unless deemed or adjudicated an Allowed Claim, pursuant to the provisions of the Plan or any Order of the Bankruptcy Court, an Allowed Claim shall not include any Claim as to which an objection to or proceeding challenging the allowance thereof has been interposed, within any applicable period of limitation fixed pursuant to the Plan, by Rule 3003, or any Order of the Bankruptcy Court until such objection or proceeding has been overruled, dismissed, or settled by entry of a Final Order. Notwithstanding the filing of any such objection or the commencement of any such proceeding, a Claim may be temporarily allowed for voting purposes pursuant to the provisions

of Rule 3018(a). Unless otherwise specified in the Plan or any Order of the Bankruptcy Court, an Allowed Claim shall not include or accrue interest on the amount of such Claim maturing, incurred otherwise, or arising subsequent to the Petition Date.

**Allowed Interest** shall mean an Interest: (a) with respect to which a proof of Interest has been filed with the Bankruptcy Court within the applicable period of limitation fixed by Rule 3003 or a Final Order; and (b) as to which no objection to the allowance thereof has been interposed within any applicable period of limitation fixed by Rule 3007 or any Order of the Bankruptcy Court.

**Allowed Priority Tax Claim** shall mean a Priority Claim, pursuant to Code Section 507(a)(8), to the extent such Priority Claim is or becomes an Allowed Claim.

**Allowed Secured Claim** shall mean a Secured Claim to the extent provided under Section 506 of the Bankruptcy Code and to the extent that neither the Lien underlying the Claim is challenged nor the amount of the Claim is challenged as provided for herein.

**Allowed Unsecured Claim** shall mean an Unsecured Claim to the extent such Unsecured Claim is or becomes an Allowed Claim.

**Ballot** shall mean the form(s) distributed to each Creditor holding a Claim in an impaired Class, on which is to be indicated the acceptance or rejection of the Plan.

**Ballot Date** shall mean the date set by the Bankruptcy Court by which all votes for acceptance or rejection of the Plan must be received by the Bankruptcy Court or the balloting agent, as the case may be.

**Bankruptcy Cases** shall mean these jointly administered bankruptcy cases of the Debtors, which are pending before the United States Bankruptcy Court for the Middle District of Florida, Orlando Division pursuant to Chapter 11 of the Code.

**Bankruptcy Court** shall mean the United States Bankruptcy Court for the Middle District of Florida, Orlando Division, in which Debtors' Bankruptcy Cases are pending, and any Bankruptcy Court having jurisdiction to hear appeals or certiorari proceedings therefrom.

**Bankruptcy Estate** shall mean the collective estate, created pursuant to Section 541 of the Code, by the commencement of the Debtors' Bankruptcy Cases and shall include all property of the estate as defined in Section 541 of the Code.

**Bar Date** shall mean the date fixed by Order of the Bankruptcy Court as the last date for the filing of Claims in the Bankruptcy Cases.

**Barefoot'n** shall mean Barefoot'n Development Company, L.L.C., a Delaware limited liability company.

**Barefoot'n Loan** shall mean the indebtedness incurred by Island One pursuant to, and evidenced by, that certain Promissory Note by and between BB&T and Island One dated February 1, 2006 and that certain Promissory Note by and between BB&T and Island One dated March 19, 2008, as amended to date.

**Barefoot'n Property** shall mean Island One's approximately 7.32 acres of real property located in Osceola County, Florida that includes one completed building and one building site.

**BB&T** shall mean Branch Banking and Trust Company.

**BB&T Consolidated Collateral** shall mean Island One's unsold timeshare intervals at Liki Tiki Villiage I and II, the Cove on Ormond Beach, and the Charter Club at Naples Bay and the LTV Building 1400.

**BB&T Consolidated Inventory Loan** shall mean that certain Loan Agreement and Promissory Note by and between BB&T and Island One dated December 30, 2008, as amended to date.

**BB&T LTV III Land Loan** shall mean the indebtedness incurred by Island One pursuant to, and evidenced by, that certain Promissory Note by and between BB&T and Island One dated May 25, 2005 and that certain Future Advance Promissory Note dated September 11, 2007.

**BB&T LTV III Out Parcel Loan** shall mean the indebtedness incurred by Island One pursuant to, and evidenced by, that certain Promissory Note by and between BB&T and Island One dated September 11, 2007 and that certain Promissory Note dated May 25, 2007, as amended to date.

**Business Day** shall mean a day other than a Saturday or a Sunday or any other day on which the majority of commercial banks located in Orlando, Florida are required or authorized to close.

**Cash** shall mean cash or cash equivalents, including but not limited to, checks, bank deposits, or other similar items.

**Cash Collateral** shall mean the Debtors' Cash, including Cash to be received from collection of the Debtors' accounts receivables and sale of the Debtors' inventory.

**Causes of Action** shall mean the actions and causes of action (and the proceeds thereof), whether or not commenced as of the date hereof, all proceedings, commenced or to be commenced pursuant to Bankruptcy Code Sections 105 and 502 and Sections 544-554 (or equivalent provisions of applicable non-bankruptcy laws).

**Claim** shall mean any right to payment whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or any right to an equitable remedy for breach of performance, if such breach gives rise to a right to payment, whether or not such right to an equitable remedy

is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured.

**Class** shall mean any class into which Claims or Interests are classified pursuant to the Plan.

**Class 1 Claim, Class 2 Claim, Class 3 Claim**, *etc.*, shall mean the specific Class into which Claims or Interests are classified pursuant to Article II of the Plan.

**Code** shall mean the United States Bankruptcy Code, 11 U.S.C. 101, *et seq.*, and any amendments thereof.

**Confirmation** shall mean the process leading to and including the entry of the Confirmation Order, pursuant to Section 1129 of the Code.

**Confirmation Date** shall mean the date of entry of the Confirmation Order by the Bankruptcy Court.

**Confirmation Order** shall mean the Order entered by the Bankruptcy Court confirming the Plan in accordance with the provisions of the Code and which is in form and content acceptable to the Debtors.

**Cove Inventory** shall mean Island One's unsold timeshare intervals at the Cove on Ormond Beach and Cove II on Ormond Beach.

**Cove Inventory Loan** shall mean the indebtedness incurred by Island One pursuant to, and evidenced by, that certain Loan Agreement and Promissory Note by and between TFC and Island One dated July 12, 2004 and December 26, 2006, as amended to date.

**Creditor** shall have the same meaning as set forth in Section 101(1) of the Code.

**Crescent** shall mean Crescent One, LLC.

**Debt** shall have the same meaning as set forth in Section 101(12) of the Code.

**Debtors** shall mean Island One, Inc., Crescent One, LLC, St. Croix One, LLC, Island One Resorts Management Corporation, Navigo Vacation Club, Inc. and IOI Funding I, LLC.

**Disclosure Statement** shall mean the Disclosure Statement approved for distribution by the Bankruptcy Court, pursuant to Section 1125 of the Code, together with any amendments or modifications thereto.

**Disallowed Claim** shall mean a Claim which has been disallowed by a Final Order of the Bankruptcy Court.

**Disputed Claim** shall mean a Claim against any of the Debtors which is subject to a pending objection, but has not been disallowed by a Final Order of the Bankruptcy Court.

**Disputed Unsecured Claim** shall mean any Unsecured Claim against any of the Debtors which is subject to a pending objection, but has not been disallowed by a Final Order of the Bankruptcy Court.

**Distribution** shall mean the distribution to the Holders of Allowed Claims.

**Effective Date** shall mean a date within thirty (30) days after the Bankruptcy Court has entered the Confirmation Order and provided that no appeal of the Confirmation Order is pending; *provided, however,* that the Effective Date shall not occur until all the preconditions to the occurrence of the Effective Date set forth in the Plan have been met. In the event that an appeal of the Confirmation Order is pending, the Effective Date may still occur on the 30th day after the entry of the Confirmation Order provided that the conditions to affectiveness have been met.

**Equity Interests** shall mean any and all issued or authorized common stock, stock options, membership interests, and warrants in the Debtors.

**Equipment** shall mean all equipment owned by the Debtors.

**Estate Assets** shall mean all the assets, property, and cash of the Debtors, as defined in Section 541 of the Code (excluding assets previously distributed, expended, or otherwise disposed of by the Debtors prior to the Confirmation Date not otherwise subject to recovery), wherever located or of whatever type or nature, existing as of the Confirmation Date, including without limitation, the Causes of Action.

**Final Order** shall mean an Order or judgment of the Bankruptcy Court, which is no longer subject to appeal or certiorari proceedings and as to which no appeal or certiorari proceeding is pending or, in the discretion of the Debtors, if an appeal is filed and no stay has been entered.

**Holder** shall mean the legal or beneficial Holder of a Claim or Interest and, when used in conjunction with a class or type of Claim or Interest, means a Holder of a Claim or Interest in such Class or of such type.

**Impaired Class** shall mean any Class whose members are Holders of Claims or Interests, which are impaired within the meaning of Section 1124 of the Code.

**Insider** shall have the same meaning as set forth in Section 101(31) of the Code.

**Interest** shall mean an issued or authorized outstanding share or shares of common stock, a warrant or warrants for the issuance of such share or shares, other stock, stock equivalents, limited partnership interest, or other equity instruments in the Debtors.

**IOI Funding** shall mean IOI Funding I, LLC.

**Island One** shall mean Island One, Inc.

**Island One Management** shall mean Island One Resorts Management, Corporation.

**Island One/TFC Receivables** shall mean all notes receivable generated by Island One or Barefoot'n and in which a first priority Lien is claimed by TFC as security for the Island One/TFC Receivables Loan.

**Island One/TFC Receivables Loan** shall mean the indebtedness incurred by Island One pursuant to, and evidenced by, that certain Loan Agreement and Promissory Note by and between TFC and Island One dated March 14, 2001, as amended to date.

**Liberty** shall mean Liberty Bank.

**Lien** shall mean any mortgage, lien, charge, security interest, encumbrance, or other security device of any kind affecting any asset or property of the Debtors but only to the extent that such interest is recognized as valid by a court of competent jurisdiction if the validity or scope of such interest is challenged by the Debtors, Reorganized Debtor, or any other party with standing to bring such a challenge.

**LTV III Real Property** shall mean Island One's approximately 59.2 acres of unimproved property with development entitlements of three hundred units that was to serve as Phase III of Liki Tiki Village.

**Navigo** shall mean Navigo Vacation Club, Inc.

**Nonordinary Course Administrative Claim** shall mean an Administrative Claim other than an Ordinary Course Administrative Claim.

**Order** shall mean a determination, decree, adjudication, or judgment issued or entered by the Bankruptcy Court.

**Ordinary Course Administrative Claim** shall mean an Administrative Claim incurred post-petition in the ordinary course of business of the Debtors; provided, however, that any due

and unpaid post-petition payment with respect to rejected, or to be rejected, executory contracts or unexpired leases shall not be an Ordinary Course Administrative Claim.

**Payment** shall mean the Cash to be paid under the Plan to the Holders of Allowed Claims.

**Person** shall mean an individual, corporation, partnership, joint venture, trust, estate, unincorporated organization, or a government or any agency or political subdivision thereof.

**Petition Date** shall mean September 10, 2010, the date on which the Debtors each filed a voluntary petition for relief under Chapter 11 of the Code.

**Plan** shall mean this Joint Chapter 11 Plan of Reorganization, as amended or modified in accordance with the terms hereof or in accordance with the Code.

**Plan Payments** shall mean payments made by the Reorganized Debtor pursuant to the terms of the Plan including the payment of Nonordinary Course Administrative Claims.

**Prepetition** shall mean the period of time preceding the Petition Date and concluding on the Petition Date.

**Prime Rate** shall be the prime rate of interest as published in the *WALL STREET JOURNAL* on the Confirmation Date.

**Priority Claim** shall mean a Claim, other than an Administrative Claim, to the extent such Claim is entitled to priority in payment under Section 507 of the Code.

**Professional** shall mean: (i) any professional retained in the Bankruptcy Cases pursuant to an Order of the Bankruptcy Court in accordance with Sections 327 or 1103 of the Code; (ii) any attorney or accountant seeking compensation or reimbursement of expenses pursuant to Section 503(b) of the Code; and (iii) any entity whose fees and expenses are subject to approval by the Bankruptcy Court as reasonable, pursuant to Section 1129(a)(4) of the Code.

**Property** shall have the same meaning as the term "property of the estate" delineated in Section 541 of the Code.

**Reorganized Debtors** shall mean the Debtors upon the Effective Date of the Plan.

**Rule** or **Rules** shall mean the Federal Rules of Bankruptcy Procedure as supplemented by the Local Bankruptcy Rules as adopted by the Bankruptcy Court.

**Sale Process** shall mean the sale process outlined in this Plan to sell some or all of the Estate Assets or Equity Interests.

**Sales Center** shall mean that portion of Island One's approximately 4.72 acres on which the Liki Tiki Sales Center is located.

**Sales Center Loan** shall mean the indebtedness incurred by Island One pursuant to, and evidenced by, that certain Loan Agreement and Promissory Note by and between BB&T and Island One dated September 11, 2007 in the original principal amount of $4,850,000.00, as amended to date.

**Secured Claim** shall mean a Claim secured by a Lien which is perfected and enforceable under applicable law, and which is not subject to avoidance under the Code or other applicable non-bankruptcy laws. A Secured Claim which is challenged by the Debtors or Reorganized Debtor shall only be an Allowed Secured Claim to the extent that such Claim is deemed to be an Allowed Secured Claim in the Plan or the underlying Security Interest is recognized as valid by the Bankruptcy Court and the difference in amount between such Creditor's Allowed Claim and its Allowed Secured Claim shall be an Allowed Unsecured Claim.

**Security Interest** shall mean "security interest" as set forth in Section 101(51) of the Code.

**St. Croix One** shall mean St. Croix One, LLC.

**Priority Tax Claim** shall mean an unsecured Claim for taxes entitled to priority under Section 507(a)(8) of the Code.

**TFC** shall mean Textron Financial Corporation.

**TFC/Liberty** shall mean TFC and Liberty jointly as co-lenders under the TFC/Liberty Receivables Loan.

**TFC/Liberty Receivables** shall mean all notes receivable generated by Island One or Barefoot'n and in which a first priority Lien was intended to be granted to Liberty, as collateral agent for TFC/Liberty, as security for the TFC/Liberty Receivables Loan.

**TFC/Liberty Receivables Loan** shall the indebtedness incurred by Island One pursuant to, and evidenced by, that certain Loan Agreement and Promissory Note by and between TFC/Liberty and Island One dated as of October 30, 2009.

**Unclaimed Property** shall mean any Cash, or any other Property of the Debtors or Reorganized Debtor unclaimed for a period of six (6) months after any Distribution.

**Unimpaired Class** shall mean any Class the members of which are the Holders of Claims or Interests, which are not impaired within the meaning of Section 1124 of the Code.

**Unsecured Claim** shall mean a Claim that arose or is deemed to have arisen prior to the Petition Date and is not a Secured Claim or an Administrative Claim.

**Unsecured Creditor** shall mean a Creditor holding an Allowed Unsecured Claim.

**United States Trustee** shall have the same meaning ascribed to it in 28 U.S.C. § 581, *et seq.* and, as used in the Plan, refers to the office of the United States Trustee for Region 21 located in the Middle District of Florida, Orlando, Florida.

**Welcome Center** shall mean Island One's 4.72 acres consisting of unimproved property that was to become the Liki Tiki Village Welcome Center.

# ARTICLE II. - CLASSIFICATION OF CLAIMS AND INTERESTS.

All Claims and Interests treated under Articles III-VIII of the Plan are divided into the following classes, which shall be mutually exclusive:

A.     Class 1 — TFC (Island One/TFC Receivables Loan Obligations).

Class 1 consists of the Class 1 Allowed Secured Claim of TFC in connection with the Island One/TFC Receivables Loan.  The Allowed Secured Claim is estimated in the amount of $67,543,660.11 and is secured by a first priority lien on the Island One/TFC Receivables together with such other or additional collateral as is provided for under the Island One/TFC Receivables Loan, including, but not limited to, by way of any applicable cross collateralization provisions.

B.     Class 2 — TFC/Liberty (TFC/Liberty Receivables Loan Obligations).

Class 2 consists of the Class 2 Allowed Secured Claim of TFC/Liberty in connection with the TFC/Liberty Receivables Loan.  The Allowed Secured Claim is estimated in the amount of $7,943,945.89 and is secured by a first priority Lien on the TFC/Liberty Receivables together with such other or additional collateral as is provided for under the TFC/Liberty Receivables Loan, including, but not limited to, by way of any applicable cross collateralization provisions..

C.     Class 3 — TFC (Cove Inventory Loan Obligations).

Class 3 consists of the Allowed Secured Claim of TFC in connection with the Cove Inventory Loan.  The Class 3 Allowed Secured Claim is estimated in the amount of $3,704,550.00 and is secured by a first priority Lien on the Cove Inventory together with such other or additional collateral as is provided for under the Cove Inventory Loan, including, but not limited to, by way of any applicable cross collateralization provisions.

D.      <u>Class 4 — BB&T (Consolidated Inventory Loan Obligations).</u>

Class 4 consists of the Allowed Secured Claim of BB&T in connection with the BB&T Consolidated Inventory Loan. The BB&T Consolidated Inventory Loan is secured by a first priority lien on the BB&T Consolidated Collateral.

E.      <u>Class 5 — BB&T (LTV III Land Loan Obligations).</u>

Class 5 consists of the Allowed Secured Claim of BB&T in connection with the BB&T LTV III Land Loan. The BB&T LTV III Land Loan is secured by a first mortgage on the LTV III Real Property.

F.      <u>Class 6 — BB&T (LTV III Out Parcel Obligations).</u>

Class 6 consists of the Allowed Secured Claim of BB&T in connection with the BB&T LTV III Out Parcel Loan. The BB&T LTV III Out Parcel Loan is secured by a first mortgage on the Welcome Center.

G.      <u>Class 7 — BB&T (Sales Center Loan Obligations).</u>

Class 7 consists of the Allowed Secured Claim of BB&T in connection with the Sales Center Loan. The Sales Center Loan is secured by a first mortgage on the Sales Center.

H.      <u>Class 8 — BB&T (Barefoot'n Loan Obligations).</u>

Class 8 consists of the Allowed Secured Claim of BB&T in connection with the Barefoot'n Loan. The Barefoot'n Loan is secured by a first and second mortgage/lien on the Barefoot'n Property.

I.      <u>Class 9 — BB&T (Equipment Loan Obligations).</u>

Class 9 consists of the Allowed Secured Claim of BB&T in connection with those five loans that are evidenced by: (i) Note #80254397230005; (ii) Note #80254397230006; (iii) Note #8025439723008; (iv) Note #80254397230009; and (v) Note #80254397230010 by and

between BB&T and Island One (the "Equipment Loan"). The Equipment Loan is secured by a first lien on certain equipment of Island One ("Island One Equipment").

J.      Class 10 — BB&T (2008 Dodge Ram Loan Obligations).

Class 10 consists of the Allowed Secured Claim of BB&T in connection with that certain Loan Agreement and Promissory Note by and between BB&T and Island One dated February 4, 2008 (the "2008 Dodge Ram Loan"). The 2008 Dodge Ram Loan is secured by a first priority lien on a 2008 Dodge Ram Pick-up Truck (VIN 3D6WG38AX86179735) ("2008 Dodge Truck").

K.      Class 11 — H.J.C. Floridian (Ormond Beach Loan Obligations).

Class 11 consists of the Allowed Secured Claim of H.J.C. in connection with that certain Loan Agreement and Promissory Note by and between H.J.C. and Island One dated March 30, 1999 (the "Ormond Beach Loan"). The Ormond Beach Loan is secured by a second mortgage on all real property located at 149 South Atlantic Avenue, Ormond Beach, FL ("Ormond Beach Real Property").

L.      Class 12 – Island One Noteholders

Class 12 consists of the Allowed Unsecured Claims against Island One on account of outstanding unsecured notes. In the event that some or all of the Estate Assets of Island One are sold for Cash as part of the Sale Process, Holders of the Allowed Class 12 Claims shall be entitled to payment from the proceeds of such sale in accordance with the priorities set forth in the Code on account treatment of each such Holder's Allowed Class 12 Claim. If some or all of the Estate Assets of Island One are sold in connection with an equity purchase, this Plan will be modified or amended to provide for the proposed Distribution to Holders of the Allowed Class 12 Claims. If the Estate Assets of Island One are not sold for Cash or in connection with an

equity purchase, Island One will transfer its Estate Assets back to its secured creditors holding Liens on such assets or into a liquidating trust for the benefit of its secured creditors and Holders of Allowed Class 12 Claims will receive no distribution.

M.      <u>Class 13 – Island One General Unsecured Claims (Trade Claims)</u>

Class 13 consists of the Allowed Unsecured Trade Claims against Island One.  In the event all of the assets of Island One are sold for cash as part of the Sale Process, Holders of the Allowed Class 13 Claims shall be entitled to payment from the proceeds of such sale in accordance with the priorities set forth in the Code.  If the assets of Island One are sold in connection with an equity purchase, this Plan will be modified or amended to provide for the proposed payment to the Holders of the Allowed Class 13 Claims.  If the assets of Island One are not sold for cash or in connection with an equity purchase, Island One will transfer its assets back to its secured creditors or into a liquidating trust for the benefit of its secured creditors and Holders of Allowed Class 13 Claims will receive no distribution.

N.      <u>Class 14 – Island One Equity Interests</u>

Class 14 consists of the Allowed Class 14 Interests of Island One.  The Class 14 Interests will be cancelled on the Effective Date of the Plan.

O.      <u>Class 15 — TFC (IOI Funding Loan Obligations).</u>

Class 15 consists of the Allowed Secured Claim of TFC in connection with that certain Loan Agreement and Promissory Note by and between TFC and IOI Funding, dated September 27, 2002 ("IOI Funding Receivables Loan").  The Allowed Class 15 Secured Claim is estimated in the amount of $3,632,580.25 and is secured by a first priority Lien on all notes receivable of IOI Funding ("IOI Funding Receivables") together with such other or additional

collateral as is provided for under the IOI Funding Receivables Loan, including, but not limited to, by way of any applicable cross collateralization provisions.

P.  Class 16 – IOI Funding General Unsecured Claims (Trade Claims)

Class 16 consists of the Allowed Unsecured Trade Claims against IOI Funding. In the event all of the assets of IOI Funding are sold for cash as part of the Sale Process, Holders of the Allowed Class 16 Claims shall be entitled to payment from the proceeds of such sale in accordance with the priorities set forth in the Code.  If the assets of IOI Funding are sold in connection with an equity purchase, this Plan will be modified or amended to provide for the proposed payment to the Holders of the Allowed Class 16 Claims.  If the assets of IOI Funding are not sold for cash or in connection with an equity purchase, IOI Funding will transfer its assets back to its secured creditors and Holders of Allowed Class 12 Claims will receive no distribution.

Q.  Class 17 – IOI Funding Equity Interests

Class 17 consists of the Allowed Class 17 Interests of IOI Funding.  The Class 17 Interests will be cancelled on the Effective Date of the Plan.

R.  Class 18 — TFC (Crescent Inventory Loan Obligations).

Class 18 consists of the Allowed Secured Claim of TFC in connection with that certain Loan Agreement and Promissory Note by and between TFC and Crescent dated March 31, 2004 (the "Crescent Inventory Loan").  The Class 18 Allowed Secured Claim is estimated in the amount of $4,901,264.12 and is secured by a first priority Lien on all Crescent owned timeshare intervals ("Crescent Inventory").

S.    Class 19 — TFC (Crescent Receivables Loan Obligations).

Class 19 consists of the Allowed Secured Claim of TFC in connection with that certain Loan Agreement and Promissory Note by and between TFC and Crescent dated December 28, 2004 (the "Crescent Receivables Loan").  The Class 19 Allowed Secured Claim is estimated in the amount of $6,515,497.37 and is secured by a first priority Lien on all notes receivable of Crescent ("Crescent Receivables").

T.    Class 20 – Crescent General Unsecured Claims (Trade Claims)

Class 20 consists of the Allowed Unsecured Trade Claims against Crescent.  In the event all of the assets of Crescent are sold for cash as part of the Sale Process, Holders of the Allowed Class 20 Claims shall be entitled to payment from the proceeds of such sale in accordance with the priorities set forth in the Code.  If the assets of Crescent are sold in connection with an equity purchase, this Plan will be modified or amended to provide for the proposed payment to the Holders of the Allowed Class 20 Claims.  If the assets of Crescent are not sold for cash or in connection with an equity purchase, Crescent will transfer its assets back to its secured creditors and Holders of Allowed Class 20 Claims will receive no distribution.

U.    Class 21 – Crescent Equity Interests.

Class 21 consists of the Allowed Class 21 Interests of Crescent.  The Class 21 Interests will be cancelled on the Effective Date of the Plan.

V.    Class 22 — TFC (Island One Management Loan Obligations).

Class 22 consists of the Allowed Secured Claim of TFC in connection with that certain Loan Agreement and Promissory Note by and between TFC and Island One Management dated December 20, 2007 (the "Management Loan").  The Class 22 Allowed Secured Claim is

estimated in the amount of $8,732,518.34 and is secured by a first priority Lien on Island One Management's management contracts and Club Navigo agreements ("Island One Management Collateral") together with such other or additional collateral as is provided for under the Management Loan, including, but not limited to, by way of any applicable cross collateralization provisions.

W.      <u>Class 23 — Old Florida (Warehouse Loan Obligations).</u>

Class 23 consists of the Allowed Secured Claim of Old Florida in connection with that certain Loan Agreement and Promissory Note by and between Old Florida and Island One Management dated October 21, 2008 (the "Old Florida Loan"). The Old Florida Loan is secured by a first mortgage on a 15,967 s.f. warehouse located at 17777 Boli Blvd., Orlando, FL 32787 ("Old Florida Real Property").

X.      <u>Class 24 – Island One Management General Unsecured Claims (Trade Claims).</u>

Class 24 consists of the Allowed Unsecured Trade Claims against Island One Management. In the event all of the assets of Island One Management are sold for cash as part of the Sale Process, Holders of the Allowed Class 24 Claims shall be entitled to payment from the proceeds of such sale in accordance with the priorities set forth in the Code. If the assets of Island One Management are sold in connection with an equity purchase, this Plan will be modified or amended to provide for the proposed payment to the Holders of the Allowed Class 24 Claims. If the assets of Island One Management are not sold for cash or in connection with an equity purchase, Island One Management will transfer its assets back to its secured creditors and Holders of Allowed Class 24 Claims will receive no distribution.

Y.      Class 25 – Island One Management Equity Interests.

Class 25 consists of the Allowed Class 25 Interests of Island One Management. The Class 25 Interests will be cancelled on the Effective Date of the Plan.

Z.      Class 26 — BB&T (St. Croix Acquisition Loan Obligations).

Class 26 consists of the Allowed Secured Claim of BB&T in connection with that certain Loan Agreement and Promissory Note by and between BB&T and St. Croix One dated July 27, 2006 (the "Acquisition Loan"). The Acquisition Loan is secured by a first mortgage on all of St. Croix One's real property (the "St. Croix Real Property") and a first priority lien on all other assets of St. Croix One ("St. Croix Personal Property").

AA.      Class 27 — BB&T (2007 Dodge Ram Loan Obligations).

Class 27 consists of the Allowed Secured Claim of BB&T in connection with that certain Loan Agreement and Promissory Note by and between BB&T and St. Croix One dated February 26, 2007 (the "2007 Dodge Ram Loan"). The 2007 Dodge Ram Loan is secured by a first priority lien on a 2007 Dodge Ram Pick-up Truck (VIN 1D7HA16K97J548751) ("2007 Dodge Truck").

BB.      Class 28 — BB&T (2008 Jeep Patriot Loan Obligations).

Class 28 consists of the Allowed Secured Claim of BB&T in connection with that certain Loan Agreement and Promissory Note by and between BB&T and Island One dated November 28, 2007 (the "2008 Jeep Patriot Loan"). The 2008 Jeep Patriot Loan is secured by a first priority lien on a 2008 Jeep Patriot SUV (VIN 1J8FT28W28D593413) ("2008 Jeep Patriot").

CC.    Class 29 — Virgin Islands Design (Acquisition Loan Obligations).

Class 29 consists of the Allowed Secured Claim of Virgin Islands Design Build Group, LLC ("Virgin Islands Design") in connection with that certain Loan Agreement and Promissory Note by and between Virgin Islands Design and St. Croix One dated January 31, 2007 (the "Virgin Islands Design Green Cay Loan"). The Virgin Islands Design Green Cay Loan is secured by a junior mortgage on Plat 57, of Estate Green Coy, East End, Quarter "A", St. Croix, USVI, commonly known as Plot 57 Green Cay ("Green Cay Real Property").

DD.    Class 30 — Maple Leaf, LLC (Acquisition Loan Obligations).

Class 30 consists of the Allowed Secured Claim of Maple Leaf, LLC ("Maple Leaf") in connection with that certain Loan Agreement and Promissory Note by and between Maple Leaf and St. Croix One dated January 31, 2007 (the "Maple Leaf Green Cay Loan"). The Maple Leaf Green Cay Loan is secured by a junior mortgage on the Green Cay Real Property.

EE.    Class 31 – St. Croix One General Unsecured Claims (Trade Claims).

Class 31 consists of the Allowed Unsecured Trade Claims against St. Croix One. In the event all of the assets of St. Croix One are sold for cash as part of the Sale Process, Holders of the Allowed Class 31 Claims shall be entitled to payment from the proceeds of such sale in accordance with the priorities set forth in the Code. If the assets of St. Croix One are sold in connection with an equity purchase, this Plan will be modified or amended to provide for the proposed payment to the Holders of the Allowed Class 31 Claims. If the assets of St. Croix One are not sold for cash or in connection with an equity purchase, St. Croix One will transfer its assets back to its secured creditors or into a liquidating trust for the benefit of its secured creditors and Holders of Allowed Class 31 Claims will receive no distribution.

FF.    Class 32 – St. Croix One Equity Interests

Class 32 consists of the Allowed Class 32 Interests of St. Croix One.  The Class 32 Interests will be cancelled on the Effective Date of the Plan.

## ARTICLE III. - ADMINISTRATIVE EXPENSES.

A.    Administrative Claims.

1.    Nonordinary Course Administrative Claims.

Any Person, including any professional who has rendered services to Debtors during the course of the Bankruptcy Cases, that asserts an Administrative Claim arising before the Confirmation Date, including Claims under Section 503(b) of the Code, but excluding Ordinary Course Administrative Claims as discussed below, shall, on or before the Administrative Claims Bar Date or other date as set by Bankruptcy Court Order, file an application, motion, or request, as called for by the Rules, with the Bankruptcy Court for allowance of such Claim as an Administrative Claim specifying the amount of and basis for such Claim; *provided, however,* that applicants or movants who have previously filed applications, motions, or requests with the Bankruptcy Court need not file another such paper for the same Claim. Failure to file a timely application, motion, or request for allowance pursuant to this Section by any Holder of a Nonordinary Course Administrative Expense Claim, other than such a Holder engaged or employed by the Reorganized Debtor shall bar such a claimant from seeking recovery on such Claim.

2.    Administrative Expense Claims.

Holders of all Allowed Administrative Expense Claims of the Debtors shall be paid in full on the Effective Date from the proceeds of the Sale Process.

B.    Tax Claims.

In the event the Sale Process results in a cash sale of all of the Debtors' assets, Holders of Allowed Priority Claims will be paid from the proceeds of such sale after payment in full of all other Allowed Claims with a higher priority under the Code.  Alternatively, if Sale Process results in a sale of the Debtors' equity interests in connection with a confirmable reorganization plan outlined the winning equity bid, this Plan will be modified to provide for the proposed payment to Holders of Allowed Priority Claims.

**ARTICLE IV. - TREATMENT OF UNIMPAIRED CLASSES.**

There are no unimpaired classes in the Plan.

**ARTICLE V. - TREATMENT OF IMPAIRED CLASSES OF CLAIMS.**

A.    Determination of Allowed Amounts.

Treatment prescribed for Claims and Interests in the following sections of this Article V shall in all events refer exclusively to the Allowed Amount of each respective Claim. In the event the Allowed Amount of any Claim is not determined by agreement or otherwise prior to the Effective Date, then the treatment prescribed shall be deemed effective as of the date of the determination of such Claim by agreement or Final Order or as otherwise provided under the Plan. Notwithstanding Confirmation of the Plan, except as may otherwise be provided by Order of the Bankruptcy Court, the Debtors reserve the right to object to any Claim (other than Claims deemed in the Plan to be Allowed Claims) for any reason authorized by applicable bankruptcy and nonbankruptcy law as well as the right to assert that any such Claim includes amounts subject to equitable subordination or other equitable relief.

B.  Class 1 — TFC (Island One Receivables Loan Obligations).

Class 1 consists of the Allowed Secured Claim of TFC in connection with the Island One/TFC Receivables Loan. The Allowed Secured Claim is estimated in the amount of $67,543,660.11 and is secured by a first priority lien on the Island One/TFC Receivables together with such other or additional collateral as is provided for under the Island One/TFC Receivables Loan, including, but not limited to, by way of any applicable cross collateralization provisions.

In the event the Island One/TFC Receivables are sold for cash as part of the Sale Process, TFC shall be entitled to payment from the proceeds of such sale in accordance with the priorities set forth in the Code. If the Island One/TFC Receivables are sold in connection with an equity purchase, this Plan will be modified or amended to provide for the proposed payment to TFC outlined in the winning equity bid. If the Island One/TFC Receivables are not sold for cash or in connection with an equity purchase, the Debtors will transfer the Island One/TFC Receivables back to TFC or its assignee free and clear of all liens, claims, and encumbrances as the indubitable equivalent of its Allowed Class 1 Claim.

C.  Class 2 — TFC/Liberty (Island One Receivables Loan Obligations).

Class 2 consists of the Allowed Secured Claim of TFC/Liberty in connection with the TFC/Liberty Receivables Loan. The Allowed Secured Claim is estimated in the amount of $7,943,945.89 and is secured by a first priority lien on the TFC/Liberty Receivables together with such other or additional collateral as is provided for under the TFC/Liberty Receivables Loan, including, but not limited to, by way of any applicable cross collateralization provisions.

In the event the TFC/Liberty Receivables are sold for cash as part of the Sale Process, TFC/Liberty shall be entitled to payment from the proceeds of such sale in accordance

with the priorities set forth in the Code. If the TFC/Liberty Receivables are sold in connection with an equity purchase, this Plan will be modified or amended to provide for the proposed payment to TFC/Liberty outlined in the winning equity bid. If the TFC/Liberty Receivables are not sold for cash or in connection with an equity purchase, the Debtors will transfer the TFC/Liberty Receivables back to TFC/Liberty or their assignee free and clear of all liens, claims, and encumbrances as the indubitable equivalent of its Allowed Class 2 Claim.

        D.        <u>Class 3 — TFC (Cove Inventory Loan Obligations).</u>

Class 3 consists of the Allowed Secured Claim of TFC in connection with the Cove Inventory Loan. The Allowed Secured Claim is estimated in the amount of $3,704,550.00 and is secured by a first priority lien on the Cove Inventory together with such other or additional collateral as is provided for under the Cove Inventory Loan, including, but not limited to, by way of any applicable cross collateralization provisions.

In the event the Cove Inventory is sold for cash as part of the Sale Process, TFC shall be entitled to payment from the proceeds of such sale in accordance with the priorities set forth in the Code. If the Cove Inventory is sold in connection with an equity purchase, this Plan will be modified or amended to provide for the proposed payment to TFC outlined in the winning equity bid. If the Cove Inventory is not sold for cash or in connection with an equity purchase, the Debtors will transfer the Cove Inventory back to TFC or its assignee free and clear of all liens, claims, and encumbrances as the indubitable equivalent of its Allowed Class 3 Claim.

E.    <u>Class 4 — BB&T (Consolidated Inventory Loan Obligations).</u>

Class 4 consists of the Allowed Secured Claim of BB&T in connection with the BB&T Consolidated Inventory Loan.  The BB&T Consolidated Inventory Loan is secured by a first priority lien on the BB&T Consolidated Collateral.

In the event the BB&T Consolidated Collateral is sold for cash as part of the Sale Process, BB&T shall be entitled to payment from the proceeds of such sale in accordance with the priorities set forth in the Code.  If the BB&T Consolidated Collateral is sold in connection with an equity purchase, this Plan will be modified or amended to provide for the proposed payment to BB&T outlined in the winning equity bid.  If the BB&T Consolidated Collateral is not sold for cash or in connection with an equity purchase, the Debtors will transfer the BB&T Consolidated Collateral into a liquidating trust for the benefit of BB&T or its assignee in full satisfaction of its Allowed Class 4 Claim.

F.    <u>Class 5 — BB&T (LTV III Land Loan Obligations).</u>

Class 5 consists of the Allowed Secured Claim of BB&T in connection with the BB&T LTV III Land Loan.  The BB&T LTV III Land Loan is secured by a first mortgage on the LTV III Real Property").

In the event the LTV III Real Property is sold for cash as part of the Sale Process, BB&T shall be entitled to payment from the proceeds of such sale in accordance with the priorities set forth in the Code.  If the LTV III Real Property is sold in connection with an equity purchase, this Plan will be modified or amended to provide for the proposed payment to BB&T outlined in the winning equity bid.  If the LTV III Real Property is not sold for cash or in connection with an equity purchase, the Debtors will transfer the LTV III Real Property into a

liquidating trust for the benefit of BB&T or its assignee in full satisfaction of its Allowed Class 5 Claim.

G.      Class 6 — BB&T (LTV III Out Parcel Obligations).

Class 6 consists of the Allowed Secured Claim of BB&T in connection with the BB&T LTV III Out Parcel Loan.  The BB&T LTV III Out Parcel Loan is secured by a first mortgage on the Welcome Center.

In the event the Welcome Center is sold for cash as part of the Sale Process, BB&T shall be entitled to payment from the proceeds of such sale in accordance with the priorities set forth in the Code.  If the Welcome Center is sold in connection with an equity purchase, this Plan will be modified or amended to provide for the proposed payment to BB&T outlined in the winning equity bid.  If the Welcome Center is not sold for cash or in connection with an equity purchase, the Debtors will transfer the Welcome Center into a liquidating trust for the benefit of BB&T or its assignee in full satisfaction of its Allowed Class 6 Claim.

H.      Class 7 — BB&T (Sales Center Loan Obligations).

Class 7 consists of the Allowed Secured Claim of BB&T in connection with the Sales Center Loan.  The Sales Center Loan is secured by a first mortgage on the Sales Center.

In the event the Sales Center and the Welcome Center are sold for cash as part of the Sale Process, BB&T shall be entitled to payment from the proceeds of such sale in accordance with the priorities set forth in the Code.  If the Sales Center and Welcome Center are sold in connection with an equity purchase, this Plan will be modified or amended to provide for the proposed payment to BB&T outlined in the winning equity bid.  If the Sales Center and Welcome Center are not sold for cash or in connection with an equity purchase, the Debtors will

transfer the Sales Center and Welcome Center into a liquidating trust for the benefit of BB&T or its assignee in full satisfaction of its Allowed Class 7 Claim.

I.      Class 8 — BB&T (Barefootn Loan Obligations).

Class 8 consists of the Allowed Secured Claim of BB&T in connection with the Barefoot'n Loan.  The Barefoot'n Loan is secured by a first and second mortgage/lien on the Barefoot'n Property.

In the event the Barefoot'n Property is sold for cash as part of the Sale Process, BB&T shall be entitled to payment from the proceeds of such sale in accordance with the priorities set forth in the Code.  If the Barefoot'n Property is sold in connection with an equity purchase, this Plan will be modified or amended to provide for the proposed payment to BB&T outlined in the winning equity bid.  If the Barefoot'n Property is not sold for cash or in connection with an equity purchase, the Debtors will transfer the Barefoot'n Property into a liquidating trust for the benefit of BB&T or its assignee in full satisfaction of its Allowed Class 8 Claim.

J.      Class 9 — BB&T (Equipment Loan Obligations).

Class 9 consists of the Allowed Secured Claim of BB&T in connection with the Equipment Loan.  The Equipment Loan is secured by a first lien on the Island One Equipment.

In the event the Island One Equipment is sold for cash as part of the Sale Process, BB&T shall be entitled to payment from the proceeds of such sale in accordance with the priorities set forth in the Code.  If the Island One Equipment is sold in connection with an equity purchase, this Plan will be modified or amended to provide for the proposed payment to BB&T outlined in the winning equity bid.  If the Island One Equipment is not sold for cash or in connection with an equity purchase, the Debtors will transfer the Island One Equipment into a

liquidating trust for the benefit of BB&T or its assignee in full satisfaction of its Allowed Class 9 Claim.

K.    Class 10 — BB&T (2008 Dodge Ram Loan Obligations).

Class 10 consists of the Allowed Secured Claim of BB&T in connection with the ("2008 Dodge Ram Loan"). The 2008 Dodge Ram Loan is secured by a first priority lien on the "(2008 Dodge Truck").

In the event the 2008 Dodge Truck is sold for cash as part of the Sale Process, BB&T shall be entitled to payment from the proceeds of such sale in accordance with the priorities set forth in the Code. If the 2008 Dodge Truck is sold in connection with an equity purchase, this Plan will be modified or amended to provide for the proposed payment to BB&T outlined in the winning equity bid. If the 2008 Dodge Truck is not sold for cash or in connection with an equity purchase, the Debtors will transfer the 2008 Dodge Truck into a liquidating trust for the benefit of BB&T or its assignee in full satisfaction of its Allowed Class 10 Claim.

L.    Class 11 — H.J.C. Floridian (Ormond Beach Loan Obligations).

Class 11 consists of the Allowed Secured Claim of H.J.C. in connection with the Ormond Beach Loan. The Ormond Beach Loan is secured by a second mortgage on the Ormond Beach Real Property.

Because the Class 11 Claim of H.J.C. is completely undersecured, upon the Effective Date, the second mortgage of H.J. C. will be extinguished and the Class 11 Claim will be treated as a Class 13 general unsecured claim for distribution purposes.

M.    Class 12 – Island One Noteholders.

Class 12 consists of the Allowed Unsecured Claims against Island One on account of outstanding unsecured notes. In the event all of the assets of Island One are sold for cash as

part of the Sale Process, Holders of the Allowed Class 12 Claims shall be entitled to payment from the proceeds of such sale in accordance with the priorities set forth in the Code on account of each such Holder's Allowed Class 12 Claim. If the assets of Island One are sold in connection with an equity purchase, this Plan will be modified or amended to provide for the proposed payment to the Holders of the Allowed Class 12 Claims. If the assets of Island One are not sold for cash or in connection with an equity purchase, Island One will transfer its assets back to its secured creditors or into a liquidating trust for the benefit of its secured creditors and Holders of Allowed Class 12 Claims will receive no distribution.

    N.    <u>Class 13 – Island One General Unsecured Claims (Trade Claims).</u>

Class 13 consists of the Allowed Unsecured Trade Claims against Island One. In the event all of the assets of Island One are sold for cash as part of the Sale Process, Holders of the Allowed Class 13 Claims shall be entitled to payment from the proceeds of such sale in accordance with the priorities set forth in the Code. If the assets of Island One are sold in connection with an equity purchase, this Plan will be modified or amended to provide for the proposed payment to the Holders of the Allowed Class 13 Claims. If the assets of Island One are not sold for cash or in connection with an equity purchase, Island One will transfer its assets back to its secured creditors or into a liquidating trust for the benefit of its secured creditors and Holders of Allowed Class 13 Claims will receive no distribution.

    O.    <u>Class 14 – Island One Equity Interests.</u>

Class 14 consists of the Allowed Class 14 Interests of Island One. The Class 14 Interests will be cancelled on the Effective Date of the Plan.

P.    Class 15 — TFC (IOI Funding I, LLC Loan Obligations).

Class 15 consists of the Allowed Secured Claim of TFC in connection with the IOI Funding Receivables Loan.  The Allowed Class 15 Secured Claim is estimated in the amount of $3,632,580.25 and is secured by a first priority lien on the IOI Funding ("IOI Funding Receivables") together with such other or additional collateral as is provided for under the IOI Funding Receivables Loan, including, but not limited to, by way of any applicable cross collateralization provisions.

In the event the IOI Funding Receivables are sold for cash as part of the Sale Process, TFC shall be entitled to payment from the proceeds of such sale in accordance with the priorities set forth in the Code.  If the IOI Funding Receivables are sold in connection with an equity purchase, this Plan will be modified or amended to provide for the proposed payment to TFC outlined in the winning equity bid.  If the IOI Funding Receivables are not sold for cash or in connection with an equity purchase, the Debtors will transfer the IOI Funding Receivables to TFC or its assignee free and clear of all liens, claims, and encumbrances as the indubitable equivalent of its Allowed Class 15 Claim.

Q.    Class 16 – IOI Funding General Unsecured Claims (Trade Claims).

Class 16 consists of the Allowed Unsecured Trade Claims against IOI Funding. In the event all of the assets of IOI Funding are sold for cash as part of the Sale Process, Holders of the Allowed Class 16 Claims shall be entitled to payment from the proceeds of such sale in accordance with the priorities set forth in the Code.  If the assets of IOI Funding are sold in connection with an equity purchase, this Plan will be modified or amended to provide for the proposed payment to the Holders of the Allowed Class 16 Claims.  If the assets of IOI Funding are not sold for cash or in connection with an equity purchase, IOI Funding will transfer its assets

back to its secured creditors and Holders of Allowed Class 16 Claims will receive no distribution.

R.      Class 17 – IOI Funding Equity Interests.

Class 17 consists of the Allowed Class 17 Interests of IOI Funding. The Class 17 Interests will be cancelled on the Effective Date of the Plan.

S.      Class 18 — TFC (Crescent Inventory Loan Obligations).

Class 18 consists of the Allowed Secured Claim of TFC in connection with the Crescent Inventory Loan. The Allowed Secured Class 18 Claim is estimated in the amount of $4,901,264.12 and is secured by a first priority lien on the Crescent Inventory.

In the event the Crescent Inventory is sold for cash as part of the Sale Process, TFC shall be entitled to payment from the proceeds of such sale in accordance with the priorities set forth in the Code. If the Crescent Inventory is sold in connection with an equity purchase, this Plan will be modified or amended to provide for the proposed payment to TFC outlined in the winning equity bid. If the Crescent Inventory is not sold for cash or in connection with an equity purchase, the Debtors will transfer the Crescent Inventory to TFC or its assignee free and clear of all liens, claims, and encumbrances as the indubitable equivalent of its Allowed Class 18 Claim.

T.      Class 19 — TFC (Crescent Receivables Loan Obligations).

Class 19 consists of the Allowed Secured Claim of TFC in connection with the Crescent Receivables Loan. The Allowed Secured Claim is estimated in the amount of $6,515,497.37 and is secured by a first priority lien on the Crescent Receivables.

In the event the Crescent Receivables are sold for cash as part of the Sale Process, TFC shall be entitled to payment from the proceeds of such sale in accordance with the priorities

set forth in the Code.  If the Crescent Receivables are sold in connection with an equity purchase, this Plan will be modified or amended to provide for the proposed payment to TFC outlined in the winning equity bid.  If the Crescent Receivables are not sold for cash or in connection with an equity purchase, the Debtors will transfer the Crescent Receivables to TFC or its assignee free and clear of all liens, claims, and encumbrances as the indubitable equivalent of its Allowed Class 19 Claim.

       U.       <u>Class 20 – Crescent General Unsecured Claims (Trade Claims).</u>

Class 20 consists of the Allowed Unsecured Trade Claims against Crescent.  In the event all of the assets of Crescent are sold for cash as part of the Sale Process, Holders of the Allowed Class 20 Claims shall be entitled to payment from the proceeds of such sale in accordance with the priorities set forth in the Code.  If the assets of Crescent are sold in connection with an equity purchase, this Plan will be modified or amended to provide for the proposed payment to the Holders of the Allowed Class 20 Claims.  If the assets of Crescent are not sold for cash or in connection with an equity purchase, Crescent will transfer its assets back to its secured creditors and Holders of Allowed Class 20 Claims will receive no distribution.

       V.       <u>Class 21 – Crescent Equity Interests.</u>

Class 21 consists of the Allowed Class 21 Interests of Crescent.  The Class 21 Interests will be cancelled on the Effective Date of the Plan.

       W.       <u>Class 22 — TFC (Island One Management Loan Obligations).</u>

Class 22 consists of the Allowed Secured Claim of TFC in connection with the Management Loan.  The Class 22 Allowed Secured Claim is estimated in the amount of $8,732,518.34 and is secured by a first priority lien on the Island One Management Collateral

together with such other or additional collateral as is provided for under the Management Loan, including, but not limited to, by way of any applicable cross collateralization provisions.

In the event the Island One Management Collateral is sold for cash as part of the Sale Process, TFC shall be entitled to payment from the proceeds of such sale in accordance with the priorities set forth in the Code. If the Island One Management Collateral is sold in connection with an equity purchase, this Plan will be modified or amended to provide for the proposed payment to TFC outlined in the winning equity bid. If the Island One Management Collateral is not sold for cash or in connection with an equity purchase, the Debtors will transfer the Island One Management Collateral to TFC or its assignee free and clear of all liens, claims, and encumbrances as the indubitable equivalent of its Allowed Class 22 Claim.

X.      Class 23 — Old Florida (Warehouse Loan Obligations).

Class 23 consists of the Allowed Secured Claim of Old Florida in connection with the Old Florida Loan. The Old Florida Loan is secured by a first mortgage on the Old Florida Real Property.

In the event the Old Florida Real Property is sold for cash as part of the Sale Process, Old Florida shall be entitled to payment from the proceeds of such sale in accordance with the priorities set forth in the Code. If the Old Florida Real Property is sold in connection with an equity purchase, this Plan will be modified or amended to provide for the proposed payment to Old Florida outlined in the winning equity bid. If the Old Florida Real Property is not sold for cash or in connection with an equity purchase, the Debtors will transfer the Old Florida Real Property to Old Florida or its assignee as the indubitable equivalent of its Allowed Class 23 Claim.

Y.    Class 24 – Island One Management General Unsecured Claims (Trade Claims).

Class 24 consists of the Allowed Unsecured Trade Claims against Island One Management.  In the event all of the assets of Island One Management are sold for cash as part of the Sale Process, Holders of the Allowed Class 24 Claims shall be entitled to payment from the proceeds of such sale in accordance with the priorities set forth in the Code.  If the assets of Island One Management are sold in connection with an equity purchase, this Plan will be modified or amended to provide for the proposed payment to the Holders of the Allowed Class 24 Claims.  If the assets of Island One Management are not sold for cash or in connection with an equity purchase, Island One Management will transfer its assets back to its secured creditors and Holders of Allowed Class 24 Claims will receive no distribution.

Z.    Class 25 – Island One Management Equity Interests

Class 25 consists of the Allowed Class 25 Interests of Island One Management. The Class 25 Interests will be cancelled on the Effective Date of the Plan.

AA.    Class 26 — BB&T (St. Croix Acquisition Loan Obligations).

Class 26 consists of the Allowed Secured Claim of BB&T in connection with the Acquisition Loan.  The Acquisition Loan is secured by a first mortgage on the ("St. Croix Real Property") and a first priority lien on the ("St. Croix Personal Property").

In the event the St. Croix Real Property and St. Croix Personal Property are sold for cash as part of the Sale Process, BB&T shall be entitled to payment from the proceeds of such sale in accordance with the priorities set forth in the Code.  If the St. Croix Real Property and St. Croix Personal Property are sold in connection with an equity purchase, this Plan will be modified or amended to provide for the proposed payment to BB&T outlined in the winning equity bid.  If the St. Croix Real Property and the St. Croix Personal Property are not sold for

cash or in connection with an equity purchase, the Debtors will transfer the St. Croix Real Property and St. Croix Personal Property into a liquidating trust for the benefit of BB&T or its assignee in full satisfaction of its Allowed Class 26 Claim.

BB. <u>Class 27 — BB&T (2007 Dodge Ram Loan Obligations).</u>

Class 27 consists of the Allowed Secured Claim of BB&T in connection with the ("2007 Dodge Ram Loan"). The 2007 Dodge Ram Loan is secured by a first priority lien on the ("2007 Dodge Truck").

In the event the 2007 Dodge Truck is sold for cash as part of the Sale Process, BB&T shall be entitled to payment from the proceeds of such sale in accordance with the priorities set forth in the Code. If the 2007 Dodge Truck is sold in connection with an equity purchase, this Plan will be modified or amended to provide for the proposed payment to BB&T outlined in the winning equity bid. If the 2007 Dodge Truck is not sold for cash or in connection with an equity purchase, the Debtors will transfer the 2007 Dodge Truck into a liquidating trust for the benefit of BB&T or its assignee in full satisfaction of its Allowed Class 27 Claim.

CC. <u>Class 28 — BB&T (2008 Jeep Patriot Loan Obligations).</u>

Class 28 consists of the Allowed Secured Claim of BB&T in connection with the ("2008 Jeep Patriot Loan"). The 2008 Jeep Patriot Loan is secured by a first priority lien on the ("2008 Jeep Patriot").

In the event the 2008 Jeep Patriot is sold for cash as part of the Sale Process, BB&T shall be entitled to payment from the proceeds of such sale in accordance with the priorities set forth in the Code. If the 2008 Jeep Patriot is sold in connection with an equity purchase, this Plan will be modified or amended to provide for the proposed payment to BB&T outlined in the winning equity bid. If the 2008 Jeep Patriot is not sold for cash or in connection

with an equity purchase, the Debtors will transfer the 2008 Jeep Patriot into a liquidating trust for the benefit of BB&T or its assignee in full satisfaction of its Allowed Class 28 Claim.

DD.  Class 29 — Virgin Islands Design (Acquisition Loan Obligations).

Class 29 consists of the Allowed Secured Claim of ("Virgin Islands Design") in connection with the ("Virgin Islands Design Green Cay Loan").  The Virgin Islands Design Green Cay Loan is secured by a junior mortgage on the Green Cay Real Property.

Because the Class 29 Claim of Virgin Islands Design is completely undersecured, upon the Effective Date, the junior mortgage of Virgin Islands Design will be extinguished and the Class 29 Claim will be treated as a Class 31 general unsecured claim for distribution purposes.

EE.  Class 30 — Maple Leaf, LLC (Acquisition Loan Obligations).

Class 30 consists of the Allowed Secured Claim of Maple Leaf in connection with the Maple Leaf Green Cay Loan.  The Maple Leaf Green Cay Loan is secured by a junior mortgage on the Green Cay Real Property.

Because the Class 30 Claim of Maple Leaf is completely undersecured, upon the Effective Date, the junior mortgage of Maple Leaf will be extinguished and the Class 30 Claim will be treated as a Class 31 general unsecured claim for distribution purposes.

FF.  Class 31 – St. Croix One General Unsecured Claims (Trade Claims).

Class 31 consists of the Allowed Unsecured Trade Claims against St. Croix One. In the event all of the assets of St. Croix One are sold for cash as part of the Sale Process, Holders of the Allowed Class 31 Claims shall be entitled to payment from the proceeds of such sale in accordance with the priorities set forth in the Code.  If the assets of St. Croix One are sold in connection with an equity purchase, this Plan will be modified or amended to provide for the

proposed payment to the Holders of the Allowed Class 31 Claims. If the assets of St. Croix One are not sold for cash or in connection with an equity purchase, St. Croix One will transfer its assets back to its secured creditors or into a liquidating trust for the benefit of its secured creditors and Holders of Allowed Class 31 Claims will receive no distribution.

GG.     Class 32 – St. Croix One Equity Interests.

Class 32 consists of the Allowed Class 32 Interests of St. Croix One. The Class 32 Interests will be cancelled on the Effective Date of the Plan.

## ARTICLE VI. - UNEXPIRED LEASES AND EXECUTORY CONTRACTS.

To the extent the Debtors assume any executory contract or unexpired lease prior to the Confirmation Date, any party asserting a Claim, pursuant to Section 365 of the Code, arising from the rejection of an executory contract or lease shall file a proof of such Claim within thirty (30) days after the entry of an Order rejecting such contract or lease, and any Allowed Claim resulting from rejection shall be a Class 13, Class 16, Class 20, Class 24, or Class 31 Claim depending on the rejecting Debtor. The Debtors shall have through and including the hearing on Confirmation within which to assume or reject any unexpired lease or executory contract; and, further, that in the event any such unexpired lease or executory contract is not assumed (or subject to a pending motion to assume) by such date, then such unexpired lease or executory contract shall be deemed rejected as of the Confirmation Date. The Plan also provides for the Bankruptcy Court to retain jurisdiction as to certain matters as stated in the Plan, including, without limitation, prosecution of all causes of action and objection to Claims.

## ARTICLE VII. - MEANS OF IMPLEMENTATION.

A.     Means of Implementation.

1.     Sale Process and General Bidding Procedures.

The Plan is premised upon the sale of the Debtors' Estate Assets through the Sale Process. The Debtors have already commenced marketing their assets and Equity Interests to those parties reasonably known by the Debtors to have a potential interest in purchasing the Debtors' assets or Equity Interests. While the Debtors anticipate obtaining Court approval of the detailed bidding procedures attached to the Disclosure Statement, the Debtors anticipate the general procedures outlined herein to be included in any approved bidding procedures.

a.      Confidentiality Agreement.

All bidders will be required to execute a confidentiality agreement in a form acceptable to the Debtors. Upon execution of acceptable confidentiality agreement, interested parties will be permitted access to the data room to commence due diligence.

b.      Letter of Interest.

On or before November 24, 2010, any party with an interest in making a bid on the Debtors' Equity Interests under the Plan or otherwise bidding on the Debtors' Estate Assets in whole or part shall deliver to Debtors and Debtors' counsel a letter of interest, indicating its interest in purchasing: (i) the equity interest of the Debtor; or (ii) specific assets of the Debtors ("Letter of Interest"). To the extent the bidder is only interested in specific assets of the Debtors, the Letter of Interest should identify such assets. The Letter of Interest should identify a minimum total bid amount ("Minimum Bid"). Finally, the Letter of Interest must include enough information to demonstrate such bidder's financial wherewithal and credit worthiness to consummate the transaction proposed in the Letter of Interest.

c.      Bid Deposit.

On or before December 3, 2010, any party with an interest in

making a bid on the Debtors' equity interest under the Plan or otherwise bidding on the Debtors' assets in whole or in part must wire to Debtors' counsel a deposit equal to the lesser of: ten percent (10%) of the Minimum Bid; or $500,000.00 ("Bid Deposit").  Bid Deposits will be held in escrow by Debtors' counsel and shall be returned to all unsuccessful bidders within three days following the close if the auction, unless such unsuccessful bidder is a back up bidder.

        d.      <u>Purchase Agreement.</u>

On or before December 3, 2010, any bidder who has previously submitted a Letter of Interest and Bid Deposit as required herein shall deliver to Debtors and Debtors' counsel an executed purchase agreement (a form of which will be provided to any party that submits a timely Letter of Interest and Bid Deposit) for the purchase of the Debtors equity or assets identified in such bidder's Letter of Interest ("Purchase Agreement").

        c.      <u>Qualified Bidder Minimum Requirements.</u>

Only bidders that that have timely delivered a Letter of Interest, a Bid Deposit, and a Purchase Agreement will be deemed a qualified bidder eligible to participate in the auction ("Qualified Bidder").  Any party who fails to provide upon request adequate information to demonstrate such bidder's wherewithal to consummate the transaction contemplated in the Purchase Agreement may be disqualified and no longer considered a Qualified Bidder.

        d.      <u>Auction Procedures Meeting.</u>

If there is at least one Qualified Bidder, counsel for the Debtors, counsel for the Lenders, and counsel to the Official Committee of Unsecured Creditors will meet on or before December 8, 2010 to determine whether and on what terms an auction should be held.  To the extent an auction is necessary, it will be held on December 10, 2010 or such other

date as selected by the Court.

e.    Combination Bids.

The Debtors may consider a combination of multiple Qualified

Bids.

f.    Determination of Successful Bidder(s).

The Qualified Bidder(s) that is determined by the Court to have made the highest and best offer for the Debtors' assets shall be deemed the Successful Bidder(s). In the event the Court determines that the highest and best value for the Debtors is a sale of multiple components of assets, there may be multiple Successful Bidders.

g.    Modification of the Plan After Selection of Successful Bidder(s).

The Plan may be modified as needed to reflect the results of the auction. In the event the Successful Bidder's bid is for the Debtors' equity interests, the Plan will provide for the Successful Bidder to become the owner of the new equity in the Reorganized Debtors. In the event the Successful Bidder(s) bid is for component assets of the Debtors, the Plan will provide for the distribution of the proceeds of the sale to creditors of the Debtors in accordance with the priorities set forth in the Code.

h.    Funds Generated During Chapter 11.

Funds generated from operations until the Effective Date will be distributed in accordance with the Orders entered in the Chapter 11 Case and the priorities set forth in the Code.

B.    Management and Control of Reorganized Debtor.

It is unknown at this time whether any of the Debtors will exist after the Effective Date. In the event the Court determines that the highest and best offer for some or all of the

Debtors' assets is an equity offer, the Debtors will amend or modify this Plan to reflect the management of the Reorganized Debtor(s).

C.     <u>Additional Provisions.</u>

    1.     <u>Procedures For Resolving Disputed Claims.</u>

    a.     <u>Prosecution of Objections to Claims.</u>

Unless otherwise ordered by the Bankruptcy Court, after notice and a hearing, and except as otherwise provided in the Plan, Debtors shall have the exclusive right to make and file objections to all Claims, subject to prior orders of the Bankruptcy Court.

Pursuant to the Plan, unless another time is set by order of the Bankruptcy Court, all objections to Claims and Equity Interests shall be filed with the Court and served upon the Holders of each of the Claims and Equity Interests to which objections are made within 90 days after the Effective Date.

Except as may be specifically set forth in the Plan. nothing in the Plan, the Disclosure Statement, the Confirmation Order or any Order in aid of Confirmation shall constitute, or be deemed to constitute, a waiver or release of any Claim, Cause of Action, right of setoff, or other legal or equitable defense that the Debtors had immediately prior to the commencement of the Bankruptcy Case, against or with respect to any Claim or Equity Interest. Except as set forth in the Plan, upon Confirmation, the Debtors shall have, retain, reserve and be entitled to assert all such Claims, Causes of Action, rights of setoff and other legal or equitable defenses that the Debtors had immediately prior to the commencement of the Bankruptcy Cases as if the Bankruptcy Cases had not been commenced.

b.    Estimation of Claims.

Pursuant to the Plan, the Debtors may, at any time, request that the Bankruptcy Court estimate any contingent, disputed, or unliquidated Claim, pursuant to Section 502(c) of the Bankruptcy Code, regardless of whether the Debtors have previously objected to such Claim or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court will retain jurisdiction to estimate any Claim at any time during litigation concerning any objection to any Claim, including during the pendency of any appeal relating to any such objection. In the event that the Bankruptcy Court estimates any contingent, disputed, or unliquidated Claim, that estimated amount will constitute either the Allowed Amount of such Claim or a maximum limitation on such Claim, as determined by the Bankruptcy Court. If the estimated amount constitutes a maximum limitation on such Claim, the Debtors may elect to pursue any supplemental proceedings to object to any ultimate payment on such Claim.

c.    Cumulative Remedies.

In accordance with the Plan, all of the aforementioned Claims objection, estimation, and resolution procedures are cumulative and not necessarily exclusive of one another. Claims may be estimated and subsequently compromised, settled, withdrawn, or resolved by any mechanism approved by the Bankruptcy Court. Until such time as an Administrative Claim, Claim, or Equity Interest becomes or is otherwise deemed in this Plan to be an Allowed Claim, such Claim shall be treated as a Disputed Administrative Claim, Disputed Claim, or Disputed Equity Interest for purposes related to allocations, Distributions, and voting under the Plan.

d.       Disallowance of Certain Claims and Interests.

According to the Plan, all Claims held by Persons against whom the Debtors have obtained a Final Order establishing liability for a cause of action under Sections 542, 543, 522(f), 522(h), 544, 545, 547, 548, 549, or 550 of the Bankruptcy Code shall be deemed disallowed, pursuant to Section 502(d) of the Bankruptcy Code, and Holders of such Claims may not vote to accept or reject the Plan. Both consequences are to be in effect until such time as such causes of action against that Person have been settled or resolved by a Final Order and all sums due the Debtors by that Person are turned over to Debtors or Reorganized Debtor.

## ARTICLE VIII. — MISCELLANEOUS.

A.       Effects of Confirmation.

1.       Amendments to the Plan.

The Debtors reserve all rights to amend, alter, or withdraw this Plan before conclusion of the Confirmation Hearing and to amend, modify, or alter this Plan after the Confirmation Date, in accordance with the applicable provisions of the Code.

2.       Authority to Effectuate the Plan.

Upon the entry of the Confirmation Order by the Bankruptcy Court, all matters provided under the Plan will be deemed to be authorized and approved without further approval from the Bankruptcy Court. The Reorganized Debtor shall be authorized, without further application to or Order of the Bankruptcy Court to take whatever action is necessary to achieve consummation and carry out the Plan in accordance with this Plan and the Code.

3.       Post-Confirmation Status Report.

Pursuant to the Plan, within one hundred twenty (120) days of the entry of the Confirmation Order, the Reorganized Debtor will file status reports with the Court explaining

what progress has been made toward consummation of the confirmed Plan. The status report will be served on the United States Trustee and those parties who have requested special notice post-confirmation. The Bankruptcy Court may schedule subsequent status conferences in its discretion.

4.      Retention of Professionals.

The Reorganized Debtor may retain professionals on such terms as the Reorganized Debtor deems reasonable without Bankruptcy Court approval. Persons who served as professionals to the Debtor prior to the Effective Date may also continue to serve the Reorganized Debtor.

B.      Conditions to Effectiveness.

The Effective Date shall not occur until all of the following conditions have been satisfied:

1.      The entry of the Confirmation Order by the Bankruptcy Court in form and content acceptable to the Debtors and expiration of the appeal period with respect to the Confirmation Order without the filing of a notice of appeal of such Order; *provided, however,* that, if an appeal of the Confirmation Order is filed but no stay is granted in connection with the appeal, the Debtors may in writing elect to permit the Effective Date to occur notwithstanding the pendency of the appeal.

2.      Inclusion in the Confirmation Order of an injunctive provision staying, restraining, and enjoining all Persons, except as set forth in Article V, from commencing, enforcing, perfecting, or setting off any Claim, judgment, or Interest against the Debtors, or any property thereof, or against any of the Debtors' transferees for the purposes of, directly or indirectly, collecting, recovering, or receiving payment of, on, or with respect to, any Claim or

Equity Interest; provided, that such injunctive provision shall not prevent any governmental unit from enforcing such governmental unit's police or regulatory power.

3.      All ancillary documents necessary to implement and confirm the Plan have been approved by the Debtors, unless the Debtors have waived this requirement in writing.

Upon the satisfaction or waiver of each of the foregoing conditions, the Debtors shall so notify the Bankruptcy Court, and upon the filing of such notice the Plan shall become effective without further Order of the Bankruptcy Court provided that all of the conditions to effectiveness of the Plan set forth herein, including those set forth below, have been met.

C.      <u>Discharge and Injunction.</u>

1.      <u>Discharge.</u> To the fullest extent permitted by applicable law, and except as otherwise provided in the Plan, the operative documents implementing the Plan, or the Confirmation Order: (a) on the Effective Date, the Confirmation Order shall operate as a discharge under 11 U.S.C. §1140(d)(1) of the Code, and as a release of any and all Claims, Debts, Liens, Security Interests, and encumbrances of and against the Reorganized Debtor and all Property that arose before Confirmation, including without limitation, any Claim of a kind specified in §§ 502(g), 502(h), or 502(i) of the Code, and all principal and interest, whether accrued before, on, or after the Petition Date, regardless of whether (i) a Proof of Claim has been filed or deemed filed, (ii) such Claim has been Allowed pursuant to Section 502 of the Code, or (iii) the Holder of such Claim has voted on the Plan or has voted to reject the Plan; and (b) from and after the Effective Date (i) all Holders of Claims shall be barred and enjoined from asserting against the Reorganized Debtor and its property any Claims. Debts, Liens, Security Interests, and encumbrances of and against all Property of the Estate, and (iii) the Debtors shall be fully and

finally discharged of any liability or obligation on a Disallowed Claim or an Interest. Except as otherwise specifically provided herein, nothing in the Plan shall be deemed to waive, limit, or restrict in any manner the discharge granted upon Confirmation of the Plan pursuant to Section 1141 of the Code.

In the event the result of the Sale Process is a Cash purchase of the Estate Assets, this Section will not apply and the Debtors will not be entitled to a discharge. In the event the Court determines that the highest and best offer for some or all of the Debtors' assets is an equity offer, this Section will apply and the Debtors will be discharged as provided herein.

2. <u>Injunction.</u> As part of the Confirmation Order, the Bankruptcy Court shall permanently enjoin and prohibit all Holders of Claims, Liens, Security Interests, encumbrances rights and Interest in, to or against the Debtors and Reorganized Debtor or any of their assets from asserting, prosecuting or collecting such Claims, Liens, Security Interests (other than Liens or Security Interests expressly continued pursuant to the terms of the Plan or the operative documents between the Debtors and the Holder of a Claim regarding the treatment of the Claim under the Plan), encumbrances, rights and Interests against the Reorganized Debtor; provided, however, that such injunction shall not apply to any Claim asserted against the Reorganized Debtor after the Effective Date.

In the event the result of the Sale Process is a cash purchase of the Debtors assets, this Section will not apply and the Debtors will not be entitled to a discharge. In the event the Court determines that the highest and best offer for some or all of the Debtors' assets is an equity offer, this Section will apply and all Claims, Liens, Security Interests, encumbrances, rights and Interests against the Reorganized Debtors will be enjoined as provided herein.

D.    Retention of Jurisdiction.

After the Effective Date, the Reorganized Debtor will be free to perform all functions assigned to it under the Plan without approval of the Bankruptcy Court, except as specifically set forth herein. However, the Bankruptcy Court will continue to retain jurisdiction in these Bankruptcy Cases with respect to the following matters:

1.    All objections to the allowance of Claims and Interests and the compromise of Claims;

2.    All applications for allowance of compensation and reimbursement of out-of-pocket expenses of professionals retained in the Debtors' Bankruptcy Cases by Order of the Bankruptcy Court to the extent that such compensation and out-of-pocket expenses relate to services performed before the Confirmation Date; *provided, however,* that fees of professionals for services rendered after the Effective Date may be paid by the Reorganized Debtor in the ordinary course of business without a Bankruptcy Court Order; *provided, further, however,* in the event that an objection is made as to post-Confirmation Date requested fees or expenses, application shall be made to the Bankruptcy Court for allowance of such fees and expenses;

3.    Any adversary proceedings or contested matters brought by the Debtors or the Reorganized Debtor, including but not limited to the Causes of Action;

4.    All controversies and disputes arising under or in connection with the Plan;

5.    The enforcement and interpretation of the provisions of the Plan;

6.    The issuance of such orders in aid of execution and consummation of the Plan as may be necessary and appropriate;

7.      Any motion to modify the Plan in accordance with Section 1127 of the Code, or to correct any defect, cure any omission, or reconcile any inconsistency in the Plan, Disclosure Statement, or any Confirmation Order as may be necessary to carry out the purposes of the Plan;

8.      All Claims arising from the rejection of any executory contract or lease;

9.      Such other matters as may be provided for in the Code or the Plan;

10.     The protection of property of the estate from adverse claims or interference inconsistent with the Plan; and

11.     Ensuring that Distributions are accomplished, as provided herein, and resolving any dispute concerning the right of any Person to a Distribution hereunder, under applicable law, or under a contract or agreement.

E.      <u>Headings.</u>

Article, Section, and Paragraph headings used herein are for convenience only and shall not affect the interpretation or construction of any provision of this Plan.

F.      <u>Cramdown</u>.

Debtors reserve the right to seek confirmation of the Plan under Section 1129(b) of the Code.

G.      <u>Regulatory Approval and Retirement Plans.</u>

It will not be necessary for the Debtors to await any required regulatory approvals from agencies or departments of the United States to consummate the Plan. The Plan will be implemented pursuant to its provisions and the provisions of the Code. The Debtors do not have any retirement plans.

H.      <u>Notices.</u>

All notices required or permitted to be made in accordance with the Plan shall be in writing and shall be delivered personally, by facsimile transmission, or mailed by United States mail to the following:

> To Debtors:
>
> Island One, Inc., et al.:
> Deborah Linden
> 8680 Commodity Circle
> Orlando, FL  32819
>
> With copies to:
>
> Jimmy D. Parrish, Esquire
> Baker & Hostetler, LLP
> 200 S. Orange Avenue
> SunTrust Center, Suite 2300
> Orlando, Florida 32801-3432

H.      <u>Manner of Payment.</u>

Any payment of Cash made under this Plan may be made either by check drawn on an account of the Reorganized Debtor, by wire transfer, or by automated clearing house transfer from a domestic bank, at the option of the Reorganized Debtor.

I.      <u>Compliance with Tax Requirements.</u>

In connection with this Plan, to the extent applicable, the Reorganized Debtor in making distributions under this Plan shall comply with all tax withholding and reporting requirements imposed on it by any governmental unit and all Distributions, pursuant to this Plan, shall be subject to such withholding and reporting requirements. The Reorganized Debtor may withhold the entire Distribution due to any Holder of an Allowed Claim until such time as such Holder provides to the Reorganized Debtor, the necessary information to comply with any withholding requirements of any governmental unit. Any property so withheld will then be paid

by the Reorganized Debtor to the appropriate authority. If the Holder of an Allowed Claim fails to provide to the Reorganized Debtor the information necessary to comply with any withholding requirements of any governmental unit within six (6) months after the date of first notification by the Reorganized Debtor to the Holder of the need for such information or for the Cash necessary to comply with any applicable withholding requirements, then the Holder's distribution shall be treated as an undeliverable distribution in accordance with the below. The payment of all taxes on all Distributions shall be the sole responsibility of the distributee.

      J.      <u>Transmittal of Distributions to Parties Entitled Thereto.</u>

All Distributions by check shall be deemed made at the time such check is duly deposited in the United States mail, postage prepaid. All Distributions by wire transfer shall be deemed made as of the date the Federal Reserve or other wire transfer is made. Except as otherwise agreed with the Holder of an Allowed Claim or as provided in this Plan, any property to be distributed on account of an Allowed Claim shall be distributed by mail upon compliance by the Holder with the provisions of this Plan to: (i) its address set forth in its Proof of Claim; (ii) the latest mailing address filed for the Holder of an Allowed Claim entitled to a Distribution; (iii) the latest mailing address filed for a Holder of a filed power of attorney designated by the Holder of such Allowed Claim to receive Distributions; (iv) the latest mailing address filed for the Holder's transferee as identified in a filed notice served on the Reorganized Debtor pursuant to Bankruptcy Rule 3001(e); or (iv) if no such mailing address has been filed, the mailing address reflected on the Schedules not defined or in the Debtors' books and records.

K.     <u>Distribution of Unclaimed Property.</u>

Except as otherwise provided in this Plan, any Unclaimed Property distributed under this Plan, shall be forfeited and such Distribution together with all interest earned thereon shall become an asset of the Reorganized Debtor.

L.     <u>Fractional Cents; Multiple Distributions.</u>

Notwithstanding any other provisions of this Plan to the contrary, no payment of fractional cents will be made under this Plan. Cash will be issued to Holders entitled to receive a Distribution of Cash in whole cents (rounded to the nearest whole cent). To the extent that Cash remains undistributed as a result of rounding of such fractions, such Cash shall be treated as Unclaimed Property under the Plan.

M.     <u>Revocation and Withdrawal of this Plan.</u>

The Debtors reserve the right to withdraw this Plan at any time before entry of the Confirmation Order. If (i) the Debtors revoke and withdraw this Plan, (ii) the Confirmation Order is not entered, (iii) the Effective Date does not occur, (iv) this Plan is not substantially consummated, or (v) the Confirmation Order is reversed or revoked, then this Plan shall be deemed null and void.

N.      Modification of Plan.

The Debtors may amend or modify this Plan in accordance with Section 1127(b) of the Code, or remedy a defect or omission or reconcile any inconsistency in this Plan in such manner as may be necessary to carry out the purpose and intent of this Plan.

**RESPECTFULLY SUBMITTED** this 17th day of November, 2010.

COUNSEL FOR ISLAND ONE, INC.

/s/ Jimmy D. Parrish
Jimmy D. Parrish, Esquire
Florida Bar No. 0526401
BAKER & HOSTETLER, LLP
200 S. Orange Avenue
SunTrust Center, Suite 2300
Orlando, Florida 32801-3432
Telephone: (407) 649-4000
Facsimile: (407) 841-0168